# EXHIBIT 16

# Race and Incarceration in Delaware
## A Report to the Delaware General Assembly

**June 30, 2011**

*Submitted by*

## The Criminal Justice Statistical Review Committee

*Prepared by*

The Delaware Statistical Analysis Center

State of Delaware Document Control Number 100208-110603

# Table of Contents

List of Tables and Figures ......................................................................................................... ii

Acknowledgments ...................................................................................................................... iii

Executive Summary .................................................................................................................... v

    Preliminary Findings ............................................................................................................. v

    Study Background ................................................................................................................. v

    Arrests .................................................................................................................................. vi

    Detention .............................................................................................................................. vi

    Convictions ......................................................................................................................... vii

    Sentencing ........................................................................................................................... vii

    Future Analysis .................................................................................................................. viii

INTRODUCTION ....................................................................................................................... 1

ANALYSIS AND FINDINGS .................................................................................................... 3

    Selected Crime Group Descriptions ..................................................................................... 3

    Arrests .................................................................................................................................. 5

    Detention ............................................................................................................................ 10

    Convictions and Incarceration Sentences ........................................................................... 11

    Conclusions ........................................................................................................................ 14

## List of Tables and Figures

Table 1.  Level V sentence ranges for felonies ................................................................ 3
Table 2.  Drug trafficking weight/dosage thresholds .................................................... 4
Table 3.  2005 Delaware adult male population estimates by race and region ............................ 5
Table 4.  2005 regional adult male arrests, Race and Incarceration offense groups ..................... 5
Table 5.  2005 statewide adult male arrests, Race and Incarceration crime groups ..................... 7
Table 6.  2005 adult male rape arrests by region and race ............................................ 7
Table 7.  2005 adult male robbery arrests by region and race ........................................ 8
Table 8.  2005 adult male felony assault arrests by region and race ................................. 8
Table 9.  2005 adult male burglary arrests by region and race ....................................... 9
Table 10.  2005 adult male drug dealing arrests by region and race ................................. 9
Table 11.  2005 defendants detained any time between arrest and final disposition .................. 10
Table 12.  Convicted defendants, as percent of 2005 defendants with final case dispositions .... 11
Table 13.  Convicted 2005 defendants sentenced to incarceration .................................... 12
Table 14.  Convicted 2005 defendants with Delaware felony arrest(s) prior to study case ......... 12
Table 15.  Delaware SENTAC aggravating and mitigating factors ............................................ 13


Figure 1.  Black adult male population and study group arrest proportions by region, 2005 ........ 6
Figure 2.  Reported race and ethnicity of male suspects in selected 2005 complaint groups......... 6
Figure 3.  Black adult male population and rape arrest proportions by region, 2005 ................... 7
Figure 4.  Black adult male population and robbery arrest proportions by region, 2005 .............. 8
Figure 5.  Black adult male population and felony assault arrest proportions by region, 2005 ..... 8
Figure 6.  Black adult male population and burglary arrest proportions by region, 2005 .............. 9
Figure 7.  Black adult male population and drug dealing arrest proportions by region, 2005 ....... 9
Figure 8.  Race/ethnicity of 2005 male subjects at criminal justice phases, all crime groups...... 14
Figure 9.  Race/ethnicity of 2005 male subjects at criminal justice phases, rape...................... 15
Figure 10.  Race/ethnicity of 2005 male subjects at criminal justice phases, robbery ................ 15
Figure 11.  Race/ethnicity of 2005 male subjects at criminal justice phases, felony assault........ 16
Figure 12.  Race/ethnicity of 2005 male subjects at criminal justice phases, burglary ............... 16
Figure 13.  Race/ethnicity of 2005 male subjects at criminal justice phases, drug dealing.......... 17

## Acknowledgments

Compilation and review of this report were collaborative efforts of the Statistical Analysis Center staff and the Criminal Justice Statistical Review Committee.  The Statistical Analysis Center and the Criminal Justice Statistical Review Committee offer a special thanks to the researchers at the University of Delaware's Center for Drug and Alcohol Studies and the Criminal Justice Council's Executive Director, who offered valuable insight on this report.

The study design was developed by the Statistical Analysis Center's former Director and the House Judiciary Committee's Race and Incarceration Subcommittee.  Research was conducted by Statistical Analysis Center staff, and the Center is responsible for the document's content. Questions regarding this report should be directed to Charles Huenke at the Statistical Analysis Center.

# Executive Summary

### Preliminary Findings

Analysis of 2005 criminal justice data relating to adult males shows that in three crimes against persons (rape, robbery, and felony assault), racial disparities in the criminal justice system in Delaware are primarily explained by disparities in reported criminal activity rather than selective enforcement. No other definitive conclusions can yet be drawn regarding other aspects of the system; nevertheless, a broad overview of criminal justice statistics from arrest through sentencing shows some significant racial disparities that cannot be ignored.

