# EXHIBIT 26

# IN THE DISTRICT COURT OF APPEAL OF FLORIDA, THIRD DISTRICT

_____

Case No.: 3D22-2180

L.T. No.: F22-15012

_____

STATE OF FLORIDA,
*Appellant,*

v.

RONALD LEE MILLER,
*Appellee.*

_____

ON APPEAL FROM A FINAL ORDER OF THE CIRCUIT COURT
FOR THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

_____

## MOTION OF AMERICAN CIVIL LIBERTIES UNION, BRENNAN CENTER FOR JUSTICE, AMERICAN CIVIL LIBERTIES UNION OF FLORIDA, AND NAACP LEGAL DEFENSE AND EDUCATIONAL FUND FOR LEAVE TO FILE AN *AMICI CURIAE* BRIEF IN SUPPORT OF APPELLEE RONALD LEE MILLER

Pursuant to Florida Rule of Appellate Procedure 9.370, the American Civil Liberties Union ("ACLU"), Brennan Center for Justice at NYU School of Law (the "Brennan Center"), American Civil Liberties Union of Florida ("ACLU-FL"), and NAACP Legal Defense and Educational Fund, Inc. ("LDF") respectfully move this Honorable Court

for leave to file the attached brief as *Amici Curiae* in support of Appellee Ronald Lee Miller. In support of this motion, proposed *amici* state the following:

1. *Amici* are nonprofit, nonpartisan civil and voting rights organizations that seek to uphold and protect rights guaranteed to all citizens by the Constitution, including the right to vote.

2. *Amici* supported Amendment 4, the historic state constitutional amendment that brought an end to Florida's system of lifetime disenfranchisement. And for over two decades, *amici* have worked inside and outside of the courtroom to expand and defend the right to vote of returning citizens[1] in Florida and in other states.

3. The issue to be addressed in this case is whether the Office of Statewide Prosecution ("OSP") has authority to prosecute an isolated incident of an individual, acting alone in one judicial circuit, for purportedly registering to vote and voting while ineligible.

4. *Amici* have a significant interest in the resolution of this issue because Appellant seeks an unprecedented expansion of OSP's

_____

[1] A "returning citizen" is an individual with a felony conviction.

authority. Such an expansion would risk the unjust prosecutions of additional returning citizens whom the State has confused or misled about their eligibility. And those prosecutions would, in turn, result in further intimidation and disenfranchisement of eligible voters in Florida, a disproportionate number of whom are Black because of bias in the criminal system.

5. The participation of *amici* will benefit this Court by demonstrating how this dramatic expansion of OSP's authority—in addition to being radically at odds with OSP's constitutional authority, as well as its original intent and longstanding practice—would have far-reaching consequences for fair democracy in Florida, particularly given the State's failure to administer its complex voting-rights restoration system.

6. The participation of *amici* will not cause any delay or disruption in these proceedings.

7. Undersigned counsel certifies that they have consulted with both the Appellant and Appellee, who have both consented to ACLU's, the Brennan Center's, ACLU-FL's, and LDF's participation as *amici curiae*.

3

WHEREFORE, ACLU, the Brennan Center, ACLU-FL, and LDF respectfully request this Honorable Court grant this motion for leave to file the attached brief as *amici curiae* in support of Appellee.

Dated September 25, 2023.

**AMERICAN CIVIL LIBERTIES UNION**

*/s/ Julie Ebenstein*
Julie Ebenstein
Casey Smith (*pro hac vice* pending)
125 Broad St.
New York, NY 10004
(212) 607-3300
jebenstein@aclu.org
csmith@aclu.org

**BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW**

*/s/ Patrick Berry*
Patrick Berry (*pro hac vice* pending)
120 Broadway, Suite1750
New York, NY 10271
(646) 925-8754
berryp@brennan.law.nyu.edu

**NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.**

*/s/ Leah C. Aden*
Leah C. Aden (*pro hac vice pending*)
50 Rector St, FL 5
New York, NY 10006
(212) 965-2200
laden@naacpldf.org

**PROSKAUER ROSE LLP**

*/s/ Matthew Triggs*
Matthew Triggs (FBN 865745)
One Boca Place
2255 Glades Road
Suite 421, Atrium
Boca Raton, Florida 33431-7360
(561) 241-7400
mtriggs@proskauer.com

**ACLU FOUNDATION OF FLORIDA**

*/s/ Caroline A. McNamara*
Caroline A. McNamara (FBN 1038312)
Daniel B. Tilley (FBN 102882)
4343 W Flagler St, Suite 400
Miami, FL 33138
(786) 363-2714
cmcnamara@aclufl.org
dtilley@aclufl.org

Nicholas L.V. Warren (FBN 1019018)
336 E College Ave, Suite 203
Tallahassee, FL 32301
(786) 363-1769
nwarren@aclufl.org

*Counsel for Amici Curiae*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 25, 2023, a true and correct copy of the foregoing will be furnished via the Florida Court's E-Filing Portal to:

**Office of the Attorney General**
Henry C. Whitaker
Jeffrey Paul DeSousa
Alison E. Preston
The Capitol, PL-01
Tallahassee, Florida 32399
(850) 414-3300
alison.preston@myfloridalegal.com

Jeremy B. Scott
SunTrust International Center
One SE Third Ave, Suite 900
Miami, FL 33131
(786) 792-6196
jeremy.scott@myfloridalegal.com

*Counsel for the State of Florida*

**Robert I. Barrar P.A.**
6619 South Dixie Highway
#311
Miami, FL 33143
(305) 576-5600
RobertIBarrarPA@gmail.com
Rbarrar@bellsouth.net

**Raul De La Heria Jr.**
999 Ponce De Leon Blvd.
#510
Coral Gables, FL 33134
(305) 858-2808
raul@delaheria.com
gus@delaheria.com

*Counsel for Ronald Lee Miller*

*/s/ Matthew Triggs*
Matthew Triggs

# IN THE DISTRICT COURT OF APPEAL OF FLORIDA, THIRD DISTRICT

-------------------------

Case No.: 3D22-2180
L.T. No.: F22-15012

-------------------------

STATE OF FLORIDA,
*Appellant,*

v.

