# EXHIBIT 28

# DE FACTO DISENFRANCHISEMENT

Erika Wood and Rachel Bloom

American Civil Liberties Union
and
Brennan Center for Justice *at New York University School of Law*

## ABOUT THE AMERICAN CIVIL LIBERTIES UNION

The American Civil Liberties Union is the nation's premier guardian of liberty, working daily in courts, legislatures and communities to defend and preserve the individual rights and freedoms guaranteed by the Constitution and the laws of the United States.

## ABOUT THE BRENNAN CENTER FOR JUSTICE

The Brennan Center for Justice at New York University School of Law is a non-partisan public policy and law institute that focuses on fundamental issues of democracy and justice. Our work ranges from voting rights to redistricting reform, from access to the courts to presidential power in the fight against terrorism. A singular institution – part think tank, part public interest law firm, part advocacy group – the Brennan Center combines scholarship, legislative and legal advocacy, and communications to win meaningful, measurable change in the public sector.

© 2008.  This paper is covered by the Creative Commons "Attribution-No Derivs-NonCommercial" license (see http://creativecommons.org).
It may be reproduced in its entirety as long as the Brennan Center for Justice at NYU School of Law and the ACLU are credited, a link to the each organization's web page is provided, and no charge is imposed.
The paper may not be reproduced in part or in altered form, or if a fee is charged, without the Center's and ACLU's permission. Please let the Brennan Center and the ACLU know if you reprint.

## ABOUT THE AUTHORS

**Erika Wood** is Deputy Director of the Democracy Program at the Brennan Center for Justice, spearheading the Brennan Center's Right to Vote Project. She is the primary author of three reports documenting the continued illegal disenfranchisement of people with felony convictions, which launched major reform efforts. Ms. Wood is an Adjunct Professor at NYU Law School where she teaches the Brennan Center Public Policy Advocacy Clinic.

**Rachel Bloom** is the Right to Vote Advocacy Coordinator in the American Civil Liberties Union's Racial Justice Program, where her work focuses on felony disenfranchisement. Ms. Bloom works with ACLU affiliates throughout the country, as well as with national partners, to raise awareness about this issue and promote the fundamental right to vote. Ms. Bloom received her undergraduate degree in History from Barnard College and a Masters degree in Social Policy and Planning from the London School of Economics.

## ACKNOWLEDGMENTS

The authors would like to thank Laleh Ispahani, Garima Malhotra, Liz Budnitz, Maggie Barron, Amalea Smirniotopoulos, Nicole Kief, Will Matthews, Lynda Garcia, Aron Cobbs, Alison Silveira, ACLU of Arizona, ACLU of Colorado, ACLU of Mississippi, ACLU of New Jersey, ACLU of Oklahoma, ACLU South Carolina National Office, ACLU of Tennessee, ACLU of Washington, Demos, Legal Action Center, NAACP-LDF, Colorado Voting Rights Project, Mississippi Voter Empowerment Coalition, and Right to Vote.

The Brennan Center thanks the Carnegie Corporation of New York, Democracy Alliance, Educational Foundation of America, Ford Foundation, JEHT Foundation, Open Society Institute, Tides Foundation, and an anonymous donor for the generous support that made this paper possible. The statements made and views expressed in this paper are solely the responsibility of the Brennan Center and the American Civil Liberties Union.

# TABLE OF CONTENTS

| | |
|---|---|
| I. Introduction | 2 |
| II. Confusion About Basic Voter Eligibility Rules | 5 |
| III. Confusion About Basic Voter Registration Procedures | 6 |
| IV. Communication Problems | 7 |
| V. Getting It Right | 8 |
| VI. Causes of De Facto Disenfranchisement | 8 |
| VII. Policy Recommendations | 9 |
| Appendix: Components of a Voting Rights Restoration Bill | 11 |
| Endnotes | 18 |

# I.   INTRODUCTION

Voting is both a fundamental right and a civic duty.  However there remains a significant blanket barrier to the franchise: 5.3 million American citizens are not allowed to vote because of criminal convictions. As many as four million of these people live, work, and raise families in our communities, but because of convictions in their past they are still denied the right to vote.[1]

State laws vary widely on when voting rights are restored.  Maine and Vermont do not deny the franchise based on a criminal conviction; even prisoners may vote there.  Kentucky and Virginia are the last two states to continue to permanently disenfranchise all people with felony convictions unless they receive individual, discretionary clemency from the governor.  The remaining 46 states fall somewhere in between, with the varied state laws forming a patchwork across the country.  Some states restore voting rights upon release from prison, others upon completion of probation and parole, and others impose waiting periods or other contingencies and categories before restoring voting rights.[2]

This disenfranchisement by law of millions of American citizens is only half the story.  Across the country there is persistent confusion among election officials about their state's felony disenfranchisement policies.  Election officials receive little or no training on these laws, and there is little or no coordination or communication between election offices and the criminal justice system.  These factors, coupled with complex laws and complicated registration procedures, result in the mass dissemination of inaccurate and misleading information, which in turn leads to the **de facto** disenfranchisement of untold hundreds of thousands of *eligible* would-be voters throughout the country.

