# EXHIBIT 12

# Pretrial Modernization Review

## Per Senate Substitute 1 for Senate Bill 7

## Focus on SB 7 Bail Reform

Prepared by the Statistical Analysis Center

January 2023

# Overview

- The Center analyzed CY 2021 and the first six months of CY 2022 arrest records and identified *adult* cases with original charges in SB 7's list of specific statute references.
    - Included charges are referenced in subsections (c)(1) – (c)(31) and (c)(38) of § 2107. This analysis does not include complex conditions described in (c)(32) – (c)(37).
    - For 2021, Pre- and Post-SB 7 periods were separated as arrests occurring in January thru July and August thru December, respectively. (SB 7's effective date was 7/30/21; all of July was included in the Pre-SB 7 period for convenience in monthly breakouts.)
- Initial bail type set in JP Court was associated with each case.
    - Cases with no SB 7 charges at initial bail setting were removed.
    - In cases with intoxication holds identified, the initial bail type after the intoxication hold was used.
- This preliminary analysis focuses mainly on initial bail type changes in the Pre- and Post-SB 7 periods, including a cursory assessment of racial impact.



# Monthly Breakout of Initial Bail Types in Cases With SB 7 Charges

## Pre-SB 7

**2021**
January – July
1,494 Total Cases

Monthly Averages:
213 Cases
157 Cash or Secured
56 Unsecured or OR

## Post-SB 7

**2021**
August – December
1,092 Total Cases

Monthly Averages:
218 Cases
182 Cash or Secured
36 Unsecured or OR

**2022**
January – June
1,314 Total Cases

Monthly Averages:
219 Cases
183 Cash or Secured
36 Unsecured or OR

# Bail Distributions in 2021 Cases with SB 7 Charges

- In 1,494 cases with SB 7 charges from January to July, and 1,092 cases from August to December:
  - Cash bail cases increased from 38% to 59.6% after SB 7 implementation.
    - Secured cases decreased, but Cash or Secured cases combined increased from 73.6% to 83.3%.

| Pre-SB 7, January thru July 2021 | | | | |
|---|---|---|---|---|
| Cases With SB 7 Charges | Initial Bail Type | | | Total |
| | Cash | Secured | Unsecured/OR | |
| **Case Totals** | **568** | **531** | **395** | **1,494** |
| **Bail Type %** | **38.0%** | **35.5%** | **26.4%** | |

| Post- SB 7, August thru December 2021 | | | | |
|---|---|---|---|---|
| Cases With SB 7 Charges | Initial Bail Type | | | Total |
| | Cash | Secured | Unsecured/OR | |
| **Case Totals** | **651** | **259** | **182** | **1,092** |
| **Bail Type %** | **59.6%** | **23.7%** | **16.7%** | |

**Pre-SB 7 Bail Type Distribution**



**Post-SB 7 Bail Type Distribution**



# Bail Distributions in Cases with SB 7 Charges

- Comparing 1,092 cases from Aug-Dec 2021 and 1,314 cases with SB 7 charges from Jan-Jun 2022:
  - Bail type distribution in the first half of 2022 is very similar to what it was in the last 5 months of 2021.
    - Average monthly case volume is also nearly equal; 218 in Aug-Dec 2021 vs 219 in Jan-Jun 2022.

| Post- SB 7, August thru December 2021 | | | | |
|---|---|---|---|---|
| Cases With SB 7 Charges | Initial Bail Type | | | Total |
| | Cash | Secured | Unsecured/OR | |
| *Case Totals* | *651* | *259* | *182* | *1,092* |
| **Bail Type %** | **59.6%** | **23.7%** | **16.7%** | |

| Post- SB 7, January thru June 2022 | | | | |
|---|---|---|---|---|
| Cases With SB 7 Charges | Initial Bail Type | | | Total |
| | Cash | Secured | Unsecured/OR | |
| *Case Totals* | *776* | *324* | *214* | *1,314* |
| **Bail Type %** | **59.1%** | **24.7%** | **16.2%** | |

**Post-SB 7 Bail Type Distribution, Aug-Dec 2021**



**Post-SB 7 Bail Type Distribution, Jan-Jun 2022**



# Bail Distribution Changes by Defendant Race

- Cash bail proportions increased for Black and White defendants; Unsecured/OR decreased for both.

**Bail type distributions in cases with SB 7 charges, Pre- and Post-SB 7**



# Exploring SB 7's Detention Impact

- It is not possible to exclude COVID-19's multiple influences on the criminal justice system from analysis of SB 7's detention impact.  2022 cases are likely to be more indicative of post COVID-19 trends, but those cases are still significantly affected by case processing delays.  About 47% of Jan-Jun 2022 cases with SB 7 charges were pending as of year-end reviews.
- Initial detention was involved in about 1,032 (78.5%) of the 1,314 cases identified with SB 7 charges in the first half of 2022.
  - ➢ These initial detention counts include some cases where defendants were already held in detained or sentenced status on other cases prior to initial appearance on the SB 7 case.
  - ➢ Also included are 12 unsecured/OR SB 7 cases where defendants were held on other cases.