It is important to distinguish between statistical disparities and whether those disparities actually reflect racial bias at any stage of the criminal justice process. As indicated later in this report, this overview shows a clear need to delve into these statistics to determine if there is racial bias or if the racial disparities reflect factors unrelated to the criminal justice system, or some combination of both. The Criminal Justice Statistical Review Committee is fully sensitive to the principle that the criminal justice system must not only be fair in how it operates but also in how it is perceived. Such perception is itself a key component of the support of all citizens in their view of how the criminal justice system operates.

### Study Background

Delaware, like many other states, has significant racial disparities in arrests and incarceration when criminal justice statistics are compared to general population figures. Based on data from the 2000 to 2005 time frame, the following figures give a general sense of disproportionate minority representation in the state's criminal justice system.

- Blacks are about 20 percent of the state's general population.
- Blacks account for about 42 percent of statewide arrests.
- Blacks comprise about 64 percent of the state's incarcerated population.

In 2006, Delaware's House Judiciary Committee created a Race and Incarceration Subcommittee to investigate criminal justice racial fairness. The Statistical Analysis Center was directed to study processes from arrest to sentencing. This preliminary phase involved detailed analysis of only adult males arrested in 2005.

- Race and ethnicity were combined for four race/ethnic groups.
  - Black, White, Hispanic, and Other.
- Five crime groups, in the following hierarchical order, were selected for analysis.
  - Rape, robbery, felony assault, burglary, and drug dealing.
- Cases involving homicide or attempted homicide were excluded from study.

## Arrests

In the five crime groups studied, Blacks account for a larger proportion of arrests than the overall figure of 42 percent. Statewide, 58.7 percent of adult males arrested in the study groups were Black. Black arrest proportions for drug dealing, robbery, and felony assault are well above the 42 percent for overall arrests. Statewide in 2005:

- Drug dealing arrests;        72.9 percent of adult males were Black.
- Robbery arrests;             64.5 percent of adult males were Black.
- Felony assault arrests;      53.5 percent of adult males were Black.
- Rape arrests;                41.4 percent of adult males were Black.
- Burglary arrests;            36.1 percent of adult males were Black.

Some observers suggest that racial profiling and selective targeting cause a disproportionate number of minority arrests. Offender race reports in complaint data, with or without arrests, offer some perspective on the influence of racial targeting. Complaint data for rapes, robberies, and felony assaults from 2005 were analyzed to compare reported race of male suspects with arrest racial proportions. This analysis indicates that disproportionate involvement appears to be a major factor leading to disproportionate arrests violent crimes against persons.

- Robbery complaints;          76 percent of male suspects were reported as Black.
- Felony assault complaints;   58 percent of male suspects were reported as Black.
- Rape complaints;             45 percent of male suspects were reported as Black.

## Detention

Defining detention as any time spent in a secure facility, Hispanics and Blacks were more likely than Whites to be detained for any period between arrest and final disposition. For all five crime groups combined, about 86 percent of Hispanics and Blacks and about 72 percent of Whites were held in custody at some time between arrest and disposition. Within each crime group, detention rates were:

- Rape;             Hispanic (100%), Black (88.5%), White (72%)
- Robbery;          Black (97%), Hispanic (95.8%), White (90.3%)
- Felony Assault;   Hispanic (84.8%), Black (77.8%), White (68.3%)
- Burglary;         Hispanic (92.3%), Black (85.2%), White (72.5%)
- Drug Dealing;     Black (85.4%), Hispanic (80.6%), White (63%)

Detention is a topic needing additional in-depth study, and there are many important aspects to consider beyond a case at hand. Among the factors that should be included in analysis of bail and detention are:

- Criminal history, including non-appearance in court and fugitive records
- Multiple concurrent case complications
- Employment status and history
- Residential status and history
- Immigration status
- Financial situation

## Convictions

Among adult male arrests tracked to final disposition, about 82 percent of Whites and Hispanics were convicted and about 79 percent of Blacks were convicted in the five crime groups overall. Greater variation occurs when crime groups are viewed separately. Conviction rates within each crime group were:

- Rape;              White (90.3%), Hispanic (85.2%), Black (83.9%)
- Robbery;          White (91.3%), Black (79.5%), Hispanic (75%)
- Felony Assault;   White (75.3%), Hispanic (67.4%), Black (60.7%)
- Burglary;         Hispanic (84.6%), White (77.3%), Black (70.3%)
- Drug Dealing;     Hispanic (88.4%), White (88.3%), Black (85.8%)

Wide-ranging conviction rates across race and ethnicity are evident in crimes against persons and burglary. Victim and witness cooperation plays a crucial role in the prosecution of such cases; further analysis is required to explore how this aspect could have disparate racial and ethnic influences.