RONALD LEE MILLER,
*Appellee.*

-------------------------

ON APPEAL FROM A FINAL ORDER OF THE CIRCUIT COURT
FOR THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

-------------------------

**BRIEF OF *AMICI CURIAE***
**AMERICAN CIVIL LIBERTIES UNION, BRENNAN CENTER FOR
JUSTICE, AMERICAN CIVIL LIBERTIES UNION OF FLORIDA,
AND NAACP LEGAL DEFENSE AND EDUCATIONAL FUND
IN SUPPORT OF APPELLEE RONALD LEE MILLER**

-------------------------

AMERICAN CIVIL LIBERTIES
UNION
Julie A. Ebenstein (FBN 91033)
Casey Smith (*pro hac vice* pending)
125 Broad St.
New York, NY 10004
(212) 549-2500
jebenstein@aclu.org
csmith@aclu.org

PROSKAUER ROSE LLP
Matthew Triggs (FBN 865745)
One Boca Place
2255 Glades Road
Suite 421 Atrium
Boca Raton, Florida 33431-7360
(561) 241-7400
mtriggs@proskauer.com

BRENNAN CENTER FOR JUSTICE
AT NYU SCHOOL OF LAW
Patrick Berry (*pro hac vice* pending)
120 Broadway, Suite1750
New York, NY 10271
(646) 925-8754
berryp@brennan.law.nyu.edu


NAACP LEGAL DEFENSE
AND EDUCATIONAL FUND, INC.
Leah C. Aden (*pro hac vice* pending)
40 Rector St, FL 5
New York, NY 10006
(212) 965-2200
laden@naacpldf.org

ACLU FOUNDATION OF FLORIDA
Caroline A. McNamara (FBN
1038312)
Daniel B. Tilley (FBN 102882)
4343 W Flagler St, Suite 400
Miami, FL 33138
(786) 363-2714
cmcnamara@aclufl.org
dtilley@aclufl.org


Nicholas L.V. Warren (FBN
1019018)
336 E College Ave, Suite 203
Tallahassee, FL 32301
(786) 363-1769
nwarren@aclufl.org


*Counsel for Amici Curiae*

# **TABLE OF CONTENTS**

STATEMENT OF INTEREST OF *AMICI CURIAE* ....................... 1

PRELIMINARY STATEMENT ................................................... 3

ARGUMENT ............................................................................. 6

   I.  OSP LACKS AUTHORITY TO PROSECUTE
      MR. MILLER .................................................................... 6

     A.     OSP's Prosecution of Mr. Miller Stands in Contrast
           to the History and Intent Behind OSP's Creation,
           and to OSP's Longstanding Practice. .................... 7

     B.     Appellant's Position Would Expand OSP's
           Authority Beyond the Limits Set by the Florida
           Constitution ........................................................ 13

          1. The Constitution Limits OSP's Authority to
             Multi-Circuit, Organized Crimes That Cannot Be
             Efficiently Prosecuted by State Attorneys.. ..... 13

          2. The Legislature Cannot Expand OSP's Statutory
             Authority Beyond the Constitution ................ 17

  II.  MR. MILLER'S CASE INVOLVES, AT WORST, AN
      ISOLATED INSTANCE OF VOTER CONFUSION CAUSED
      BY FLORIDA'S FAILURE TO ADMINISTER ITS VOTING-
      RIGHTS RESTORATION SYSTEM. ................................ 20

  III. ALLOWING OSP TO PROSECUTE ISOLATED INCIDENTS
      OF VOTER CONFUSION WILL CHILL VOTING BY
      ELIGIBLE RETURNING CITIZENS. ............................... 25

CONCLUSION ...................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Advisory Op. to Governor re: Implementation of Amendment 4, the Voting Restoration Amendment*,
   288 So.3d 1070 (Fla. 2020) ................................................. 13, 15

*Advisory Op. to Governor—1996 Amendment 5*,
   706 So. 2d 278 (Fla. 1997) ....................................................... 15

*Carbajal v. State*,
   75 So. 3d 258 (Fla. 2011) ......................................................... 15

*Corrales v. State*,
   84 So.3d 406 (Fla. 1st DCA 2012) ............................................. 23

*Dep't of Env'tal Prot. v. Millender*,
   666 So.2d 882 (Fla. 1996) ......................................................... 14

*Fla. Dep't of Agric. & Consumer Servs. v. Dolliver*, 283 So.3d 953
   (Fla. 2d DCA 2019).................................................................. 18

*Fla. Hosp. Waterman, Inc. v. Buster*,
   984 So.2d 478 (Fla. 2008) ......................................................... 17

*Gallant v. Stephens*,
   358 So.2d 536 (Fla. 1978) ......................................................... 14

*Gray v. Bryant*,
   125 So.2d 846 (Fla. 1960) ......................................................... 13

*Jones v. DeSantis*,
   462 F.Supp.3d 1196 (N.D. Fla. 2020) .......................................... 4

*Jones v. Governor of Fla.*,
   975 F.3d 1016 (11th Cir. 2020).................................. 4, 21, 22, 25

*Lab'y Corp. of Am. v. Davis*,
   339 So. 3d 318 (Fla. 2022) ......................................................... 15

*Notami Hosp. of Fla., Inc. v. Bowen,*
  927 So.2d 139 (Fla. 1st DCA 2006) ..................................... 17, 20

*United States v. Hall,*
  346 F.2d 875 (2d Cir. 1965) ..................................................... 24

*Winter v. State,*
  781 So.2d 1111 (Fla. 1st DCA 2001) .................................. 15, 17

## Constitutional Provisions

Art. IV, § 4, Fla. Const....................................................... 7, 11, 14

Art. VI, § 4, Fla. Const................................................................. 3

## Laws & Statutes

§ 104.011, Fla. Stat. (2022) .......................................................... 23

§ 104.15, Fla. Stat. (2022) ............................................................ 23

§ 97.071, Fla. Stat. (2022) ............................................................ 22

§ 98.075, Fla. Stat. (2022) ............................................................ 21

§ 98.0751, Fla. Stat. (2022) .......................................................... 21

§ 98.093, Fla. Stat. (2022) ............................................................ 22

Ch. 2005-277, § 73, Laws of Fla................................................... 18

Ch. 2019-162, § 25, Laws of Fla................................................. 3, 4

Ch. 2023-120, § 4, Laws of Fla..................................................... 23

Ch. 2023-2, § 1, Laws of Fla......................................................... 19

Ch. 85-179, § 1, Laws of Fla......................................................... 11

Fla. HJR 386 (1985) ...................................................................... 11

## Regulations

Fla. Admin. Code R. 1S-2.039 ..................................................... 21

Fla. Admin. Code R. 1S-2.041 ....................................................... 21

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)........................................................ 13, 15

En Banc Opening Brief of Defendants-Appellants, *Jones v. Governor of Fla.*, 975 F.3d 1016 (No. 20-12003) ........................................ 24

En Banc Reply Brief of Defendants-Appellants, *Jones v. Governor of Fla.*, 975 F.3d 1016 (No. 20-12003)........................................... 24

First Coast News, *Watch Live: Governor DeSantis Press Conference*, YouTube (Aug. 18, 2022)..................................................... 5, 26