De facto disenfranchisement has devastating long-term effects in communities across the country.  Once a single local election official misinforms a citizen that he is not eligible to vote because of a past conviction, it is unlikely that citizen will ever follow up or make a second inquiry.  Without further public education or outreach, the citizen will mistakenly believe that he is ineligible to vote for years, decades, or maybe the rest of his life.  And that same citizen may pass along that same inaccurate information to his peers, family members and neighbors, creating a lasting ripple of de facto disenfranchisement across his community.

Between 2003 and 2008, the ACLU and the Brennan Center for Justice, together with our state partners, conducted interviews with election officials in 23 states to determine the level of knowledge of their state's felony disenfranchisement law.  This report summarizes the results of telephone interviews conducted in Arizona, Colorado, Kentucky,

Louisiana, Mississippi, New Jersey, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee and Washington.

Prior to conducting interviews in each state, the ACLU and the Brennan Center performed a thorough legal analysis of the state's felony disenfranchisement law. A separate set of questions was designed for each state based on the state law and the specific information sought in the state. The same questions were asked of each election official in the state and their answers were carefully documented along with the official's name and the date and time of the interview. Where feasible, we interviewed a representative of every local election office in each state. In states where a large number of localities made this difficult, a representative sample was identified.[3]

The interviews revealed an alarming national trend of de facto disenfranchisement:

- **Election officials do not understand the basic voter eligibility rules governing people with criminal convictions;**

- **Election officials do not understand the basic registration procedures for people with criminal convictions;**

- **Interviewers experienced various problems communicating with election officials, including repeated unanswered telephone calls and bureaucratic runaround.**

## II.   CONFUSION ABOUT BASIC VOTER ELIGIBILITY RULES

### Misdemeanors

In the vast majority of states, only those with felony convictions are denied the right to vote. People with misdemeanor convictions rarely lose the right to vote. A misdemeanor is generally a minor offense such as shoplifting or minimal marijuana possession which does not warrant incarceration and often results in a brief community service requirement. However, interviews with election officials in several states revealed that they often did not understand the difference between misdemeanors and felonies and improperly stated a person with a misdemeanor conviction was not eligible to vote.

For example, people with misdemeanor convictions in **Kentucky** do not lose the right to vote. However, 53% of county clerks interviewed in 2005 responded incorrectly to the question of whether individuals with misdemeanor convictions are eligible to vote.[4] Nearly 40% of the clerks interviewed stated that those with misdemeanor convictions are

not eligible to vote; and 14% were uncertain how to answer the question.  This error is particularly egregious in Kentucky which has one of the most restrictive disenfranchisement laws in the country.  A felony conviction in Kentucky results in loss of the right to vote *for life* unless the individual is granted clemency by the governor.[5]  Consequently, the confusion on this fundamental issue has the potential to disenfranchise those with the most minor convictions for life.

**Ohio** also permits those convicted of misdemeanors to vote.[6]  But interviews with local election officials in 2008 revealed that 30% responded incorrectly or expressed uncertainty about whether or not individuals with misdemeanor convictions could vote.  Most troubling, a representative from the Ohio Secretary of State's office advised that individuals incarcerated for misdemeanors may not vote in Ohio.

### Distinction between Probation and Parole

Five states permit people on probation to vote, but disenfranchise those on parole.[7]  In these states, the distinction between probation and parole is critical, yet local election officials are often – and understandably – unfamiliar with the workings of the criminal justice system and fail to make the distinction.  The result is that many eligible voters on probation are often misinformed that they are ineligible to vote.

For example, interviews with election officials in **New York** in 2006 revealed that more than a third (38%) of the local boards incorrectly stated that people on probation are ineligible to vote.  Most disconcerting, three out of the five New York City boroughs and the New York City Board of Elections were misinformed about the law.  Similarly, interviews conducted in **Colorado** in 2004 and 2007 found that half the local officials did not know that people on probation could vote.