**Case-based initial detained admission breakouts for cases with SB 7 charges (Jan-Jun 2022)**



- Initially held on one SB 7 case only: 43.2%
- Initially held on one SB 7 case and additional cases (may include multiple SB 7 cases): 34.5%
- Initially released on SB 7 case, but held on other case(s): 0.9%
- Not initially detained: 21.5%

# Exploring SB 7's Detention Impact (cont.)

- The chart below shows percentages of cases with initial detention involved for the four major race and sex categories.  (Six cases with defendants of other races are not represented here.)

**Percent of SB 7 cases with initial detention involved (Jan-Jun 2022)**



# Exploring SB 7's Detention Impact (cont.)

- Initial detained admissions with SB 7 charges accounted for about 19.3% of total detained admissions over the first 6 months of 2022.



# Exploratory Demographic Breakouts

- Race data were taken mostly as-is from the information system.
  - ➢ Race data anomalies exist; caution is urged when differences of a few percentage points are observed, and in general when comparing small groups.
  - ➢ Data reconciliation was attempted when obvious discrepancies were incidentally observed through review of some cases, but it is virtually impossible to verify demographic data for every individual.
- Demographic breakouts are case-based counts; individuals may therefore be represented multiple times.

- A small number of cases (less than 1% in each period) with race unknown or other than Black/White are excluded from race breakouts in this review.



**Defendant Race Breakouts of Cases with SB 7 Charges**

| Period | Black | White |
|---|---|---|
| Jan - Jul 2021 | 64.1% | 35.5% |
| Aug - Dec 2021 | 61.6% | 37.7% |
| Jan - Jun 2022 | 63.4% | 35.9% |

# Exploratory Demographic Breakouts (cont.)

- Ethnicity was not specified for analysis in SB 7, but questions about ethnicity were asked during review of 2021 data.
- Ethnicity was thus far explored only in Jan-Jun 2022 data. Numerous anomalies were observed, and data reconciliation requires in-depth review.
- As indicated below, a substantial portion of white defendants could be Hispanic.

**SB 7 Case Hispanic Ethnicity Percentages, Jan-Jun 2022, by Race and Overall**



# Concerns: SB 7 CJC/SAC Reporting Requirements

- SS 1 for SB 7 added the following reporting requirements for the Criminal Justice Council, which have been delegated to the Statistical Analysis Center.

  - *… the Criminal Justice Council shall include information of the following in the aggregate and disaggregated by race, gender, and zip code of:*

    *(1) Rates of defendants' eligibility under § 2107 (c) of this title.*
    *(2) Rates of initial detention.*
    *(3) Rates of detention throughout the pretrial period.*
    *(4) Average length of stay from arrest to adjudication.*

- Items (3) and (4) above imply conclusion of the pretrial period for measurement. With COVID-19 delays, and possibly even in the absence of those delays given the complexity of some cases, a significant portion of SB 7 cases remain pending. Sufficient time has not elapsed to allow these cases to be fully analyzed.

- In addition to the pending case issue, there are areas of concern regarding specificity of some of the reporting elements. Items needing additional consideration include the following.

# Concerns: SB 7 CJC/SAC Reporting Requirements (cont.)

- Race:
  - Questions were raised about ethnicity in preliminary reviews of early data. If ethnicity is also desired, it should be specified as a report element.
  - It should be recognized that race and ethnicity data anomalies can be significant. When inconsistencies are encountered, data reconciliation efforts can be time consuming and subjective.
- Gender:
  - System data elements are sex, not gender. If gender is the desired metric, a process for collecting and storing that information is required.
- ZIP Code:
  - Offender information often includes multiple and ambiguous addresses and/or ZIP Codes. Clarification is needed on the intended purpose of this information so the SAC can attempt to establish methods for identifying relevant ZIP Codes.

# Concerns: SB 7 CJC/SAC Reporting Requirements (cont.)

- Rates specified as: *(1) Rates of defendants' eligibility under § 2107 (c) of this title, (2) Rates of initial detention,* and *(3) Rates of detention throughout the pretrial period.*
    - ➢ Clarification is needed regarding what each rate means in terms of what the items are to be measured against.
    - ➢ If SB 7 charges are dropped or reduced to misdemeanors early in the process, before final disposition of the entire case, does the pretrial period continue beyond the point when there are no longer pending SB 7 charges?
    - ➢ If SB 7 charges are added after initial appearance, is a new SB 7 pretrial period established in a case that wasn't originally identified as an SB 7 case?
- Average length of stay from arrest to adjudication:
    - ➢ Does this include all detained and/or sentenced status stays for any period between arrest and adjudication, including returns after pretrial release?
    - ➢ Could answers to questions above regarding the pretrial period change points of arrest and adjudication in some cases?