## Sentencing

Upon conviction, Hispanics were most likely and Whites were least likely to be sentenced to a Level V (incarceration) term. That includes sentences to time served, so detention has a key role in Level V comparisons. In the five crime groups combined, about 71 percent of convicted Hispanics were sentenced to Level V, compared to about 63 percent of Blacks and 52 percent of Whites. Rates of Level V sentencing upon conviction within crime groups were:

- Rape;              Hispanic (95.7%), Black (67.1%), White (65.5%)
- Robbery;          Hispanic (100%), Black (89.8%), White (78.7%)
- Felony Assault;   Black (57.3%), Hispanic (54.8%), White (45.7%)
- Burglary;         Hispanic (72.7%), Black (56.9%), White (53.4%)
- Drug Dealing;     Hispanic (64.9%), Black (60.2%), White (36.9%)

The influence of criminal histories on sentencing could not be fully analyzed in this phase of research, as non-Delaware records were not collected. Delaware felony arrests prior to the 2005 study were summarized for limited comparisons by race and ethnicity. Among individuals convicted in any of the five crime groups, about 82 percent of Blacks had prior Delaware felony arrests. In contrast, about 68 percent of convicted Whites and 64 percent of convicted Hispanics had prior Delaware felony arrests. Within each crime group, the percentages of convicted individuals with prior Delaware felony arrests were:

- Rape;              Black (64.4%), White (40.5%), Hispanic (34.8%)
- Robbery;          Black (77%), Hispanic (66.7%), White (66%)
- Felony Assault;   Black (76.2%), White (59.3%), Hispanic (41.9%)
- Burglary;         Black (83.5%), White (79.1%), Hispanic (77.3%)
- Drug Dealing;     Black (84.4%), Hispanic (70.2%), White (65%)

## **Future Analysis**

Additional detailed analysis is needed to address questions that remain unanswered in this phase of study.  Findings from this analysis could be used to identify priority areas of research, but there are compelling reasons to move forward to more recent data.  Crime patterns, drugs of choice, laws and police resources are among factors that change over time and can bring new aspects of study to prominence.

Continued study of racial and ethnic disparities should remain a priority of the criminal justice community.  Effective functioning of the system requires both the reality and perception of fairness.  Transparency is essential to public acceptance and confidence as we work toward greater understanding of disparities and remediation of any identified deficiencies.

# INTRODUCTION

Consistent with nationwide trends, arrest and incarceration data in Delaware indicate significant racial disparities in the criminal justice system relative to the general population composition. While the disparities are obvious, their causes are not readily identifiable.  There are many subtle and complex factors within and outside the criminal justice system that likely contribute to them.

Delaware's House Judiciary Committee established a Race and Incarceration Subcommittee in 2006 to investigate issues of racial fairness in the criminal justice system.  The Subcommittee directed the Statistical Analysis Center to conduct a study tracking defendants from points of arrest through sentencing to explore racial and ethnic disparities and their possible causes.

At least some of the Subcommittee's motivation for undertaking this study came from a paper written by Thomas Eichler *(Race and Incarceration in Delaware: A Preliminary Consideration, 2005)*.  Eichler collected summary criminal justice data showing that Blacks were about 20 percent of Delaware's population, but accounted for about 42 percent of statewide arrests and about 64 percent of the state's incarcerated population.

The Center's work on the Race and Incarceration Study is not yet complete, but has thus far yielded considerable information.  To date we have compiled data that address significant aspects of the problem, but new questions have also been raised.  The process of analyzing case details put us on paths that were not explicitly part of the original study plan, but exposed issues that were too important to ignore.

This phase of reporting is intended to provide readers with a summary of findings to date in what should continue as an ongoing effort.  Those findings merely begin to illuminate some of the complexities in and beyond the criminal justice system that influence racial disparity.  This study leaves many questions unanswered, but it should provide context that will help frame and focus additional analysis.

1

## ANALYSIS AND FINDINGS

### Selected Crime Group Descriptions

This analysis was based on adult male arrests in calendar year 2005 for five crime groups chosen by the Race and Incarceration Subcommittee.  Each arrest was assigned to its respective group by hierarchical charge sorting in the order of rape, robbery, felony assault, burglary, and drug dealing.  Any arrest involving incidents of homicide or attempted homicide was excluded.

Primary offense grades for the selected crime groups range from class A through F felonies.  The statutory Level V sentence ranges for Delaware felonies A through G are shown in Table 1. Crime classifications within groups and special sentence provisions for certain offenses, if any, are included with the crime group descriptions that follow.

Table 1.  Level V sentence ranges for felonies

| Felony Class | Minimum Level V | Maximum Level V |
|---|---|---|
| A | 15 years | Life* |
| B | 2 years | 25 years |
| C | 0 | 15 years |
| D | 0 | 8 years |
| E | 0 | 5 years |
| F | 0 | 3 years |
| G | 0 | 2 years |

*First Degree Murder (not included in this study) is punishable by death in certain situations.

*Accountability Level V is the full incarceration sanction within Delaware's sentencing structure of five graduated accountability sanctions.*

Readers should keep in mind that there are large penalty ranges within each crime group based on the severity and number of offenses committed.  One should not expect that offenders within each group committed similar offenses or should be subjected to similar consequences.