Fla. Dep't L. Enf't, *Investigative Report* (2021).............................. 22

Fla. Div. Elections, Initiative Information, *Authority of Attorney General to Appoint a Statewide Prosecutor* ................................. 16

Fla. Exec. Order No. 84-150 (Aug. 8, 1984) ................................. 8, 9

Fla. H.R. Comm. on Judiciary, HB 3B (2023) Post-Meeting Staff Analysis (Feb. 8, 2023) ............................................................. 19

*Florida Bans Voting Rights of Over One Million Citizens*, Sent'g Proj. (Jan. 2023)................................................................................. 27

Form DS-DE 39, *Florida Voter Registration Application*, Fla. Dep't St. (Oct. 2013) ................................................................................ 23

Lori Rozsa, *The First Arrests from DeSantis's Election Police Take Extensive Toll*, Wash. Post (May 1, 2023) ............................. 12, 26

Matt Dixon, *Defendants Targeted in DeSantis' Voter Fraud Crackdown Were Told They Could Vote*, Politico (Aug. 26, 2022) 20

Matt Shuham, S*ome Eligible Ex-Felons Fear Voting Because Of Ron DeSantis*, HuffPost (Oct. 28, 2022) .......................................... 25

Memorandum from Jonathan Olson, Div. Supervisor, State Att'y Off., Fifth Jud. Cir. (June 13, 2022) ......................................... 24

Memorandum from Office of the Attorney General to All Department Employees (Apr. 11, 2016) ....................................................... 27

Memorandum from Office of the Attorney General to All Department Employees (Mar. 9, 2012).......................................................... 27

Michael Wines, *In Voter Fraud, Penalties Often Depend on Who's Voting*, N.Y. Times (Sept. 7, 2022) ............................................. 27

News Service of Florida, *Florida Elections Officials Grapple with Misinformation, Myths*, Tampa Bay Times (Oct. 26, 2022).......... 26

Office of the Attorney General, *Office of Statewide Prosecution*...... 12

Office of the Attorney General, *Office of Statewide Prosecution Annual Reports*.......................................................................... 12

Opposition to Application to Vacate the En Banc 11th Circuit's Stay, *Raysor v. DeSantis*, 140 S.Ct. 2600 (2020) (No. 19A1071) ............................................................................ 24

Order Granting Def.'s Mot. to Dismiss Due to Lack of Subject Matter Jurisdiction, *State v. Hubbard*, No. 22008077CF10A (Fla. 17th Cir. Ct. Dec. 23, 2022) ....................................................... 19

Order on Mot. to Dismiss, *State v. Wood*, No. 13-2022-CF-015009-0001-XX (Fla. 11th Cir. Ct. Oct. 21, 2022) ................................. 19

Paul Blest & Trone Dowd, *'Complete Setup': Florida Crackdown Has Ex-Felons Afraid to Vote*, Vice (Nov. 3, 2022).............................. 25

R.S. Palmer & Barbara M. Linthicum, *The Statewide Prosecutor: A New Weapon Against Organized Crime*, 13 Fla. St. U. L. Rev. 653 (1985) .............................................................................. passim

Sam Levine, *Floridians Charged Over Voting Believed They Were Eligible, Documents Show*, Guardian (Aug. 25, 2022)........... 20, 23

The Florida Bar Special Committee on the Statewide Prosecution Function, Report to the Board of Governors (1977)...................... 8

Trial Transcript, *Jones v. DeSanti*s, No. 4:19cv300-RH/MJF (N.D. Fla. May 4, 2020) ...................................................................... 21

Wayne Washington, *Voter Intimidation? Black Voters Over-Represented Among Those Arrested So Far for Election Crimes*, Palm Beach Post (Oct. 10, 2022) .............................................. 26

## STATEMENT OF INTEREST OF *AMICI CURIAE*

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization dedicated to defending the civil liberties guaranteed by the Constitution and our nation's civil rights laws. The ACLU of Florida ("ACLU-FL") is its Florida affiliate and has more than 50,000 members statewide. The protection and expansion of voting rights, as well as the rights of the accused in criminal proceedings, are of great concern to both organizations. Specifically, the ACLU and ACLU-FL combat voter suppression, including that faced by Black people, who are disproportionately incarcerated and subject to felony disenfranchisement.

The Brennan Center for Justice at NYU Law School[1] (the "Brennan Center") is a nonprofit, nonpartisan law and policy institute that seeks to strengthen, revitalize, and defend our systems of democracy and justice. Through its Voting Rights Program, the Brennan Center works nationwide to re-enfranchise Americans with past convictions. The Brennan Center also regularly participates as counsel or *amicus* in litigation related to felony disenfranchisement.

---

[1] This brief does not purport to convey the position of New York University School of Law.

1

The NAACP Legal Defense and Educational Fund, Inc. ("LDF") is a nonprofit, nonpartisan, legal organization founded in 1940 under the leadership of Thurgood Marshall to secure equal justice under the law for all Americans and to break down barriers that prevent Black people from realizing their basic civil and human rights. To this end, LDF has spearheaded litigation, legislation, education, and other advocacy to end felony disenfranchisement and challenge baseless prosecutions of Black voters for alleged voter fraud.

For over two decades, *amici* have worked inside and outside of the courtroom to expand and defend the right to vote of returning citizens[2] in Florida and other states. *Amici* also advocated for the passage of Amendment 4, the historic amendment to Florida's constitution that was meant to end the State's system of lifetime disenfranchisement.

*Amici* have a significant interest in this case: The State ("Appellant") seeks this Court's support for an unprecedented expansion of the authority of the Office of Statewide Prosecution ("OSP"). Such an expansion would be contrary to OSP's constitutional authority,

---

[2] A "returning citizen" is an individual with a felony conviction.

2

purpose, and longstanding practice, and would permit further prosecutions of returning citizens—such as Appellee Ronald Lee Miller—who have been confused or misled about their eligibility to vote by Florida's byzantine rights-restoration system. Such an expansion would also intimidate and disenfranchise returning citizens who *are* eligible to vote. Bias in the criminal justice system has meant that a disproportionate number of such citizens in Florida are Black.

Accordingly, *amici* respectfully submit this brief to underscore the threat presented by Appellant's position to the rule of law and democratic norms in Florida.

## **PRELIMINARY STATEMENT**

In 2018, Florida voters overwhelmingly approved Amendment 4, automatically restoring voting rights for returning citizens who have completed the terms of their sentences, except those convicted of murder or felony sexual offenses.[3] Approximately 1.4 million people were expected to benefit from the Amendment, but in 2019 the State enacted Senate Bill 7066 ("SB7066"), which requires returning citizens to satisfy certain court-imposed debts before they can vote.[4]

---

[3] Art. VI, § 4(a)-(b), Fla. Const. (2018).
[4] Ch. 2019-162, § 25, Laws of Fla.