The problem of confusing probation and parole has particularly harsh consequences.  First there are the sheer numbers.  In both New York and Colorado, more people are sentenced to probation than to prison or parole.  In New York there are more than 120,000 people currently on probation, about half of whom live in New York City.[8]  Over 46,000 people are currently on probation in Colorado.[9]  Then there is the fact that probation is the most lenient sentence reserved for minor offenses – generally misdemeanors and a few very low-grade, first-time felonies.  Indeed, these states made the determination that those sentenced to probation should not be disenfranchised under the law.

### Categories of Offenses

Several states make restoration of voting rights contingent upon an individual's offense

or number of convictions.[10]  In these states, some people may get their voting rights back as soon as they have completed probation and parole; others may be permanently disenfranchised or subject to an extended waiting period.  Needless to say, these complicated laws cause a lot of confusion at the registrar's office.  Interviews with election officials in some of these states revealed widespread misunderstanding of state law.

**Tennessee** law is particularly complicated because eligibility depends on the year of conviction as well as the type of offense.[11]  Depending on these factors, some people never regain the right to vote, while others do only after satisfying a series of requirements that make them eligible to apply for what is known as a "Certificate of Restoration," a prerequisite to registering to vote.  Interviews conducted in 2007 revealed that 63% of local election officials interviewed could not provide the specific years and offenses that would permanently disenfranchise individuals.  In addition, not one of the 95 election officials interviewed was able to list the four key requirements that individuals must satisfy before they can apply for a Certificate of Restoration.

**Mississippi** law bars individuals convicted of certain crimes from registering to vote unless the governor pardons them or a two-thirds majority of the legislature passes a bill restoring that individual's right to vote.[12]  The Mississippi Constitution lists ten specific crimes that result in disenfranchisement, but the Attorney General expanded that list to include 11 additional crimes.[13]  Interviews conducted in 2005 revealed that about half of all Mississippi counties were using the list set forth in the Constitution, while the other half relied on the Attorney General's expanded list.

**Arizona** law differentiates between individuals with first-time, single-count felony convictions and those with repeat or multiple felony convictions.[14]  Individuals with first-time, single-count felony convictions are automatically eligible to vote upon completion of sentence.  By contrast, individuals with multiple felony convictions must satisfy a two-year waiting period and then apply to a court for restoration of their voting rights. Interviews with local election officials in 2007 revealed that half the officials interviewed were confused about the distinction in the treatment of these two groups.  Additionally, over half the officials either responded incorrectly to the question of whether an individual convicted of more than one felony can ever vote again in Arizona, or did not know that individuals with two or more felony convictions could seek to have their rights restored.

## Waiting Periods

Some states impose additional waiting periods on individuals who have completed their sentences before they may register to vote or apply for restoration of voting rights.  For

4

example, **Arizona** imposes a two-year waiting period before individuals with multiple felonies can apply for restoration of voting rights.[15]  But in interviews with Arizona's election offices in 2007, only one county official knew about the waiting period.  All other officials, when asked if there was a waiting period, responded "no" or "I don't know." The "no" answers are particularly troubling because they could lead an individual to register to vote before he or she is eligible, which is a felony in Arizona.[16]

In **Oklahoma**, individuals do not have their voting rights restored until they have fully completed prison and any term of parole or probation, *and* the time of their original sentence has expired.[17]  In other words, individuals may not vote until a period of time equal to the original time to which they were sentenced elapses.  Interviews with Oklahoma's county election officials in 2005 indicated that 17, or 22%, of Oklahoma counties responded with incorrect information when asked at what point people with felony convictions become eligible to vote.  In 12 of the 17 counties, officials stated that individuals must wait twice the length of time of their original sentences before registering to vote, or spend the same time out of prison as they had served in prison before they could register.

### Overstating Eligibility

In a few states election officials said people were eligible to vote when they were actually disenfranchised under the law.  This type of misinformation could lead people to register and vote when in fact they are *not* eligible, thus exposing them to criminal prosecution for voter fraud.

For example, individuals with felony convictions in **Pennsylvania** cannot vote until released from prison.[18]  But in response to interviews in 2004, two counties mistakenly stated that people with felony convictions could vote by absentee ballot while incarcerated for a felony conviction.  One county official advised that people incarcerated for felonies could vote by absentee ballot.  Another said, "[n]obody is not allowed to vote. You can vote if you're in jail.  Drug dealers, rapists, murderers can vote because politicians are looking for votes."

**South Carolina** is one of the few states that do disenfranchise individuals with misdemeanor convictions, but only while they are incarcerated.[19]  The law also bars anyone with a misdemeanor specifically related to election fraud from voting until full completion of sentence.  Interviews of election officials in 2008 found that 61% of officials did not understand the state's law on misdemeanors, with several officials incorrectly stating that individuals could vote while incarcerated for a misdemeanor conviction.