### Rape

Offenses included in the rape crime group are primarily Rape 1st through 4th degree under contemporaneous laws.  The group also includes arrests in 2005 for crimes that occurred when Unlawful Sexual Intercourse 1st through 3rd and Unlawful Sexual Penetration 1st through 3rd were the relevant charges.  Charges of attempt to commit any of the listed offenses are also included.

In the 2005 timeframe, Rape 1st was a felony A.  Rape 1st carried a mandatory life term in specific situations, but otherwise the 15 year minimum applied.  Rape 2nd was a felony B with a 10 year minimum, and Rape 3rd was a felony B with the standard 2 year minimum.  Rape 4th was a felony C.  Good time reductions were not restricted in rape sentences other than life.

### Robbery

Offenses included in the robbery crime group are Robbery 1st and 2nd degree, including attempts. In the 2005 timeframe, Robbery 1st was a felony B and carried a 3 year minimum, or a 5 year minimum for a repeat conviction within specific time constraints.  Robbery 2nd was a felony E with no minimum term.  Good time reductions were not restricted for robbery sentences.

3

### *Felony Assault*

Offenses included in the felony assault crime group are Assault 1st and 2nd degree.  Attempted assaults were included, though those numbers are very small.  In the 2005 timeframe, Assault 1st was a felony B and Assault 2nd was a felony D.  Good time reductions were not restricted for assault sentences.

Assault is generally elevated from misdemeanor to felony levels due to serious injury or the use of weapons.  Less than serious injuries, which would otherwise be misdemeanor assaults, rise to felonies when inflicted upon certain victims.  Pregnant females, victims ages 5 or younger, or 62 or older, and law enforcement officers are primary types of victims in those specific categories.

### *Burglary*

Offenses included in the burglary crime group are Burglary 1st through 3rd degree, including attempts.  In the 2005 timeframe, Burglary 1st was a felony C, or a felony B if the victim was 62 or older.  Burglary 1st carried a 2 year minimum, or 4 years if there was a prior conviction of Burglary 1st or 2nd within a specified period.  Burglary 2nd was a felony D, or a felony C if the victim was 62 or older.  Burglary 2nd carried a 1 year minimum (which could be deferred for the Boot Camp program), or 3 years if there was a prior conviction of Burglary 1st or 2nd within a specified period.  Burglary 3rd was a felony F.  Good time reductions were not restricted for burglary sentences.

### *Drug Dealing*

Offenses included in the drug dealing crime group are Trafficking and Possession With Intent to Deliver (PWITD).  In statutory definitions, trafficking and PWITD have common elements; a key distinction is weight or dosage thresholds designated for trafficking offenses.  Persons charged with trafficking are also quite commonly charged with PWITD.

In general terms, PWITD involves manufacture or delivery, or intended delivery, of any quantity of prohibited substances.  Trafficking involves similar activity or possession, with the additional requirement that the prohibited substances exceed specified quantities.  Table 2 lists weight or dosage thresholds for generalized drug types in the three trafficking tiers.

**Table 2.  Drug trafficking weight/dosage thresholds**

| Drug Type | Tier 1 | Tier 2 | Tier 3 |
|---|---|---|---|
| Cocaine | 10 to <50 grams | 50 to <100 grams | 100 + grams |
| Marijuana | 5 to <100 pounds | 100 to <500 pounds | 500 + pounds |
| Heroin | 2.5 to <10 grams | 10 to <50 grams | 50 + grams |
| PCP, Amphetamine, Methamphetamine | 5 to <50 grams | 50 to <100 grams | 100 + grams |
| LSD | 50 doses to <100 doses | 100 doses to <500 doses | 500 + doses |
| Designer drugs, MDMA | 25 doses to <250 doses | 250 doses to <500 doses | 500 + doses |

In the 2005 timeframe, drug trafficking was a felony B.  Trafficking drugs other than heroin carried 2 year minimums for the first weight/dosage tiers, and 4 or 8 year minimums for higher weights/dosages.  Trafficking heroin (or other opium derivatives) carried 3 year minimums for

4

the first weight tier, and 10 or 25 year minimums for higher weights.  Good time credits could be earned but not applied during the minimum trafficking terms.

PWITD offenses were generally class C or E felonies.  Possession with intent to deliver a narcotic drug was a felony B if death resulted from the use of the drug; charging under that provision is a rare occurrence.  If non-controlled substances were sold or offered as controlled substances, that offense was a felony D.

Provisions for mandatory sentencing as a non-addict existed but were rarely used.  Typically PWITD resulted in mandatory sentences only when there was a prior drug dealing conviction.  In 2005 the minimums for those situations were 5 years for heroin and 3 years for other drugs.  PWITD sentences with prior conviction enhancements could earn good time credits but those credits could not be applied during the minimum terms.  With some restrictions, minimum mandatory sentences for trafficking and PWITD could be deferred for the 6 month Boot Camp program.

### Arrests

Four geographic regions were identified for study: Wilmington, New Castle County excluding Wilmington, Kent County, and Sussex County.  It is important to consider regional criminal justice data in the context of demographic variability.  Table 3 shows 2005 adult male racial compositions in each geographic region.  Percentages shown are of adult males in each region.