SB7066 also defined the terms "murder" and "felony sexual offense," for which voting rights are not automatically restored by Amendment 4, to include an amorphous and partial list of crimes.[5] Under SB7066, it is "sometimes hard, sometimes impossible" for returning citizens to determine whether they are eligible to vote.[6]

Since SB7066 was enacted, Florida's voting-rights restoration system has been an "administrative train wreck."[7] The State does not provide timely verification of eligibility, instead keeping potentially-ineligible voters on the rolls for years after it has approved their registrations and sent them voter information cards, leading them to believe they are eligible to vote. Appellant is now prosecuting returning citizens like Mr. Miller for good-faith mistakes about their eligibility, despite representations to federal courts that it would not do so.[8]

---

[5] *Id.*

[6] *Jones v. Governor of Fla.* (*Jones II*), 975 F.3d 1016, 1062 (11th Cir. 2020) (en banc) (Martin, J., dissenting) (citation omitted), *rev'g Jones v. DeSantis* (*Jones I*), 462 F.Supp.3d 1196 (N.D. Fla. 2020).

[7] *Id.* at 1059 (Martin, J., dissenting) (quoting "District Court's un-challenged findings of fact" that Florida's implementation has been an "administrative train wreck").

[8] *See infra* notes 77-78 and accompanying text.

4

Last August, five days before Florida's primary election, Governor DeSantis held a press conference to announce the arrests of Mr. Miller and 19 other returning citizens for allegedly voting while ineligible in 2020.[9] Flanked by over a dozen uniformed officers, the Governor called the arrests the "opening salvo" of Florida's new Office of Election Crimes and Security.[10] He also admitted that he tapped OSP to prosecute Mr. Miller and the other individuals arrested because there are "some prosecutors that have been loath to bring these cases."[11]

Mr. Miller's brief sets forth ample grounds for this Court to uphold the circuit court's order of dismissal. *Amici* write to present three additional grounds for affirmance.

*First*, Appellant's position that OSP has authority to prosecute Mr. Miller for alleged single-circuit voting crimes that do not involve organized criminal activity is radically at odds with the constitutional provision that created OSP. Appellant's argument contradicts the

---

[9] First Coast News, *Watch Live: Governor DeSantis Press Conference*, YouTube (Aug. 18, 2022), https://www.youtube.com/watch?v=IBkT4A1RET8.
[10] *Id.* at 1:10:48-1:12:20.
[11] *Id.* at 1:05:48-1:06:40.

plain language of that constitutional provision, along with its history and intent, and OSP's longstanding practice. Notably, the limitation of OSP's authority to multi-circuit crimes was deliberately placed in the constitution, and not statute, so that the Legislature could not expand OSP to usurp the role of State Attorneys. In tasking OSP to prosecute Mr. Miller, Appellant has done just that.

*Second*, OSP's prosecution of Mr. Miller is improper because he is a victim of the confusion caused by Florida's failure to administer its complex voting-rights restoration system, not an "election fraudster."

*Third*, to allow OSP to bring this prosecution will chill voting among eligible returning citizens in Florida, who are disproportionately Black.

This Court should affirm the ruling below.

## ARGUMENT

## I.   OSP LACKS AUTHORITY TO PROSECUTE MR. MILLER.

OSP was created for a specific purpose: to enhance Florida's ability to combat complex, multi-circuit organized crimes, which geographically-bound State Attorneys were unable to prosecute effectively. OSP's prosecution of Mr. Miller, for alleged single-circuit voting

crimes that are not connected with organized criminal activity, does not fall within that purpose. In addition, Appellant cannot accord more powers to OSP than are provided by the Florida Constitution, which limits OSP's authority to crimes that have "occurred[] in two or more judicial circuits as part of a related transaction" or "affected two or more judicial circuits as provided by general law."[12] Appellant's attempts to expand OSP's statutory authority beyond the limits of the constitution must be denied.

### A. OSP's Prosecution of Mr. Miller Stands in Contrast to the History and Intent Behind OSP's Creation, and to OSP's Longstanding Practice.

The Legislature and voters created OSP in 1986 because Florida's geographically-bound State Attorney system could not confront the challenge of organized crime.[13] A 1977 report by a special committee of The Florida Bar concluded that Florida was ineffective at prosecuting cross-jurisdictional crimes because each of the twenty State Attorneys focused on a specific judicial circuit: They were not "responsible for nor aware of crime problems in other parts of the

---

[12] Art. IV, § 4(b), Fla. Const.

[13] R.S. Palmer & Barbara M. Linthicum, *The Statewide Prosecutor: A New Weapon Against Organized Crime*, 13 Fla. St. U. L. Rev. 653, 654 (1985).

State" and there was "no unified or central direction ... on existing or imminent criminal activity of statewide importance which should have a unified, state-wide response."[14] Newspapers reiterated this concern, observing that a centralized prosecuting body was needed to address "Florida's high rate of organized crime" and other statewide criminal conspiracies.[15]

Throughout the 1970s and early 1980s, efforts were made to create a statewide prosecutor.[16] Alternatives such as the Statewide Grand Jury, Office of Prosecution Coordination, and Council for the Prosecution of Organized Crime all proved inadequate.[17] So, in 1984, Governor Graham formed the Governor's Commission on the Statewide Prosecution Function (the "Commission") to develop recommendations for a statewide agency to address "the threat that organized criminal activity poses to the quality of life of the citizens of Florida."[18] The Commission was directed to:

---

[14] The Florida Bar Special Committee on the Statewide Prosecution Function, Report to the Board of Governors 1, 12 (1977), https://tinyurl.com/4csp9r67.

[15] *Id.* at 48-59.

[16] Palmer & Linthicum, *supra* note 13, at 654-63.

[17] *Id.*

[18] Fla. Exec. Order No. 84-150 (Aug. 8, 1984), https://tinyurl.com/9wvxe7bu.