## III.   CONFUSION ABOUT BASIC VOTER REGISTRATION PROCEDURES

### Arbitrary Documentation

While a few states have laws or regulations that specifically require people with past convictions to produce certain documentation before being able to register to vote, the vast majority of states have no such requirements.  Nevertheless, in several states local officials imposed arbitrary documentation requirements with the potential result of illegally disenfranchising many eligible voters.

Interviews with election officials in **New York** in 2003 and 2006 revealed widespread illegal documentation requirements being imposed throughout the state.  In 2003, more than half the local offices, including all five boroughs of New York City, were requiring people to present some type of documentation before registering to vote.  None of the forms of documentation requested were required by law and several of them simply did not exist.  Despite a 2003 State Board of Elections policy directive prohibiting local officials from imposing any documentation requirements, interviews in 2006 revealed that more than a third of the local offices, including three out of five New York City boroughs, continued to illegally require documentation.  Similarly, a 2004 survey in **New Jersey** revealed that more than a third of local election offices were illegally demanding documentation from people with past criminal convictions.

**Washington** law does not require people with felony convictions to provide documentation when registering to vote.[20]  However, interviews conducted in 2004 revealed that 36% of Washington election officials stated that individuals with felony convictions would need to provide documentation from the court before being able to register to vote.  An additional 30% of officials were unclear about the law or refused to answer the question regarding documentation requirements.

### Out-of-State and Federal Convictions

Interviews also revealed widespread confusion about whether and how out-of-state or federal convictions affect the right to vote.  For example, in **Tennessee** individuals with out-of-state or federal felony convictions can vote if their voting rights were restored in another state or if they meet the Tennessee requirements.[21]  However, in interviews in 2007, 90% of local officials failed to respond correctly regarding the voting eligibility of a person convicted of a federal felony.  More specifically, 54% of officials did not mention any specific restriction, 27% cited one or two of the five restrictions, and 9% stated they did not know the answer.  Seventy-five percent of the Tennessee officials provided incorrect answers regarding the voter eligibility of a person convicted of felony in another state.

6

Similarly, in 2005 more than a third of the local officials interviewed in **Kentucky** were either unsure about the law or misrepresented the law on out-of-state convictions.

In **Colorado**, individuals with federal and out-of-state convictions are eligible to vote upon completion of incarceration and parole.[22]   Officials interviewed in 2007 were extremely confused about the restoration requirements for individuals with federal and out-of-state felony convictions.  Seventy-two percent of officials responded incorrectly or inaccurately regarding eligibility for individuals with out-of-state convictions, and 69% responded incorrectly or inaccurately as to the eligibility of individuals with federal convictions.  Officials repeatedly stated that if individuals with federal and out-of-state convictions were not on the list of ineligible voters provided by the Secretary of State they would not know whether to revoke or restore their voting rights.

In **Mississippi**, a person does *not* lose the right to vote if convicted in another state or in federal court.[23]   However, interviews in 2005 revealed that only a third of the officials interviewed knew the law regarding federal convictions, and only half knew this was also true for out-of-state convictions.

## IV.   COMMUNICATION PROBLEMS

The interviews also revealed a variety of communication problems when trying to speak with election officials across the country, ranging from officials' failure to answer repeated telephone calls to outright hostility.

A recurrent problem was the refusal or unwillingness of election officials to answer basic questions about the state election law.  Interviewers in **Colorado**, **New York, New Jersey, Oklahoma, Pennsylvania**, and **Rhode Island** all experienced difficulty in getting basic questions answered.  Some officials in these states did not answer the phone, hung up on callers, advised that there was no staff to answer the questions, or referred interviewers to other offices that were also unable to answer the questions.

Some interviewers received some deeply troubling responses from officials.  In **Tennessee**, six county election officials indicated that they would not offer assistance, either directly or through a referral, to a formerly incarcerated individual having difficulty obtaining the Certificate of Restoration required to restore voting rights.  One Tennessee official said individuals with felony convictions "shouldn't be allowed to vote."  Another said, "not if I can catch them."  And another stated, "I uphold the good people, and criminals can take care of themselves. . . I'm not going go bend over backwards to help a felon."  In response to a question about how people are removed from the voter rolls, an official

in **Oklahoma** said that election officials "pretty well know" who has been in trouble with the law.  In response to another question, the same official used the term "sambo," a racist slur for African Americans.

## V.   GETTING IT RIGHT

Generally, election officials in states that restore voting rights to people upon release from prison are better informed on the law.  This is not surprising.  The law in these states is straightforward – if a person is out of prison he or she can register to vote.