**Table 3.  2005 Delaware adult male population estimates by race and region**

| Region | Adult Male Population | Black | | White | | Other | |
|---|---|---|---|---|---|---|---|
| | | N | % | N | % | N | % |
| Statewide | 304,404 | 57,475 | 18.9% | 237,046 | 77.9% | 9,883 | 3.2% |
| NC County (excl. Wilm.) | 162,047 | 25,392 | 15.7% | 130,479 | 80.5% | 6,176 | 3.8% |
| Wilmington | 25,365 | 13,225 | 52.1% | 10,760 | 42.4% | 1,380 | 5.4% |
| Kent County | 49,826 | 10,493 | 21.1% | 38,071 | 76.4% | 1,262 | 2.5% |
| Sussex County | 67,166 | 8,365 | 12.5% | 57,736 | 86.0% | 1,065 | 1.6% |

Source: Delaware Population Consortium Annual Population Projections, October 29, 2009, Version 2009.0, 2005 figures with adults estimated as 40% of 15-19 year-olds plus all ages 20 and over.

Table 4 shows summary counts of 2005 adult male arrest subjects identified for the study with proportions by racial and ethnic groups in each geographic region.  The Hispanic group includes Black and White subjects, but a large majority of that group is White.  The Black and White groups were those identified as non-Hispanic from available information.

**Table 4.  2005 regional adult male arrests, Race and Incarceration offense groups**

| Region | Adult Male Arrests | Black | | White | | Hispanic | | Other | |
|---|---|---|---|---|---|---|---|---|---|
| | | N | % | N | % | N | % | N | % |
| *Statewide* | *3,628* | *2,128* | *58.7%* | *1,204* | *33.2%* | *291* | *8.0%* | *5* | *0.1%* |
| NC County (excl. Wilm.) | 1,340 | 646 | 48.2% | 574 | 42.8% | 120 | 9.0% | 0 | 0.0% |
| Wilmington | 926 | 767 | 82.8% | 55 | 5.9% | 103 | 11.1% | 1 | 0.1% |
| Kent County | 663 | 390 | 58.8% | 253 | 38.2% | 19 | 2.9% | 1 | 0.2% |
| Sussex County | 699 | 325 | 46.5% | 322 | 46.1% | 49 | 7.0% | 3 | 0.4% |

Population and arrest racial proportions in Tables 3 and 4 vary widely over geographic regions. Black proportions of adult males range from 12.5 percent in Sussex County to 52.1 percent in Wilmington, and their arrest proportions range from 46.5 percent in Sussex County to 82.8 percent in Wilmington.  Figure 1 displays those disparities graphically.

**Figure 1.  Black adult male population and study group arrest proportions by region, 2005**



Observations of racial arrest disparities often lead to questions of racial targeting or selective enforcement.  That issue was partially explored in this study through three of the crime groups. Incidents of rape, robbery, or assault often involve contact through which victims or witnesses report descriptions of their attackers.  Data from 2005 complaints, with or without arrests, were used to summarize reported race or ethnicity of male suspects, as shown in Figure 2.

**Figure 2.  Reported race and ethnicity of male suspects in selected 2005 complaint groups**



Source: Statewide 2005 complaint data representing juvenile and adult male offenders/suspects.  Race and ethnicity percentages do not add to 100% due to the omission of other and unknown races.

Based on information reported about crimes known to police, Figure 2 implies significantly disproportionate involvement by race.  While offenses within crime groups are not necessarily

similar, the groupings offer general characterizations of the nature of crimes in which offenders were involved. In that sense, Figure 2 also implies that racial involvement varies significantly over different types of crimes.

Table 5 shows the arrest breakdown by race within the study crime groups. Black adult males have varying degrees of disproportionate representation in each of the five crime groups, ranging from 36.1 percent for burglary to 72.9 percent for drug dealing.

**Table 5.  2005 statewide adult male arrests, Race and Incarceration crime groups**

| Offense Group | Adult Male Arrests | Black | | White | | Hispanic | | Other | |
|---|---|---|---|---|---|---|---|---|---|
| | | N | % | N | % | N | % | N | % |
| Rape | 210 | 87 | 41.4% | 94 | 44.8% | 29 | 13.8% | 0 | 0.0% |
| Robbery | 369 | 238 | 64.5% | 106 | 28.7% | 25 | 6.8% | 0 | 0.0% |
| Felony Assault | 527 | 282 | 53.5% | 195 | 37.0% | 49 | 9.3% | 1 | 0.2% |
| Burglary | 862 | 311 | 36.1% | 500 | 58.0% | 50 | 5.8% | 1 | 0.1% |
| Drug Dealing | 1,660 | 1,210 | 72.9% | 309 | 18.6% | 138 | 8.3% | 3 | 0.2% |
| *Total of Groups* | *3,628* | *2,128* | *58.7%* | *1,204* | *33.2%* | *291* | *8.0%* | *5* | *0.1%* |

Tables 6 through 10 show regional adult male arrests by race and ethnicity in each of the study crime groups. Figures 3 through 7 show the disproportionality of Black arrests in each crime group and region compared to the percentage of Black adult males in each region.