8

(1) draft a constitutional amendment to permit the estab-
lishment of an agency with statewide responsibility for
prosecuting organized criminal activity, and (2) draft leg-
islation to establish and define the jurisdiction of an
agency with statewide responsibility for prosecuting orga-
nized criminal activity.[19]

Given the potential for conflict with State Attorneys, the Com-

mission recommended that the statewide prosecutor have authority

only if two conditions were met:

[F]irst, the subject matter of the offense prosecuted
must be one of the offenses enumerated in the ena-
bling legislation, and second, such offense must be oc-
curring, or must have occurred, in two or more cir-
cuits as part of a related transaction.[20]

The Commission also considered, but ultimately declined to rec-

ommend, authorizing the statewide prosecutor to prosecute single-

circuit public corruption cases without a request from a State Attor-

ney.[21] Such a grant of authority, the Commission concluded, would

detract from the office's focus on large criminal organizations.[22]

In 1985, adopting the Commission's recommended constitu-

tional amendment and enabling legislation, Governor Graham called

---

[19] *Id.* § 5.
[20] Palmer & Linthicum, *supra* note 13, at 666-67.
[21] *Id.* at 667-68.
[22] *Id.*

for creation of a statewide office to focus on "long-term, complex organized crime cases" and "long-term investigations to assure the recovery of ill-gotten gains and convict major criminals."[23] Such an office, he said, would "accumulate expertise in organized crime investigations," "assume responsibility for cases with a statewide impact," and serve as "front line troops in the war on drugs and organized crime."[24]

The Commission recommended that the enabling legislation explicitly set forth the multi-circuit limitation on the statewide prosecutor's authority.[25] The Florida Prosecuting Attorneys Association—historically the chief opponent of the creation of a statewide prosecutor—urged that this limitation be enshrined in the constitution to make it more difficult for the Legislature to expand the statewide prosecutor's powers to usurp theirs.[26]

To ensure the support of State Attorneys, the Legislature placed the jurisdictional limitation in the proposed constitutional

---

[23] *Id.* at 668-69.
[24] *Id.* at 669.
[25] *Id.* at 671, 677-78.
[26] *Id.* at 671.

10

amendment.[27] The Legislature then adopted the joint resolution that referred to voters the constitutional amendment that created OSP.[28] The Legislature also passed enabling legislation authorizing OSP to pursue specific crimes, including criminal fraud, extortion, gambling, dangerous drugs crimes, and violations of the Florida RICO Act.[29] Consistent with having OSP combat multi-circuit crimes, the enabling legislation limited its authority to "when any such offense is occurring, or has occurred, in two or more judicial circuits as part of a related transaction" or "when any such offense is connected with an organized criminal conspiracy affecting two or more judicial circuits."[30]

For nearly four decades—from its creation until Appellant's "opening salvo" last year—OSP has prosecuted multi-circuit crimes that would be difficult for a State Attorney to pursue, such as organized fraud, human trafficking, drug trafficking, and white-collar

---

[27] *Id.* at 671.
[28] Fla. HJR 386 (1985) at 1 (proposed amendment to art. IV, § 4(c), Fla. Const. (now renumbered § 4(b)).
[29] Ch. 85-179, § 1, Laws of Fla.
[30] *Id.*

crime.[31] OSP's website states that it focuses on "complex, often large scale, organized criminal activity."[32] The agency's annual reports also show that, before 2022, it never prosecuted anyone for alleged voting crimes.[33] Only after the Governor remarked that some State Attorneys were not prosecuting voter fraud last August did OSP shift course. Indeed, an attorney who was involved with OSP's creation explained:

> At that time, it was about organized crime. I can guarantee you that it never came to anybody's mind that [OSP] would be prosecuting election laws.[34]

---

[31] *See generally* Office of the Attorney General, *Office of Statewide Prosecution Annual Reports*, https://www.myfloridalegal.com/statewide-prosecutor/office-of-statewide-prosecution-annual-reports (last visited Sept. 25, 2023) (annual overviews of OSP for years 2011-2021).

[32] Office of the Attorney General, *Office of Statewide Prosecution*, https://www.myfloridalegal.com/statewide-prosecution (last visited Sept. 25, 2023).

[33] *Office of Statewide Prosecution Annual Reports*, *supra* note 31.

[34] Lori Rozsa, *The First Arrests from DeSantis's Election Police Take Extensive Toll*, Wash. Post (May 1, 2023), https://www.washingtonpost.com/nation/2023/04/30/desantis-election-police-arrests-florida (quoting Barbara Linthicum).

**B.    Appellant's Position Would Expand OSP's Authority Beyond the Limits Set by the Florida Constitution.**

    **1. The Constitution Limits OSP's Authority to Multi-Circuit, Organized Crimes That Cannot Be Efficiently Prosecuted by State Attorneys.**

Applying Florida's ordinary principles of constitutional interpretation, this Court must reject Appellant's arguments. Florida courts "adhere to the 'supremacy-of-text principle': 'The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.'"[35] And what the text means is what "voters would have understood" them to mean.[36] In addition, the Florida Supreme Court has long recognized:

> The fundamental object to be sought in construing a constitutional provision is to ascertain the intent of the framers and the provision must be construed or interpreted in such manner as to fulfill the intent of the people, never to defeat it. Such a provision must never be construed in such manner as to make it possible for the will of the people to be frustrated or denied.[37]

---

[35] *Advisory Op. to Governor re: Implementation of Amendment 4, the Voting Restoration Amendment* (*Amendment 4*), 288 So.3d 1070, 1078 (Fla. 2020) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)).

[36] *Id.* at 1084.

[37] *Id.* at 1085 (Labarga, J., concurring in result and dissenting in part) (citing *Gray v. Bryant*, 125 So.2d 846, 852 (Fla. 1960)).

13

The intent of a constitutional provision can be "discerned from historical precedent, from the present facts, from common sense, and from an examination of the purpose the provision was intended to accomplish and the evils sought to be prevented."[38] Courts may also "look to the explanatory materials available to the people as a predicate for their decision as persuasive of their intent."[39] Finally, "[w]here possible, [courts should be] guided by [the] circumstances leading to the adoption of a provision."[40]

Turning first to the plain language of the text, the constitution provides that OSP has "concurrent jurisdiction with the state attorneys to prosecute violations of criminal laws occurring or having occurred, in *two or more judicial circuits* as part of a related transaction, or when any such offense is affecting or has affected *two or more judicial circuits* as provided by general law."[41] It explicitly limits OSP's authority to crimes that occur in or affect "two or more judicial circuits[.]" Viewed in the context in which OSP was created, there is only

---

[38] *Dep't of Env'tal Prot. v. Millender*, 666 So.2d 882, 885-86 (Fla. 1996).

[39] *Id.*

[40] *Gallant v. Stephens*, 358 So.2d 536, 539 (Fla. 1978).