For example, in **Ohio** nearly 82% of election officials interviewed correctly stated that people are eligible to vote while on parole, and nearly 75% stated that people can vote while on probation.[24]  In **Oregon**, a whopping 100% of officials responded correctly that people are eligible to vote as soon as they are released from prison.

But in states where the law has changed recently, training is especially important.  In 2006, **Rhode Island** was the first state in the country where voters approved a ballot referendum to amend the state constitution to restore voting upon release from prison.  But interviews in 2008 revealed that only 61% of local officials correctly stated that a person on probation is eligible to vote, and only 64% of election officials correctly stated that a person on parole is eligible to vote.  Only six officials stated they had been trained on the new law.

## VI.   CAUSES OF DE FACTO DISENFRANCHISEMENT

This report documents an unsettling phenomenon.  Across our country, potentially hundreds of thousands of *eligible* voters may be denied their right to vote.  Although the eligibility and registration laws vary widely from state to state, the 27 interviews of election officials in 23 states identified some root causes of this national problem of de facto disenfranchisement:

• Laws are unnecessarily complicated and difficult for election and criminal justice officials and the public to understand;

• Administering these laws requires election officials to have expertise in the criminal justice system;

• Informing individuals of their rights requires criminal justice officials to have expertise in voting laws;

- Little or no training is given to election officials and criminal justice officials about felony disenfranchisement laws;

- Few, if any, educational materials explaining these laws are available for officials, the impacted population, or the general public; and

- There is a severe lack of communication between criminal justice agencies and election officials.

## VII.   POLICY RECOMMENDATIONS

There is some good news.  The widespread and persistent confusion and misinformation that results in this mass disenfranchisement is easily remedied by a few straightforward, common sense policy initiatives:

**Simplify the Law.** States should restore voting rights to people as soon as they are released from prison.  Currently fifteen states, the District of Columbia and Puerto Rico restore voting rights to people out of prison.[25]  Allowing people to vote as soon as they are released from prison simplifies election administration – individuals not in prison, are eligible to vote.  Moreover, restoring voting rights to people who are living in the community helps to build a stronger democracy, protect public safety, and empower families and communities.[26] This system eliminates the need to coordinate complicated data matches, administer convoluted eligibility requirements, or sort through thousands of restoration applications, saving valuable time, money, energy and resources and avoiding burdensome lawsuits.

But changing eligibility requirements is not enough by itself.  The evidence described in this report demonstrates the need to assure that state laws are widely understood and consistently enforced.  We recommend state laws include the following elements to ensure that citizens can freely exercise their fundamental right to vote:

**Educate.**  Regularly train election and criminal justice officials on the law and proper registration procedures.  Clear guidance and information should be widely available to the public through written materials, state websites and public service announcements.

**Provide Notice.**  Ensure that criminal defendants are informed: (1) before conviction and sentencing to prison, that they will lose their voting rights; and (2) when they are again eligible to register and vote.

**Assist with Voter Registration.**  Make the Department of Corrections and Probation and Parole authorities responsible for assisting with voluntary voter registration.  Ensure that all citizens are subject to the same application procedures.

**Synchronize Voter Registration Databases.**  Ensure that names on the state's computerized list of registered voters are marked inactive upon a person's imprisonment and then automatically reactivated when eligible by electronic information-sharing between criminal justice agencies and election agencies.

**Eliminate paperwork.**  Voting rights should be restored automatically without additional paperwork and bureaucratic red tape.  Once eligible to vote, individuals with criminal histories should follow the same registration procedures as everyone else.

The Appendix includes a model bill incorporating all of these provisions to which policy makers may look for guidance.

# APPENDIX:
# COMPONENTS OF A VOTING RIGHTS RESTORATION BILL

A bill to restore voting rights to people with felony convictions should have several sections, including **Title, Findings, Purpose, Restoration of Rights, Notice, Voter Registration, Maintaining a Statewide Voter Registration Database, Education, Conforming Amendments, and Effective Date.**  This memorandum will describe each section and identify any relevant strategy decisions to be made.  The memo also provides examples of legislative language to use in each section.  Of course, every state is different, and every coalition will need legal help in drafting a bill tailored to its state.

## TITLE

The bill needs a name.  The "[Name of State] Restoration of Voting Rights Act" is a typical title.

## FINDINGS

The findings section states the facts and principles that make the bill necessary.  Ordinarily, the findings should include:

- A statement about how important voting is to democracy;
- A statement about how political participation helps with rehabilitation and reintegration into the community;
- A statement about how many people in the state have lost their right to vote because of felony convictions;
- A statement about the harms of disfranchisement in minority communities;
- A statement about how the bill will streamline the process by which the government restores rights to people with criminal convictions and thus save the taxpayers money.