**Table 6.  2005 adult male rape arrests by region and race**

| Region | Rape Arrests | Black | | White | | Hispanic | |
|---|---|---|---|---|---|---|---|
| | | N | % | N | % | N | % |
| Statewide | 210 | 87 | 41.4% | 94 | 44.8% | 29 | 13.8% |
| NC County (excl. Wilm.) | 68 | 31 | 45.6% | 25 | 36.8% | 12 | 17.6% |
| Wilmington | 21 | 14 | 66.7% | 2 | 9.5% | 5 | 23.8% |
| Kent County | 60 | 27 | 45.0% | 32 | 53.3% | 1 | 1.7% |
| Sussex County | 61 | 15 | 24.6% | 35 | 57.4% | 11 | 18.0% |

**Figure 3.  Black adult male population and rape arrest proportions by region, 2005**



**Table 7.  2005 adult male robbery arrests by region and race**

| Region | Robbery Arrests | Black | | White | | Hispanic | |
|---|---|---|---|---|---|---|---|
| | | N | % | N | % | N | % |
| Statewide | 369 | 238 | 64.5% | 106 | 28.7% | 25 | 6.8% |
| NC County (excl. Wilm.) | 161 | 96 | 59.6% | 54 | 33.5% | 11 | 6.8% |
| Wilmington | 84 | 61 | 72.6% | 12 | 14.3% | 11 | 13.1% |
| Kent County | 56 | 35 | 62.5% | 21 | 37.5% | 0 | 0.0% |
| Sussex County | 68 | 46 | 67.6% | 19 | 27.9% | 3 | 4.4% |

**Figure 4.  Black adult male population and robbery arrest proportions by region, 2005**



**Table 8.  2005 adult male felony assault arrests by region and race**

| Region | Felony Assault Arrests | Black | | White | | Hispanic | | Other |
|---|---|---|---|---|---|---|---|---|
| | | N | % | N | % | N | % | N |
| Statewide | 527 | 282 | 53.5% | 195 | 37.0% | 49 | 9.3% | 1 |
| NC County (excl. Wilm.) | 217 | 96 | 44.2% | 102 | 47.0% | 19 | 8.8% | 0 |
| Wilmington | 128 | 101 | 78.9% | 17 | 13.3% | 10 | 7.8% | 0 |
| Kent County | 71 | 41 | 57.7% | 25 | 35.2% | 5 | 7.0% | 0 |
| Sussex County | 111 | 44 | 39.6% | 51 | 45.9% | 15 | 13.5% | 1 |

**Figure 5.  Black adult male population and felony assault arrest proportions by region, 2005**



**Table 9.  2005 adult male burglary arrests by region and race**

| Region | Burglary Arrests | Black | | White | | Hispanic | | Other |
|---|---|---|---|---|---|---|---|---|
| | | N | % | N | % | N | % | N |
| Statewide | 862 | 311 | 36.1% | 500 | 58.0% | 50 | 5.8% | 1 |
| NC County (excl. Wilm.) | 340 | 85 | 25.0% | 234 | 68.8% | 21 | 6.2% | 0 |
| Wilmington | 102 | 75 | 73.5% | 9 | 8.8% | 18 | 17.6% | 0 |
| Kent County | 179 | 73 | 40.8% | 104 | 58.1% | 2 | 1.1% | 0 |
| Sussex County | 241 | 78 | 32.4% | 153 | 63.5% | 9 | 3.7% | 1 |

**Figure 6.  Black adult male population and burglary arrest proportions by region, 2005**



**Table 10.  2005 adult male drug dealing arrests by region and race**

| Region | Drug Dealing Arrests | Black | | White | | Hispanic | | Other |
|---|---|---|---|---|---|---|---|---|
| | | N | % | N | % | N | % | N |
| Statewide | 1,660 | 1,210 | 72.9% | 309 | 18.6% | 138 | 8.3% | 3 |
| NC County (excl. Wilm.) | 554 | 338 | 61.0% | 159 | 28.7% | 57 | 10.3% | 0 |
| Wilmington | 591 | 516 | 87.3% | 15 | 2.5% | 59 | 10.0% | 1 |
| Kent County | 297 | 214 | 72.1% | 71 | 23.9% | 11 | 3.7% | 1 |
| Sussex County | 218 | 142 | 65.1% | 64 | 29.4% | 11 | 5.0% | 1 |

**Figure 7.  Black adult male population and drug dealing arrest proportions by region, 2005**



9

## <u>Detention</u>

Many defendants have multiple active cases at the time of a selected arrest, so it is difficult to associate detention with a single case and that case alone.  As a substitute measure, this study identified any secure custody between a study subject's arrest and final disposition as detention. Table 11 shows the percentage of defendants detained for any period in each race/ethnic group and each crime group.