[41] Art. IV, § 4(b), Fla. Const. (emphases added).

one "unambiguous 'ordinary meaning' that the voters 'would most likely understand'": OSP has no authority over alleged single-circuit voting crimes.[42]

This reading of OSP's constitutional authority is consistent with the framers' intent. OSP's authority is granted by the Florida Constitution,[43] and the constitutional amendment that created OSP was deliberately written to limit OSP's encroachment on the authority of State Attorneys.[44] Governor Graham's Commission also rejected proposals to broaden OSP's power to address single-circuit public corruption cases.[45] Moreover, at no point was OSP intended by its framers or the voters to replace State Attorneys, nor to prosecute the cases they choose not to pursue. Appellant does not contest that a State Attorney could have prosecuted Mr. Miller for his alleged crimes. In fact, State Attorneys in other judicial circuits have brought such

---

[42] *Amendment 4,* 288 So.3d at 1078 (citing *Advisory Op. to Governor— 1996 Amendment 5*, 706 So. 2d 278, 283 (Fla. 1997)); *see also Lab'y Corp. of Am. v. Davis*, 339 So. 3d 318, 324 (Fla. 2022) ("Context is a primary determinant of meaning." (quoting Scalia & Garner, *supra* note 35, at 167)).

[43] *Winter v. State*, 781 So.2d 1111, 1113 (Fla. 1st DCA 2001), *disapproved on other grounds*, *Carbajal v. State*, 75 So. 3d 258 (Fla. 2011).

[44] Palmer & Linthicum, *supra* note 13, at 667.

[45] *Id.* at 666-67, 671.

15

prosecutions against returning citizens, while other State Attorneys have declined to do so for lack of sufficient evidence of intent, not lack of authority.[46]

This reading of OSP's constitutional authority is also consistent with the intent of voters. Governor Graham, major publications, and the ballot summary for the constitutional amendment that created OSP all communicated to voters the limitation of OSP's focus to complex, multi-circuit organized crimes that could not be prosecuted by State Attorneys.[47] Thus, voters created OSP with the understanding that it would be focused on "major criminals" and crimes involving multi-circuit, organized criminal conspiracies. OSP's case against Mr. Miller alleges that he acted alone in an isolated incident. Appellant does not allege that he did anything other than register and vote in a single circuit while ineligible.[48] Appellant never alleges that Mr. Miller organized with anyone, or cast or helped to cast any vote other

---

[46] *See infra* note 76 and accompanying text.
[47] Fla. Div. Elections, Initiative Information, *Authority of Attorney General to Appoint a Statewide Prosecutor*, https://dos.elections.myflorida.com/initiatives/initdetail.asp?account=10&seqnum=43 (last visited Sept. 25, 2023).
[48] R. 10-12, 17-19.

than his own.[49] To hold that (i) OSP has authority here because "voter fraud undermines public confidence in the integrity of statewide elections," (ii) Mr. Miller's conduct "triggered state election-administration processes that involved state action in the Seventeenth, Second, and Eleventh Circuits," and (iii) his alleged "scheme to vote illegally in the 2020 election" is a crime "occur[ing] in at least three circuits as part of a related transaction"—as Appellant alleges—would render meaningless the words of the Florida Constitution and accord boundless authority to OSP.[50]

### 2. The Legislature Cannot Expand OSP's Statutory Authority Beyond the Constitution.

OSP "is a creature of the Florida Constitution and of specific Florida Statutes."[51] "State constitutions are limitations upon the power of state legislatures."[52] Accordingly, a statute is invalid if it

---

[49] *Id.*

[50] Appellant Br. 9, 16, 20.

[51] *Winter*, 781 So.2d at 1113.

[52] *Notami Hosp. of Fla., Inc. v. Bowen*, 927 So.2d 139, 142 (Fla. 1st DCA 2006), *aff'd sub nom.*, *Fla. Hosp. Waterman, Inc. v. Buster*, 984 So.2d 478 (Fla. 2008).

17

"conflicts with the express or clearly implied mandate[s] of the Constitution."[53]

Since OSP's creation, the Legislature has twice amended its enabling statute, Florida Statute § 16.56, to empower OSP to prosecute voting-related crimes. In 2005, the Legislature authorized OSP to pursue "[a]ny crime involving voter registration, voting, or candidate or issue petition activities."[54] Importantly, this addition to Section 16.56 did not purport to authorize OSP to prosecute single-circuit voting crimes that are not part of a larger statewide conspiracy; indeed, such power could not have been accorded legislatively. Consistent with the constitution, OSP's authority remained restricted to crimes in which "such offense is occurring, or has occurred, in two or more judicial circuits as part of a related transaction, or when any such offense is connected with an organized criminal conspiracy affecting two or more judicial circuits."[55]

The Legislature amended Section 16.56 again this year to purportedly give OSP authority to prosecute Mr. Miller, after circuit

---

[53] *Fla. Dep't of Agric. & Consumer Servs. v. Dolliver*, 283 So.3d 953, 959 (Fla. 2d DCA 2019) (quotation omitted).
[54] Ch. 2005-277, § 73, Laws of Fla.
[55] *Id.*

18

courts dismissed Appellant's cases against him and two other return-
ing citizens on the grounds that OSP lacks authority to prosecute
single-circuit voting crimes.[56] The amendment removed the require-
ment of an "organized criminal conspiracy," and authorizes OSP to
prosecute voter-registration and voting-related crimes that are "oc-
curring, or [have] occurred, in two or more judicial circuits as part of
a related transaction," or when "any such offense is affecting, or has
affected, two or more judicial circuits."[57]

That the Legislature perceived a need to amend Section 16.56
confirms that, in its prior form, the section did not authorize OSP to
prosecute Mr. Miller. Indeed, the staff analysis for the House com-
panion to the bill that amended Section 16.56 cited Mr. Miller's case
and the other dismissed prosecutions.[58] But even if these modifica-
tions—passed *after* Mr. Miller's case was dismissed—applied here,
OSP still would not have authority to prosecute him because the

---

[56] R. 44-46; Order on Mot. to Dismiss, *State v. Wood*, No. 13-2022-
CF-015009-0001-XX (Fla. 11th Cir. Ct. Oct. 21, 2022); Order Grant-
ing Def.'s Mot. to Dismiss Due to Lack of Subject Matter Jurisdiction,
*State v. Hubbard*, No. 22008077CF10A (Fla. 17th Cir. Ct. Dec. 23,
2022).

[57] Ch. 2023-2, § 1, Laws of Fla.

[58] Fla. H.R. Comm. on Judiciary, HB 3B (2023) Post-Meeting Staff
Analysis 3 (Feb. 8, 2023), https://tinyurl.com/vxjhz8wp.

19

Legislature lacks authority to expand OSP's statutory powers beyond the explicit limits in Florida's constitution.[59]

## II.  MR. MILLER'S CASE INVOLVES, AT WORST, AN ISOLATED INSTANCE OF VOTER CONFUSION CAUSED BY FLORIDA'S FAILURE TO ADMINISTER ITS VOTING-RIGHTS RESTORATION SYSTEM.