Here, for example, are the findings from a bill that became law in Rhode Island in 2006:

1. Voting is both a fundamental right and a civic duty.  Restoring the right to vote strengthens our democracy by increasing voter participation and helps people who have completed their incarceration to reintegrate into society.  Voting is an essential part of reassuming the duties of full citizenship.

2.  Rhode Island is the only state in New England that denies the vote to people convicted of felonies, not only while they are in prison, but also while they are living in the community under the supervision of parole or probation officials.

3.  As a result of this extended disfranchisement, Rhode Island deprives a greater proportion of its residents of voting rights than any other state in the region. More than 15,500 Rhode Islanders have lost the right to vote because of a felony conviction.  Of these, 86% are not in prison: they have either been released or their convictions did not result in actual incarceration.  Rhode Island has the second highest rate of people on probation in the nation.

4.  Criminal disfranchisement in Rhode Island has a disproportionate impact on minority communities. The rate of disfranchisement of African-American voters is more than six times the statewide rate.  Hispanics lose the vote at more than 2.5 times the statewide average.  One in five black men and one in eleven Hispanic men are barred from voting in Rhode Island. By denying so many the right to vote, criminal disfranchisement laws dilute the political power of entire minority communities. Because these communities are concentrated in cities, the urban vote is also suppressed, with the rate of disfranchisement in urban areas 3.5 times the rate in the rest of the state.

5.  Extending disfranchisement beyond a person's term of incarceration complicates the process of restoring the right to vote. Under current law, a person may regain that right when released from incarceration if no parole follows, when discharged from parole, or when probation is completed.  This system requires the involvement of many government agencies in the restoration process.  This bill would simplify restoration by making people eligible to vote once they have served their time in prison, thereby concentrating in the Department of Corrections the responsibility for initiating restoration of voting rights.  A streamlined restoration process conserves government resources and saves taxpayer dollars.

## PURPOSE

This section states the purpose of the bill, explaining why it should be enacted. For example:

The purposes of this act are to strengthen democratic institutions by increasing participation in the voting process, to help people who have completed their incarceration to become productive members of society, and to streamline procedures for restoring their right to vote.

12

## RESTORATION OF RIGHTS

This section restores voting rights to people with felony convictions.  Before it is drafted, the state coalition needs to make an important strategy decision: how great a change in state law to seek?  Here are some possibilities:

- Full restoration, including the right to vote from prison;
- Restoration upon release from incarceration;
- Restoration upon completion of parole (probationers can vote);
- Restoration upon completion of parole or probation;
- Restoration upon "completion of sentence" (*beware*: this may require a person to pay all fines, restitution, and court costs before being allowed to vote);
- Restoration upon completion of sentence and expiration of a waiting period.

What is possible will depend in part on whether the state in question disfranchises people in its *state constitution.*  Each state has its own constitution, and each one is unique.  Laws passed by a state legislature cannot conflict with the constitution of that state.  Some of the state constitutions have provisions relevant to the voting rights of people with criminal convictions.  Some provisions pose no bar to restoration by legislation alone.  In other states, however, restoration is impossible without an amendment to the state constitution.  The amendment process differs from state to state, but it is usually multi-layered and generally involves a public referendum (popular vote) on the amendment.

The political climate may also set limits.  Some state coalitions are committed to full restoration, including the right to vote while in prison, but few states are prepared to go that far.  At the other end of the spectrum, some laws, like one passed in March 2005 in Nebraska, would restore rights only when a person has completed parole or probation and waited an additional two years.  This can be a step forward in a state, again like Nebraska, that previously disfranchised people permanently.

Where possible, there are many advantages to proposing legislation that would restore voting rights as soon as a person gets out of prison. This approach re-enfranchises more people than most plausible alternatives.  In addition, election officials can understand and follow this rule: a person who is living in the community and appears at a polling place should not be barred from voting because of any criminal record – once the person is out, the person is eligible.  This system also concentrates the restoration process in the Department of Corrections, without the need to involve probation and parole officials.

A restoration of rights section may look like this:

> A person who has lost the right of suffrage . . . because of such person's incarceration upon a felony conviction shall be restored the right to vote when that person is discharged from incarceration.

## NOTICE

A good bill should require notice both before conviction or sentencing and before release from prison.  These are typical notice provisions for a bill that restores rights immediately following incarceration:

> Before accepting a plea of guilty or nolo contendere to a felony, and before imposing a felony sentence after trial, the court shall notify the defendant that conviction will result in loss of the right to vote only if and for as long as the person is incarcerated and that voting rights are restored upon discharge.