**Table 11.  2005 defendants detained any time between arrest and final disposition**



| | Rape | Robbery | Felony Assault | Burglary | Drug Dealing | All Groups |
|---|---|---|---|---|---|---|
| Black | 88.5% | 97.0% | 77.8% | 85.2% | 85.4% | 85.8% |
| White | 72.0% | 90.3% | 68.3% | 72.5% | 63.0% | 71.5% |
| Hispanic | 100.0% | 95.8% | 84.8% | 92.3% | 80.6% | 86.6% |

Detention is an extremely complicated topic, and some important elements needed for thorough analysis are not recorded in the state's criminal justice information system.  Among the factors that should be included in analysis of bail and detention are:

- Criminal history, including non-appearance in court and fugitive records
- Multiple concurrent case complications
- Employment status and history
- Residential status and history
- Immigration status
- Financial situation

10

### Convictions and Incarceration Sentences

A defendant was counted as convicted when there was at least one conviction on any charge within the study case or cases.  Table 12 shows convicted defendants in each race/ethnicity and crime group as percentages of defendants whose cases reached final disposition.

**Table 12.  Convicted defendants, as percent of 2005 defendants with final case dispositions**



| | Rape | Robbery | Felony Assault | Burglary | Drug Dealing | All Groups |
|---|---|---|---|---|---|---|
| Black | 83.9% | 79.5% | 60.7% | 70.4% | 85.8% | 79.2% |
| White | 90.3% | 91.3% | 75.3% | 77.2% | 88.3% | 81.6% |
| Hispanic | 85.2% | 75.0% | 67.4% | 84.0% | 88.4% | 82.6% |

As seen in Table 12, conviction variability is larger for crimes of rape, robbery, felony assault, and burglary than for drug dealing.  In crime groups other than drug dealing, cooperation of persons outside the criminal justice system substantially affects prosecution.  Factors associated with victim and witness cooperation should be analyzed further to identify possible racial and ethnic influences.

Table 13, on the following page, shows percentages of convicted defendants who were sentenced to any incarceration term, including time served.  Variability in Table 13 is similar to detention variability seen in Table 11, so detention and time served appear to play key roles in the incarceration data.  It is not possible to determine, however, if reduced detention variability would result in commensurate reductions in incarceration variability.

Among the factors influencing incarceration decisions are criminal history records.  Full criminal histories were not available for this study.  Analysis included Delaware records only, but many offenders have activity in other jurisdictions.  Prior Delaware felony arrests were identified to explore a possible influence of criminal history on incarceration sentences.  Table 14 shows percentages of convicted defendants with at least one Delaware felony arrest prior to the 2005 study arrest.

**Table 13.  Convicted 2005 defendants sentenced to incarceration**



| | Rape | Robbery | Felony Assault | Burglary | Drug Dealing | All Groups |
|---|---|---|---|---|---|---|
| Black | 67.1% | 89.8% | 57.3% | 56.9% | 60.2% | 63.2% |
| White | 65.5% | 78.7% | 45.7% | 53.4% | 36.9% | 52.3% |
| Hispanic | 95.7% | 100.0% | 54.8% | 73.8% | 64.9% | 71.1% |

**Table 14.  Convicted 2005 defendants with Delaware felony arrest(s) prior to study case**



| | Rape | Robbery | Felony Assault | Burglary | Drug Dealing | All Groups |
|---|---|---|---|---|---|---|
| Black | 64.4% | 77.0% | 76.2% | 83.5% | 84.4% | 81.6% |
| White | 40.5% | 66.0% | 59.3% | 79.1% | 65.0% | 67.9% |
| Hispanic | 34.8% | 66.7% | 41.9% | 77.3% | 70.2% | 63.6% |

12

Tables 13 and 14 show that differences in incarceration sentences for Blacks and Whites could be closely associated with criminal history differences, but the same cannot be said for Hispanics.  More study is needed before conclusions can be drawn in this area.

Sentencing results presented in this phase relate only to the number of defendants sentenced to incarceration, but sentence length is also a key prison population factor and a reasonable issue to be raised in questions of fairness.  Offender background and other complexities become even more critical in this aspect of sentencing, and this is another important area that must receive greater attention in future research.

In addition to many other sentencing considerations, the Delaware Sentencing Accountability Commission (SENTAC) established lists of aggravating and mitigating factors that justify sentencing outside of standard ranges.  Those lists are shown in Table 15 to give readers a sense of the complexity of issues that can influence sentencing decisions.