Florida's incoherent voting-rights restoration system, put into place by SB7066 to undermine Amendment 4, has kept returning citizens like Mr. Miller uninformed about their eligibility, and in many cases has affirmatively misled them.[60]

Since SB7066 was enacted, Florida has struggled to timely verify the eligibility of returning citizens and apparently lacked the resources to do so. Under Florida law and the Department of State's regulations, the Department of State ("DOS") is charged with verifying voter eligibility and identifying potentially-ineligible voters whose voting rights have not been restored so they can be removed from the

---

[59] *Notami*, 927 So.2d at 142.

[60] Matt Dixon, *Defendants Targeted in DeSantis' Voter Fraud Crackdown Were Told They Could Vote*, Politico (Aug. 26, 2022), https://tinyurl.com/rx4pamr3; Sam Levine, *Floridians Charged Over Voting Believed They Were Eligible, Documents Show*, Guardian (Aug. 25, 2022), https://tinyurl.com/mwen363f.

rolls.[61] DOS checks new registrations within 24 hours of receipt against the Florida Department of Law Enforcement's ("FDLE") database and then conducts a manual review to confirm potential matches are actually ineligible.[62] Florida's voter registration database is also "cross-checked daily against FDLE records" to identify potentially-ineligible voters.[63] The Bureau of Voter Registration Services also conducts monthly checks to identify potentially-ineligible voters.[64]

Over the last four years, DOS has failed to meet these responsibilities. Between January 8, 2019 (Amendment 4's effective date) and May 2020, DOS flagged for vetting some 85,000 pending registrations by returning citizens.[65] In those 16 months, however, DOS had "yet to complete its screening of any of the [85,000] registrations."[66] DOS advised a federal court that its review of those

---

[61] §§ 98.075(5), 98.0751(3)(a), Fla. Stat. (2022); Fla. Admin. Code R. 1S-2.041(4)(c), R. 1S-2.039(11)(f)(3).

[62] Trial Transcript at vol. 5, 1181:17-1186:10, *Jones v. DeSantis* (*Jones I*), No. 4:19cv300-RH/MJF (N.D. Fla. May 4, 2020), https://tinyurl.com/2p9rk7wv.

[63] *Id.* at 1181:25-1182:3.

[64] Fla. Admin. Code R. 1S-2.039(11)(f)(3).

[65] *Jones II*, 975 F.3d at 1026.

[66] *Id.*

registrations could take until 2026 because its caseworkers could only process, on average, 57 registrations per day.[67]

DOS is not the only Florida agency that has failed to perform its responsibilities. Through as many as three statewide elections, FDLE failed to identify potentially-ineligible voters "in a time and manner that enables [DOS] to meet its obligations under state and federal law."[68] Between 2019 and at least January 2022, FDLE did not send monthly reports to DOS about potential matches of voters with individuals in the Florida Offender Registration and Tracking Services database.[69]

In addition to keeping potentially-ineligible voters on its rolls for years, Florida sends voter information cards to every newly-registered voter regardless of their eligibility,[70] including Mr. Miller.[71] Until this year, that card gave no indication that the recipient might not be

---

[67] *Id.*
[68] § 98.093(2)(d), Fla. Stat. (2022).
[69] Fla. Dep't L. Enf't, *Investigative Report* (2021), https://tinyurl.com/3n5uwkdd.
[70] § 97.071, Fla. Stat. (2022).
[71] R. 32.

eligible.[72] Making matters worse, Florida has refused to provide meaningful public guidance about its complicated voter eligibility requirements for returning citizens, perpetuating widespread confusion among would-be voters and government officials alike.[73] Florida's voter registration application also does not alert applicants to the fact that people convicted of murder or felony sexual offenses cannot vote unless their voting rights have been restored through the clemency process.[74]

Florida's abdication of its responsibility to provide timely verification of voter eligibility, coupled with widespread voter confusion, has caused some State Attorneys to decline to prosecute cases similar to this one on the ground that criminal intent could not be established.[75] For example, the State Attorney for the Fifth Judicial Circuit

---

[72] Ch. 2023-120, § 4, Laws of Fla. (voter information cards now must disclaim: "This card is proof of registration but is not legal verification of eligibility to vote.")

[73] Levine, *supra* note 60.

[74] *See* Form DS-DE 39, *Florida Voter Registration Application*, Fla. Dep't St. (Oct. 2013), https://tinyurl.com/2parkdcy.

[75] It is a crime to register or to vote while ineligible only if the accused knew they were ineligible but did so anyway. §§ 104.011(1), 104.15, Fla. Stat. (2022); *Corrales v. State*, 84 So.3d 406, 408 (Fla. 1st DCA 2012) ("The willfulness requirement assures that 'no one will be convicted of a crime because of a mistake or because he does something

23

declined to prosecute six returning citizens who allegedly voted while ineligible in 2020 because they were given voter information cards, were never notified that they were ineligible, and were "encouraged to vote by various mailings and misinformation."[76]

OSP's prosecution of Mr. Miller for an isolated instance of voter confusion is especially inappropriate because Appellant—in litigation brought by *amici* challenging certain provisions of SB7066—repeatedly downplayed the risk of prosecution for returning citizens who made "good faith, but mistaken" decisions about their eligibility, citing the willfulness requirements in the same statutes that OSP now alleges Mr. Miller to have violated.[77] The Eleventh Circuit, relying in part on these representations, confirmed that no returning citizen

---

innocently, not realizing what he was doing.'" (citing *United States v. Hall*, 346 F.2d 875, 879 (2d Cir. 1965))).

[76] Memorandum from Jonathan Olson, Div. Supervisor, State Att'y Off., Fifth Jud. Cir. (June 13, 2022), https://tinyurl.com/mr39xa5p.

[77] *See, e.g.*, Opposition to Application to Vacate the En Banc 11th Circuit's Stay at 52, *Raysor v. DeSantis*, 140 S.Ct. 2600 (2020) (No. 19A1071) [tinyurl.com/2p8d27u8]; En Banc Opening Brief of Defendants-Appellants at 74, 75, *Jones II*, 975 F.3d 1016 (No. 20-12003) [tinyurl.com/cbxhsctw]; En Banc Reply Brief of Defendants-Appellants at 68, *Jones II*, 975 F.3d 1016 (No. 20-12003) [tinyurl.com/9jaj99kj].

who "honestly believes he has completed the terms of his sentence commits a crime by registering and voting[.]"[78]

Appellant knows that Florida's voting-rights restoration system is an "administrative nightmare," that there is widespread confusion about voter eligibility among returning citizens, and that State Attorneys who have declined to prosecute have done so for good reason. Yet Appellant, despite its previous representations to multiple federal courts that it would not prosecute good faith mistakes, is doing just that. This Court should not countenance Appellant's about-face.