> As part of the release process leading to the discharge of a person who has been disfranchised because of incarceration upon a felony conviction, the Department of Corrections shall notify that person in writing that voting rights will be restored.

## VOTER REGISTRATION

Assuming the bill restores the right to vote when a person gets out of prison, this section should require the Department of Corrections to assist people in registering to vote just before they are released.  The best option is to make the Department of Corrections a "voter registration agency."  Under a federal law passed in 1993, the National Voter Registration Act, the states should have designated certain social welfare agencies as "voter registration agencies."  These agencies must offer people assistance with voter registration in a non-coercive way.  Because laws establishing this system already exist in most states, the bill can "piggyback" by adding the Department of Corrections to the existing list of voter registration agencies.  The bill should refer to the existing state law.

Here is an example:

> The Department of Corrections shall act as a voter registration agency in accordance with § [xxx] of this Code.  As part of the release process leading to the discharge of a person who has been disfranchised because of a felony conviction, the Department of Corrections shall provide that person with a voter registration form and a declination form, and offer that person assistance in filling out the

appropriate form.  Unless the registrant refuses to permit it to do so, the Department of Corrections shall transmit the completed voter registration form to the [appropriate registration agency] in the county where the registrant resides.

## MAINTAINING A STATEWIDE VOTER REGISTRATION DATABASE

States are in the process of creating centralized voter registration databases that will contain electronic information about all registered voters, in accordance with the federal Help America Vote Act.  The names of eligible and registered ex-felons need to be included in these databases.  In most states, the secretary of state is the chief election official and is responsible for maintaining the database.

When a person just out of prison registers or re-registers to vote, that person's name should be added to the database even without special provisions in the bill.  Just in case that system has gaps, however, the bill can include other avenues for transmitting names to the secretary of state and adding these names to the database.

Here are some typical provisions:

The Department of Corrections shall, on or before the 15th day of each month, transmit to the secretary of state two lists.  The first shall contain the following information about persons convicted of a felony who, during the preceding period, have become ineligible to vote because of their incarceration; the second shall contain the following information about persons convicted of a felony who, during the preceding period, have become eligible to vote because of their discharge from incarceration:

- name,
- date of birth,
- date of entry of judgment of conviction,
- sentence,
- last four digits of social security number, or driver's license number, if available.

The secretary of state shall ensure that the statewide voter registration database is purged of the names of persons who are ineligible to vote because of their incarceration upon a felony conviction.  The secretary of state shall likewise ensure that the names of persons who are eligible and registered to vote following their discharge from incarceration are added to the statewide voter registration database in the same manner as all other names are added to that database.

The secretary of state shall ensure that persons who have become eligible to vote because of their discharge from incarceration face no continued barriers to registration or voting resulting from their felony convictions.

## EDUCATION

State officials and the public should learn about the changes in the law that would result from passage of the bill. The bill should therefore require relevant training and education.

Here are some relevant provisions:

The Secretary of State shall develop and implement a program to educate attorneys; judges; election officials; corrections officials, including parole and probation officers; and members of the public about the requirements of this section, ensuring that:

1. Judges are informed of their obligation to notify criminal defendants of the potential loss and restoration of their voting rights, in accordance with subsection (x) of this section.

2. The Department of Corrections is prepared to assist people with registration to vote in anticipation of their discharge from incarceration, including by forwarding their completed voter registration forms to the [appropriate registration agencies].

3. The language on voter registration forms makes clear that people who have been disqualified from voting because of felony convictions regain the right to vote when they are discharged from incarceration.

4. The Department of Corrections is prepared to transmit to the Secretary of State the information specified in subsection (x) of this section.

5. Probation and parole officers are informed of the change in the law and are prepared to notify probationers and parolees that their right to vote is restored.

6. Accurate and complete information about the voting rights of people who have been charged with or convicted of crimes, whether disenfranchising or not, is made available through a single publication to government officials and the public.

16

## CONFORMING AMENDMENTS

The bill will need to amend various provisions of pre-existing state law that would otherwise conflict with it. This is a job for the lawyer or lawyers who do the drafting.

## EFFECTIVE DATE

Finally, the bill will need an effective date. Different states have different rules and customs about when bills take effect as law. To ensure that the bill protects people who were sentenced or discharged before its effective date, however, a provision like the following is necessary:

> Voting rights shall be restored in accordance with this act to all [name of state] residents who have been discharged from incarceration or who were never incarcerated following felony convictions, whether they were discharged or sentenced before or after the effective date of this act.

*          *          *          *          *          *          *          *          *          *          *          *

These model provisions can help in drafting or evaluating a bill. It is also extremely helpful to have local, experienced criminal defense lawyers who understand how the bill would work in practice and can recommend improvements.