**Table 15.  Delaware SENTAC aggravating and mitigating factors**

**Aggravating Factors:**

- Excessive Cruelty
- Prior Violent Criminal Conduct
- Repetitive Criminal Conduct
- Need for Correctional Treatment
- Undue Depreciation of Offense
- Major Economic Offense or Series of Offenses
- Prior Abuse of Victim
- Custody Status at Time of Offense
- Lack of Remorse
- Betrayal of Public Trust
- Supervision to Monitor Restitution
- Lack of Amenability
- Vulnerability of Victim
- Statutory Aggravation
- Statutory Habitual Offender
- Child Domestic Violence Victim
- Offense Against a Child
- Sentenced to Time Already Served Only

**Mitigating Factors:**

- Victim Involvement
- Voluntary Redress or Treatment
- Under Duress or Compulsion
- Inducement by Others
- Physical/Mental Impairment
- Concern for Victim by Non-Principal
- No Prior Convictions
- Treatment Need Exceeds Need for Punishment
- Could Lose Employment
- Statutory Mitigation
- Assistance to Prosecution
- Mental Retardation
- Other

13

<u>**Conclusions**</u>

This study was designed to track criminal justice processes from arrest through sentencing. That limited scope cannot provide a complete understanding of what causes the racial disparities that are readily observed among criminal justice clients.  In addition to factors outside the scope of this study, there are many contributing factors outside the criminal justice system's purview that must also be considered.

Keeping the limitations of the study in mind, there are still useful observations to be made.  The range of criminal justice activity studied can be viewed at various phases to compare racial and ethnic proportions throughout the process.  Observation of significant changes between phases can help to shape and focus future analysis.

Figure 8 provides an example using phases of arrest, conviction, and sentencing to incarceration for adult males in all five crime groups of the study.  Starting with arrest as the entry point, we can postulate that each subsequent phase should have consistent racial and ethnic compositions. When that is not the case, we should explore what influenced the changes between phases.

**Figure 8.  Race/ethnicity of 2005 male subjects at criminal justice phases, all crime groups**



In Figure 8, small but notable changes occur between the phases of conviction and sentencing to incarceration.  While the broad range of crimes studied will affect sentencing outcomes, there are indications from this study that those changes could in part be attributed to criminal history and detention differences.  Further study is needed to fully identify and test the merits of sentencing influences.

Figure 8 highlights another problem that must be addressed in future study.  This analysis starts at the point of arrest, but that is an area where the issue of racial fairness is brought into question. The three phases studied retain similar racial compositions, but some questions remain about why the starting point, arrest, is racially disproportionate.  Other than drug dealing, crimes analyzed in this study directly involve individuals, businesses, or other entities as victims.  Rape, robbery, and assault generally involve observation of offenders by victims or witnesses; offender

14

descriptions are part of the complaint data collection process.  Those three crime groups present an opportunity to compare suspect demographics reported by victims/witnesses in complaints to arrestee demographics.  From that comparison we can draw inferences about whether or not disparate arrest demographic data reflects disparate criminal involvement or other factors.  To illustrate this, Figures 9 through 11 show process phase racial/ethnic compositions as in Figure 8; a bar for complaint data has been added to put arrest compositions in perspective.

**Figure 9.  Race/ethnicity of 2005 male subjects at criminal justice phases, rape**





**Figure 10.  Race/ethnicity of 2005 male subjects at criminal justice phases, robbery**



**Figure 11.  Race/ethnicity of 2005 male subjects at criminal justice phases, felony assault**



Figures 9 through 11 indicate differing degrees of changes between reporting and arrest phase racial compositions, but in each group proportions of suspects reported as Black in complaints exceeded proportions of arrested Blacks.  Indications from these data are that racial disparities in arrests are driven by disproportionate involvement in crimes of rape, robbery, and felony assault.

Figure 12 shows process phase proportions for burglary.  The reporting phase was not analyzed for burglary due to the large number of incidents included which do not involve victim reports of suspect descriptions.  Some burglaries do involve direct contact between victims and offenders, however, and future analysis could compare reported involvement to arrest proportions.

**Figure 12.  Race/ethnicity of 2005 male subjects at criminal justice phases, burglary**



16

Drug dealing process phase proportions are shown in Figure 13. Drug dealing does not involve specific individual victims, and these arrests may be perceived to be police-initiated. But these crimes often involve neighborhood quality of life complaints or investigations of other criminal activity, and the drug trade has long been associated with high levels of street violence. It is therefore problematic to regard drug dealing arrests as simply discretionary law enforcement choices.

Drug dealing arrests show significant racial disparities, and there is critical need of further study in this area. Drug use surveys, which show closer racial parity, appear to shape expectations for similar balance in drug sales or trafficking arrests. But drug use and sales involvement are quite different in nature. Additional analysis should focus on community and law enforcement perspectives that influence police policy and practice in drug dealing arrests.

**Figure 13. Race/ethnicity of 2005 male subjects at criminal justice phases, drug dealing**



In this study, arrest disparities appear to be a primary factor in disproportionate incarceration. More analysis is required to fully understand the association between criminal involvement and arrest disparities. Where inferences can be drawn from what has been studied thus far, it appears that criminal involvement, rather than racial targeting, is a primary factor in arrest disparities.

It is of critical importance to criminal justice system integrity that racial disparity continues as a high priority research topic. Though work from the 2005 time frame would be left incomplete, it is recommended that future research efforts should focus on more recent periods for relevance. Changes in laws, policing, criminal activity, demographics, and other underlying factors can lead to criminal justice population shifts in just a few years.

17