### III. ALLOWING OSP TO PROSECUTE ISOLATED INCIDENTS OF VOTER CONFUSION WILL CHILL VOTING BY ELIGIBLE RETURNING CITIZENS.

OSP's "opening salvo" has caused, and will continue to cause, eligible voters to fear participating in elections.[79] Before the November 2022 elections, one Supervisor of Elections observed:

---

[78] *Jones II*, 975 F.3d at 1047-48; *see also id.* at 1093 (Martin, J., dissenting) ("Florida downplays this risk [of prosecution], proclaiming that felons should rest assured that they will not be convicted if they registered in good faith because willfulness must be shown ....").

[79] *See, e.g.*, Paul Blest & Trone Dowd, *'Complete Setup': Florida Crackdown Has Ex-Felons Afraid to Vote*, Vice (Nov. 3, 2022), https://tinyurl.com/4me7sty9; Matt Shuham, S*ome Eligible Ex-Felons Fear Voting Because Of Ron DeSantis*, HuffPost (Oct. 28, 2022), https://tinyurl.com/2waxpdcy.

> I have not encountered in the past this many voters calling, concerned that they may be prosecuted or what have you for voter fraud. *And these are all eligible voters that have contacted me.*[80]

OSP's prosecutions are particularly chilling for Black Floridians, including those who *do not* have felony convictions. Since the Office of Election Crimes and Security commenced operations last July, it has largely focused its resources on pursuing Black returning citizens like Mr. Miller who were confused or misled about their eligibility.[81] Of the 20 returning citizens OSP charged last year, 15 are Black. Family members of Black returning citizens prosecuted by OSP have indicated that they no longer intend to vote.[82] This was an entirely foreseeable outcome, particularly given the Governor's vow that there are "many more [arrests] in the pipeline."[83] Recognizing this chilling effect, the U.S. Department of Justice recommends against

---

[80] News Service of Florida, *Florida Elections Officials Grapple with Misinformation, Myths*, Tampa Bay Times (Oct. 26, 2022), https://tinyurl.com/9kh4xfja (emphasis added).

[81] Wayne Washington, *Voter Intimidation? Black Voters Over-Represented Among Those Arrested So Far for Election Crimes*, Palm Beach Post (Oct. 10, 2022), https://tinyurl.com/36bp627e.

[82] Rozsa, *supra* note 34.

[83] First Coast News, *supra* note 9, at 1:05:48-1:05:55.

conducting election-related arrests right before an election to avoid election interference.[84]

OSP's prosecutions will continue to harm Black voters disproportionately. Because of persistent discrimination in the criminal legal system, approximately one in eight Black Floridians is disenfranchised, a rate roughly twice that of non-Black Floridians.[85] A nationwide study of voter fraud cases also found that Black and poor individuals are more likely than white individuals to be subject to "high-profile prosecutions" resulting in "draconian charges," and that in that sense, "Florida is an exaggerated version of America as a whole."[86]

## **CONCLUSION**

For the foregoing reasons, this Court should affirm the circuit court's dismissal.

---

[84] *See, e.g.*, Memorandum from Office of the Attorney General to All Department Employees (Mar. 9, 2012), https://tinyurl.com/ycv674k9; Memorandum from Office of the Attorney General to All Department Employees (Apr. 11, 2016), https://tinyurl.com/jsb3fdjc.

[85] *Florida Bans Voting Rights of Over One Million Citizens*, Sent'g Proj. (Jan. 2023), https://tinyurl.com/5n6fnkfw.

[86] *See* Michael Wines, *In Voter Fraud, Penalties Often Depend on Who's Voting*, N.Y. Times (Sept. 7, 2022), https://tinyurl.com/pe84x8xf.

Dated: September 25, 2023 at Boca Raton, Florida.

Respectfully submitted,

**AMERICAN CIVIL LIBERTIES UNION**

*/s/ Julie Ebenstein*
Julie Ebenstein
Casey Smith (*pro hac vice* pending)
125 Broad St.
New York, NY 10004
(212) 607-3300
jebenstein@aclu.org
csmith@aclu.org

**BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW**

*/s/ Patrick Berry*
Patrick Berry (*pro hac vice* pending)
120 Broadway, Suite1750
New York, NY 10271
(646) 925-8754
berryp@brennan.law.nyu.edu

**NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.**

*/s/ Leah C. Aden*
Leah C. Aden (*pro hac vice* pending)
50 Rector St, FL 5
New York, NY 10006
(212) 965-2200
laden@naacpldf.org

**PROSKAUER ROSE LLP**

*/s/ Matthew Triggs*
Matthew Triggs (FBN 865745)
2255 Glades Road
Suite 421 Atrium
Boca Raton, Florida 33431-7360
(561) 241-7400
mtriggs@proskauer.com

**ACLU FOUNDATION OF FLORIDA**

*/s/ Caroline A. McNamara*
Caroline A. McNamara (FBN 1038312)
Daniel B. Tilley (FBN 102882)
4343 W Flagler St, Suite 400
Miami, FL 33138
(786) 363-2714
cmcnamara@aclufl.org
dtilley@aclufl.org

Nicholas L.V. Warren (FBN 1019018)
336 E College Ave, Suite 203
Tallahassee, FL 32301
(786) 363-1769
nwarren@aclufl.org

*Counsel for Amici Curiae*

28

## <u>CERTIFICATE OF COMPLIANCE</u>

I HEREBY CERTIFY, under Florida Rule of Appellate Procedure 9.045(e), that this Brief complies with the applicable font and word-count requirements. It was prepared in Bookman Old Style 14-point font, and it contains 4,990 words.

*/s/ Matthew Triggs*
Matthew Triggs

Dated: September 25, 2023

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 25, 2023, a true and correct copy of the foregoing will be furnished via the Florida Court's E-Filing Portal:

**Office of the Attorney General**
Henry C. Whitaker
Jeffrey Paul DeSousa
Alison E. Preston
The Capitol, PL-01
Tallahassee, Florida 32399
(850) 414-3300
alison.preston@myfloridalegal.com

Jeremy B. Scott
SunTrust International Center
One SE Third Ave, Suite 900
Miami, FL 33131
(786) 792-6196
jeremy.scott@myfloridalegal.com

*Co-Counsel for the State of Florida*

**Robert I. Barrar P.A.**
6619 South Dixie Highway
#311
Miami, FL 33143
(305) 576-5600
RobertIBarrarPA@gmail.com
Rbarrar@bellsouth.net

**Raul De La Heria**
999 Ponce De Leon Blvd.
#510
Coral Gables, FL 33134
(305) 858-2808
raul@delaheria.com
gus@delaheria.com

*Counsel for Ronald Lee Miller*

*/s/ Matthew Triggs*
Matthew Triggs