## ENDNOTES

1   For additional background information on restoration of voting rights, see Erika Wood, *Restoring the Right to Vote* (2008), available at www.brennancenter.org; and *Breaking Barriers to the Ballot Box*, available at http://www.aclu.org/pdfs/votingrights/fd_pamphlet.pdf; Jeff Manza & Chris Uggen, *Locked Out: Felon Disenfranchisement and American Democracy* (2006).

2   For a map explaining the law in each state, see www.brennancenter.org and www.aclu.org/rightto-vote.

3   In this report, all localities in a state were contacted unless otherwise noted.  In addition, we maintain the supporting documentation for all of the interviews.

4   The Kentucky interviews were conducted with officials in half of the counties in Kentucky which were randomly selected within each geographical region – north, south, east and west.

5   Ky. Const. § 145(1), (2); Ky. Rev. Stat. Ann. § 27A.070 (2007).

6   Oh. Rev. Code Ann. § 2961.01(A), (C) (2006).

7   These states are California, Colorado, Connecticut, New York, and South Dakota. See N.Y. Elec. Law § 5-106 (2008); Cal. Const., art. II § 4; Cal. Elec. Code § 2101 (2008); Colo. Rev. Stat. §1-2-103(4) (2008); Conn. Gen. Stat. § 9-46a (2008); S.D. Codified Laws §§ 23A-27-35; 24-5-2; 24-15A-7 (2008).

8   New York State Division of Criminal Justice Services, New York State Probation Population, 2007 Profile (June 2008), available at http://dpca.state.ny.us/pdfs/nysprobationreport2007profile.pdf.

9   Colorado Judicial Department, Annual Statistical Report for Fiscal Year 2007 (June 2007), available at http://www.courts.state.co.us/Administration/Custom.cfm/Unit/annrep/Page_ID/97.

10  The states are: Alabama, Arizona, Delaware, Florida, Mississippi, Nevada, Tennessee and Wyoming.

11  Tenn. Const. Art. 1, § 5; Tenn. Code Ann. §§ 40-20-112; 40-29-202(a), (b), (c); 203(a); 204 (2008).

12  Miss. Const. art. 12, § 241; Op. Miss. Atty. Gen. No. 2005-0193 (Wiggins, Apr. 26, 2005).

13  Op. Miss. Att'y Gen. No. 2004-0171 (April 23, 2004).  The Attorney General's opinion is being challenged in court.  See *Strickland v. Clark,* No. 2005-0193 (Miss. Ch. Ct., Oct. 6, 2006).

14  Ariz. Const. art. VII, § 2(c); Ariz. Rev. Stat. §§ 13-906.

15  Ariz. Rev. Stat. 13-906 (2008)

16  Ariz. Rev. Stat §§ 16-152, 16-184 (2008).

17  Okla. Stat. tit. 26,§ 4-101(1) (2008).

18  25 Pa. Cons. Stat. §§ 2602(w), 3146.1 (2008); *Ray v. Pennsylvania*, 263 F. Supp. 630 (W.D. Pa. 1967).

19  S.C. Code Ann. §§ 7-5-120(B)(2),(3) (2008).

20  Wash. Rev. Code §§ 29A.04.079; 9.94A.637 (2008).

21  Tenn. Code Ann. § 40-29-105 (2008).

22  Colo. Rev. Stat. §§ 1-2-103, 1-2-606 (2007).

23  See *State ex rel. Mitchell v. McDonald*, 145 So.2d 508 (Miss. 1993); *Middleton v. Evers*, 515 So.2d 940 (Miss. 1987); see also MS AG Op., Doxey (August 27, 1987); MS AG Op., Wilburn (January 19,1987) ("It has been the long standing opinion of this office that only convictions of disenfranchising crimes committed under the jurisdiction of this State affect one's right to vote").

24  Interviews were conducted in the 27 most populous counties in Ohio, representing more than 75% of Ohio citizens.

25  Hawaii, Illinois, Indiana, Massachusetts, Michigan, Montana, New Hampshire, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, and Utah.  Maine and Vermont allow prisoners to vote.

26  For a comprehensive policy proposal in favor of restoring voting rights to people upon release from incarceration see Erika Wood, *Restoring the Right to Vote*, available at www.brennancenter.org





Brennan Center for Justice
at New York University School of Law

161 Avenue of the Americas
12th floor
New York, New York 10013
212.998.6730  Fax 212.995.4550
www.brennancenter.org

American Civil Liberties Union

125 Broad Street
18th floor
New York, NY 10004
www.aclu.org