# EXHIBIT 16

# 10 Reasons Courts Should Toss Florida's Flimsy 'Voter Fraud' Prosecutions

-
-
-

Florida created an unnavigable voting rights restoration system to undermine a voter-approved constitutional amendment, and now it's going after confused citizens for voting while allegedly ineligible.
**Last Updated:** May 12, 2023
**Published:** November 7, 2022

Florida has started prosecuting people with past felony convictions for allegedly registering to vote or for voting while ineligible. These prosecutions are unjust, unwarranted, and dangerous for democracy.

In 2018, Florida voters overwhelmingly approved Amendment 4, a constitutional amendment that automatically restored voting rights to most people with felony convictions, except those convicted of murder or a felony sex offense, after they complete their sentence. Within months, state lawmakers and Gov. Ron DeSantis (R) enacted Senate Bill 7066 to undercut the amendment by requiring those whose rights had just been restored to pay off certain court debts before being allowed to vote.

But with no centralized system to tell what a person might owe, it is often impossible for people with past convictions and election officials to know who is eligible to vote. Now the state is prosecuting people with past convictions for honest mistakes about their eligibility, intimidating potentially eligible voters and further undermining the promise of Amendment 4.

Since S.B. 7066 was enacted, Florida has struggled to administer the law because it can't verify people's eligibility under the new system in a timely way. It also has not provided sufficient guidance to the public about who is eligible under the law's complex rules. Making matters worse, government officials have permitted and, in some instances, outright encouraged people with past convictions to register to vote. And at the same time, the department of state — the office tasked with verifying voter eligibility for those with past convictions — has left ineligible voters on the rolls for years after it approved their registrations, making them think they are allowed to vote.

In litigation challenging S.B. 7066, both the state footnote1_9ieyh9h 1 *See, e.g.*, Opposition to Application to Vacate the En Banc 11th Circuit's Stay at 52, *Raysor v. DeSantis*, 140 S. Ct. 2600 (2020) (No. 19A1071); En Banc Opening Brief of Defendants-Appellants at 74, *Jones v. Governor of Fla.*, 975 F.3d 1016 (11th Cir. 2020) (No. 20–12003); *id.* at 75; En Banc Reply Brief of Defendants-Appellants at 68, *Jones*, 975 F.3d 1016 (No. 20–12003). and the U.S. Court of Appeals for the 11th Circuit footnote2_zy38kd4 2 *Jones*, 975 F.3d at 1047 ("The challenged laws are not vague. Felons and law enforcement can discern from the relevant statutes exactly what conduct is prohibited: a felon may not vote or register to vote if he knows that he has failed to complete all terms of his criminal sentence. This clear standard, which includes a scienter requirement, provides fair notice to prospective voters and 'limit[s] prosecutorial discretion.'" (alteration in original) (citations omitted)); *id.* at 1047–48 (no person with a past conviction "who honestly believes he has completed the terms of his sentence commits a crime by registering and voting"). downplayed the risk of prosecution for individuals with past convictions confused about their eligibility, saying the criminal statutes for illegal registration and voting require prosecutors to show that those charged knew they were ineligible but registered or voted anyway. However, for the more than 30 people with felony convictions — at least 25 of whom are

Black — who have since been charged by local or statewide prosecutors for registering or voting while ineligible in 2020, that doesn't seem to be the case. footnote3_sxncmek 3 As of May 12, 2023, at least ten people in Alachua County have been charged by the state attorney's office for the 8th Judicial Circuit for allegedly registering and/or voting while owing legal financial obligations. Bianca Fortis, *A Government Official Helped Them Register. Now They've Been Charged with Voter Fraud*, ProPublica (July 21, 2022), https://www.propublica.org/article/florida-felonies-voter-fraud. An additional three people in Alachua County have been charged by the state attorney's office for the 8th Judicial Circuit for allegedly voting while ineligible because of a past felony sex offense. Jennifer Cabrera, *Hawthorne Man Arrested for Fraudulent Voting by a Sex Offender*, Alachua Chronicle (March 24, 2023), https://alachuachronicle.com/hawthorne-man-arrested-for-fraudulent-voting-by-a-sexual-offender/. At least four people in Seminole County have been charged by the state attorney's office for the 18th Judicial Circuit for allegedly voting while ineligible because of a past felony sex offense. *4 Sex Offenders Charged with Illegal Voting in Central Florida as More Being Investigated*, WESH Orlando (July 25, 2022), https://www.msn.com/en-us/news/crime/4-sex-offenders-charged-with-illegal-voting-in-central-florida-as-more-being-investigated/ar-AAZXDnS. At least one person in Okaloosa County has been charged by the state attorney's office for the 1st Judicial Circuit for allegedly voting while ineligible because she was on probation. Press Release, Fla. Department of Law Enforcement, Two arrested for election crime violations following FDLE investigation (March 15, 2013), https://www.fdle.state.fl.us/News/2023/March/Two-arrested-for-election-crimes-violations-follow. At least twenty-two people across six counties (Broward, Brevard, Miami-Dade, Hillsborough, Orange, and Palm Beach) have been charged by the Office of Statewide Prosecution for allegedly registering and/or voting while ineligible because of a past murder or felony sex offense. Press Release, Fla. Department of Law Enforcement, In case you missed it: FDLE arrests convicted murders, sex offenders for voting illegally (Aug. 18, 2022), http://www.fdle.state.fl.us/News/2022/August/In-case-you-missed-it-FDLE-arrests-convicted-murder. Press Release, Fla. Department of Law Enforcement, FDLE arrests two on election fraud charges (May 9, 2023), https://www.fdle.state.fl.us/News/2023/FDLE-arrests-two-on-election-fraud-charges; Press Release, Fla. Department of Law Enforcement, FDLE arrests Brevard sexual predator for election fraud (May 10, 2023), https://www.fdle.state.fl.us/News/2023/May/FDLE-arrests-Brevard-sexual-predator-for-election.

**These prosecutions, which began in the months leading up to Florida's 2022 midterm elections with great publicity, serve to intimidate people with past convictions who *are* eligible to vote.**

There is no evidence of widespread fraud in Florida's elections (or any state's elections, for that matter). Yet state lawmakers created a highly unusual election police office earlier this year at the request of DeSantis to investigate "election irregularities."

In August 2022, the Office of Election Crimes and Security partnered with state and local police to make its first round of arrests, detaining 19 people with past convictions who allegedly voted while ineligible more than two years ago. footnote4_xowfdof 4 Press Release, Ron DeSantis, Governor of Florida, Governor DeSantis Announces the Arrest of 20 Elections Criminals (Aug. 18, 2022), https://www.flgov.com/2022/08/18/governor-desantis-announces-the-arrest-of-20-elections-criminals/. As of January 5, 2023, the Brennan Center has only been able to identify 19 of the 20 people with past convictions arrested in August 2022. DeSantis, flanked by over a dozen uniformed police officers, touted the arrests as the "opening salvo" for his election police force at a press conference in a Broward County courthouse. "These folks voted illegally, in this case, and there's going to be other grounds for other prosecutions in the future," he said.

But the timing of these arrests just five days before Florida's primary election, coupled with state officials' press conference, suggests this election police force and these prosecutions may deter eligible people with felony convictions from voting. This outcome seems even more likely given the publicly available evidence underlying the charges appears to be weak and the authority of those prosecuting the charges has been questioned by six judges, as set forth below.

**By the state's own admission, to obtain a conviction prosecutors must prove those charged knew they were ineligible but registered or voted anyway.**

In Florida, it is a crime to register or vote while ineligible only if the person knew they were ineligible but did so anyway. footnote5_aqra3fa 5 Fla. Stat. §§ 104.011(1), 104.15. This means that if they don't realize they are ineligible, they aren't committing a crime. footnote6_0lmr50o 6 *Corrales v. State*, 84 So.3d 406, 408 (Fla. 1st DCA 2012) ("The willfulness requirement assures that 'no one will be convicted of a crime because of a mistake or because he does something innocently, not realizing what he was doing.'" (citing *United States v. Hall*, 346 F.2d 875, 879 (2d Cir. 1965)).

In fact, the state itself repeatedly emphasized the importance of this intent requirement in federal court while it defended S.B. 7066, stating that voters could not be prosecuted for "good faith, but mistaken, belief[s]" about their eligibility. footnote7_qar90tz 7 *See supra* note 1. When it upheld S.B. 7066, the 11th Circuit likewise affirmed that no person with a past conviction who "honestly believes he has completed the terms of his sentence commits a crime by registering and voting[.]" footnote8_zgwh84j 8 *See supra* note 2.

**Most, if not all, of those charged were misled or confused about their eligibility. Thus, they didn't intend to break the law.**

Publicly available information, including troubling police bodycam footage from some of the arrests, suggests that most, if not all, of those charged appear to have made honest mistakes about their voting eligibility.

In fact, many of those charged were told they could vote by a government official. footnote9_o0plwii 9 For example, the 10 people charged in Alachua County for allegedly registering and/or voting while ineligible registered to vote during voter registration drives organized by the county supervisor of elections office at the local jail. Fortis, *supra* note 3. One of those charged in Orange County was told by prison officials he could vote upon his release from incarceration. Matt Dixon, *Defendants Targeted in DeSantis' Voter Fraud Crackdown Were Told They Could Vote*, Politico (Aug. 26, 2022), https://www.politico.com/news/2022/08/26/desantis-voter-fraud-defendants-florida-00053788 [hereinafter Dixon, *Defendants Targeted in DeSantis' Voter Fraud Crackdown*]. Another person in Orange County facing prosecution was told he was eligible to vote by a sheriff's deputy who was tasked with monitoring him, while an individual in Hillsborough County also facing prosecution was told he could vote after he called his local supervisor of elections office before an election to confirm he was eligible. Sam Levine, *Floridians Charged Over Voting Believed They Were Eligible, Documents Show*, The Guardian (Aug. 25, 2022), https://www.theguardian.com/us-news/2022/aug/25/florida-voting-fraud-charges-eligibility [hereinafter Levine, *Floridians Charged Over Voting*]. Several received a voter information card in the mail footnote10_d2xiff7 10 Dixon, *Defendants Targeted in DeSantis' Voter Fraud Crackdown*, *supra* note 9; Levine, *Floridians Charged Over Voting*, supra note 9; Tim Craig & Lori Rozsa, Florida Let Them Vote. *Then DeSantis's Election Police Arrested Them.*, Washington Post (Sept. 4, 2022), https://www.washingtonpost.com/nation/2022/09/04/desantis-election-police-voter-arrests/. — something Florida sends to all newly registered voters, including those it later determines to be ineligible, so long as their application is complete and the state confirms they are a real person. footnote11_n3f7u72 11 Fla. Stat. § 97.071. Florida's voter registration application also does not say that people convicted of murder or a felony sex offense cannot vote unless their rights have been restored by the executive clemency board, nor does it mention S.B. 7066's pay-to-vote requirement. footnote12_brhfugr 12 Form DS-DE 39, *Florida Voter Registration Application*, Fla. Dep't State (Oct. 2013), *available at* https://files.floridados.gov/media/704789/dsde39-english-pre-7066–20220429.pdf (requiring applicants to check a box stating "I affirm that I am not a convicted felon, or if I am, my right to vote has been restored"). (The department of state's list of S.B. 7066's disqualifying murder and felony sexual offenses is available here). In addition, many of those charged registered in 2019 or early 2020, but they didn't know about their ineligibility until this year. footnote13_hm2lh84 13 For example, at

least five of those charged in Hillsborough County were not removed from the rolls until this year, though they registered to vote in 2019 or 2020. Mary Ellen Klas et al, *Cases Against Arrested Voters on Shaky Legal Ground. Florida Issued Them Voter IDs*, Miami Herald (Aug. 31, 2022), https://www.miamiherald.com/news/politics-government/state-politics/article265138721.html. And one of the individuals charged in Orange County registered to vote in 2019 but was never notified by his local supervisor of elections office that he was ineligible. Dixon, *Defendants Targeted in DeSantis' Voter Fraud Crackdown, supra* note 9.

At least one local prosecutor recognized that in these circumstances, "[t]he evidence fails to show willful actions[.]" footnote14_lxy560b 14 Memorandum from Jonathan Olson, Div. Supervisor, Office of State Attorney, Fifth Judicial Circuit (June 13, 2022). That prosecutor declined to bring charges against six individuals previously convicted of a felony sex offense who voted in 2020 because those individuals, like the other 30-plus people charged, were given voter information cards, were never notified that they were ineligible, and were "encouraged to vote by various mailings and misinformation." footnote15_85t3ob6 15 *Id*.

**Many people with past convictions who registered or voted after Amendment 4 and S.B. 7066 went into effect are likely legally protected from prosecution.**

Under S.B. 7066 and as a result of multiple court rulings, there are periods of time after Amendment 4 and S.B. 7066 went into effect during which many people with past convictions who registered or voted may be immune from prosecution:

- **January 8, 2019–June 30, 2019**: S.B. 7066 clearly states that people with past convictions who registered during this period cannot be prosecuted for submitting a false affirmation on a voter registration application about their eligibility to vote. footnote16_bdpzy46 16 Fla. Stat. § 104.011(3).
- **January 8, 2019–September 11, 2020**: The 11th Circuit said people with past convictions who registered during this period are "entitled to vote" unless and until they are removed from the rolls. footnote17_s29yxm6 17 *Jones*, 975 F.3d at 1026 ("Florida has yet to complete its screening of any of the registrations. Until it does, it will not have credible and reliable information supporting anyone's removal from the voter rolls, and all 85,000 felons will be entitled to vote." (citations omitted)); *id*. at 1035–36 ("The dissenters' contention that state officials' implementation of Amendment 4 has prevented any felons from benefiting from the amendment is false. Eighty-five thousand felons are now registered voters, and each one will remain so unless Florida meets its self-imposed burden of gathering the information necessary to prove his ineligibility. Our dissenting colleagues quibble with our assertion that all of these registered voters are 'entitled to vote,' but they point to no evidence that any of the 85,000 voters will be unable to cast a ballot in an upcoming election.") (citations omitted)).
- **May 24, 2020–July 1, 2020**: People with past convictions, except those with murder or felony sex offense convictions, could register *and* vote during this period (while a trial court injunction was in place) if they only owed court costs or fees, only owed restitution or fines converted to a civil lien or civil judgment, had a public defender for their most recent felony conviction, or were genuinely unable to pay or unable to ascertain what they owe. footnote18_lzi6ycl 18 *Jones v. DeSantis*, 462 F. Supp. 3d 1196, 1250–52 (N.D. Fla. 2020).

A timeline with other important dates related to the implementation of Amendment 4 and S.B. 7066 is available here.

**The department of state failed to identify and provide notice to local supervisors of elections about ineligible voters whose voting rights have not been restored.**

Florida law is clear: the department of state is responsible for determining whether registered voters with past felony convictions are eligible to vote under Amendment 4 and S.B. 7066. footnote19_t9gah2l 19 Fla. Stat. §§ 98.075(5), 98.0751(3)(a). The department's responsibility in this regard is also reflected by its own rules. footnote20_qc2oq6i 20 Fla. Adm. Code §§ 1S-2.041(4)(c), 1S-2.039(11)(f)(3).

Beyond what's in Florida law and the department's rules, high-ranking state officials, with the exception of Gov. DeSantis, have acknowledged that the state is charged with flagging potentially ineligible voters whose rights have not been restored so they can be removed from the rolls. footnote21_id6fa6f 21 In May 2020, for example, Florida Director of Elections Maria Matthews testified under oath that the department of state checks new registrations against the Florida Department of Law Enforcement's criminal records database within 24 hours of receipt, and then it conducts a manual review to determine whether any potential matches are actually ineligible to vote. Trial Transcript Vol. 5, 1181:18–1186:10, *Jones*, 462 F. Supp. 3d 1196 (No. 4:19cv300-RH/MJF). Matthews further testified that Florida's statewide voter registration database is "cross-checked daily against FDLE records" to identify potentially ineligible voters whose voting rights have not been restored. *Id.* at 1181:25–1182:3. Also in 2020, then-Secretary of State Laurel Lee reportedly told the *Herald/Times* and *ProPublica* that "under state law it was her office's responsibility to screen felons wishing to vote and to inform county supervisors which individuals were ineligible." Mary Ellen Klas & Nicholas Nehamas, *'Money Talks': DeSantis Goes After Small-Scale Voter Crimes, Is Silent on FPL and Matrix*, Miami Herald (Sept. 9, 2022), https://www.miamiherald.com/news/politics-government/state-politics/article264832119.html. And on August 18, 2022 (*i.e.*, the same day Governor DeSantis announced the arrest of over a dozen people with past convictions), Peter Antonacci, the then-head of Florida's Office of Election Crimes and Security, likewise acknowledged the state's responsibility in a letter he sent to county supervisors of elections saying "[t]hrough no fault of [their] own," ineligible people with past convictions either registered or voted in their county during the 2020 election. Matt Dixon, *DeSantis Election Investigation Chief Told Local Officials They Face 'No Fault' for Felons Voting*, Politico (Aug. 29, 2022), https://www.politico.com/news/2022/08/29/despite-public-blame-desantis-election-investigation-chief-told-local-officials-they-face-no-fault-for-felon-voting-00054089.

Despite its clear obligation to do so, the department of state has utterly failed at this task. Between Amendment 4's effective date on January 8, 2019, and May 2020, the agency had identified as many as 85,000 pending voter registrations for people with past convictions in need of screening footnote22_27n4jgt 22 Trial Transcript Vol. 5, 1298:8–1301:22, *Jones*, 462 F. Supp. 3d 1196 (No. 4:19cv300-RH/MJF). — a process it said could take until 2026 at the earliest to complete because the department's caseworkers could only process an average of 57 registrations per day. footnote23_dhon69j 23 *Jones*, 462 F. Supp. at 1228.

Many of those charged registered before May 2020, meaning they were very likely part of those pending registrations. And in October 2020, when asked about the department's 85,000 backlog, then-Secretary of State Laurel Lee told reporters that people with past convictions who were on the rolls at the time were "eligible voters" until they were removed. footnote24_87xd1p5 24 Klas & Nehamas, *supra* note 21.

**The department of law enforcement also failed to satisfy its responsibility to identify potentially ineligible voters whose voting rights have not been restored.**

The department of state isn't the only state agency that failed to identify potentially ineligible voters with felony convictions so that they could be removed from the rolls before the 2020 election.

Under Florida law, the department of law enforcement (FDLE) is required to provide certain information to the department of state to help it identify potentially ineligible voters whose voting rights have not been restored. footnote25_1h51sbc 25 Fla. Stat. § 98.093(2)(d) (requiring the

department of law enforcement to "identify those persons who have been convicted of a felony who appear in the voter registration records supplied by the statewide voter registration system, in a time and manner that enables the department to meet its obligations under state and federal law"); *see also id.* § 98.093(2)(e) (requiring the commission on offender review to provide to the department of state, "at least bimonthly," certain data regarding clemency); *id.* § 98.093(2)(f) (requiring the department of corrections to "identify those persons who have been convicted of a felony and committed to its custody or placed on community supervision" and provide such information to the department of state "at a time and in a manner that enables the department to identify registered voters who are convicted felons and to meet its obligations under state and federal law"). However, the FDLE's own **investigative report** reflects that it stopped sending monthly reports to the department of state about potential matches of voters and individuals in the Florida Offender Registration and Tracking Services database from 2019 to January 2022.

In other words, the FDLE — the same agency that partnered with DeSantis's new election police force to arrest 19 people with past convictions (12 of whom allegedly registered and/or voted despite having a past felony sex offense) — failed for years, and through three statewide elections, to notify the department of state about potentially ineligible voters with such convictions.

**Florida also doesn't know who is eligible to vote under S.B. 7066's pay-to-vote requirement because it doesn't reliably or consistently track data on owed fees, fines, court costs, or restitution.**

Although S.B. 7066 requires those with past felony convictions to pay off certain legal financial obligations before they can regain their voting rights, footnote26_fwcdzud 26 Fla. Stat. § 98.0751(2)(a). a federal court found that it is "sometimes hard, sometimes impossible" to determine how much a person with a past felony conviction must pay in order to become eligible to register and to vote. footnote27_ioi1k2d 27 *Jones*, 462 F. Supp. 3d at 1241. (The department of state's *32-page* workflow for determining whether an individual with a felony conviction is eligible to vote is available here.)

That's because people with past convictions often don't know they owe money, and even if they do, they may not know that paying off such debt is a precondition to voting. As a federal court recognized in 2020, footnote28_1ufwj22 28 *Id.* at 1220–28. and as S.B. 7066's own sponsor in the house admitted before the law was enacted, footnote29_mm725ja 29 Eliza Sweren-Becker, *Florida Law Throws Voter Rights Restoration into Chaos*, Brennan Ctr. for Just. (July 11, 2019), https://www.brennancenter.org/our-work/analysis-opinion/florida-law-throws-voter-rights-restoration-chaos (noting Rep. James Grant, S.B. 7066's sponsor in the house, acknowledged on the house floor that "[t]here is no stakeholder in the state of Florida that can serve as a source of truth that somebody completed all terms of their sentence."). there are also no reliable, publicly available sources for determining whether a person with a past conviction owes money or whether their debts are disqualifying. footnote30_nctqm0r 30 *Jones*, 975 F.3d at 1110–11 (Pryor, J., dissenting) ("The legislature 'repeatedly discussed' the fact that 'it would take eleven databases, stored in different agencies, in addition to restitution information that often no one at all kept track of, to determine whether someone had fulfilled all of his financial obligations.'" (citations omitted)). And to the extent that data is available, sources from different state agencies often provide conflicting information as to the amount paid or owed. footnote31_fm0196l 31 Expert Report of Traci R. Burch, Ph.D., *Jones v. DeSantis*, 462 F. Supp. 3d 1196 (No. 4:19cv300-RH/MJF). Government officials may also follow different methods for determining which court debts must be paid to vote, meaning the price tag on voting might be different in one county than another. footnote32_wfexj7m 32 For example, the division of elections may apply the "first dollar policy" for purposes of determining whether an individual with outstanding legal financial obligations is eligible to vote. Under that policy, the state counts all payments made in relation to a financial obligation — including those for interest, debt collection agency fees, or other surcharges — toward the amount that was ordered in the original sentence, regardless of the actual purpose for which the payment was made or how it was actually applied. *Constitutional Amendment 4/Felon Voting Rights*, Fla. Division of Elections,

https://dos.myflorida.com/elections/for-voters/voter-registration/constitutional-amendment-4felon-voting-rights/ (last visited Jan. 5, 2023). In addition, if an individual's sentencing document does not delineate between court debts assessed for a felony conviction and those assessed for a misdemeanor conviction, an advisory opinion issued by the division indicates the state may err in favor of the individual and determine that none of the legal financial obligations need to be paid for purposes of registering and voting. Op. Fla. Division of Elections F-20–6 (2020), https://files.floridados.gov/media/703431/f-20–6-redacted-final-response-to-ao.pdf. It is unclear whether either of these approaches is uniformly applied by government officials in Florida. *Jones*, 975 F.3d at 1090 (Jordan, J., dissenting). (See this **guidance** as a starting point for researching the legal financial obligations records for and advocating on behalf of a person with a past conviction.)

**Florida's failure to implement Amendment 4 and S.B. 7066 may constitute entrapment, a violation of due process, or both.**

Entrapment can be a defense to criminal prosecution if a government actor induces or encourages a person to commit a crime they otherwise would not have committed. Due process, meanwhile, requires the government to follow certain rules before it can deprive an individual of their rights — in this case, the right to vote.

State and federal law suggest Florida's refusal to implement Amendment 4 and S.B. 7066 in a way that lets people with past convictions easily determine whether they are eligible to vote, followed by these arrests and prosecutions, might constitute entrapment, a violation of due process, or both. footnote33_3walzi5 33 For potentially relevant statutes and constitutional provisions, *see* Fla. Stat. § 777.201; Fla. Const. art. 1, § 9; *id.* art. 1, § 17. For potentially relevant case law related to entrapment, *see Munoz v. State*, 629 So. 2d 90, 91–100 (Fla. 1993); *State v. Williams*, 623 So.2d 462, 464–65 (Fla. 1993); *Herrera v. State*, 594 So.2d 275, 277–78 (Fla. 1992); *State v. Glosson*, 462 So.2d 1082, 1084 (Fla. 1985); *Bist v. State*, 35 So.3d 936, 939–40 (Fla. 5th DCA 2010); *Davis v. State*, 937 So.2d 300, 302–03 (Fla. 4th DCA 2006); *Soohoo v. State*, 737 So.2d 1108, 1109–11 (Fla. 4th DCA 1999); *State v. Finno*, 643 So. 2d 1166, 1169 (Fla. 4th DCA 1994); *State v. Ramos*, 632 So.2d 1078, 1079 (Fla. 3d DCA 1994). For potentially relevant case law related to due process or compliance with laws that are impossible to comply with, *see Rehaif v. United States*, 139 S. Ct. 2191 (2019); *Jones v. Governor of Fla.,* 975 F.3d 1016, 1046–49 (11th Cir. 2020); *Rigterink v. State*, 66 So. 3d 866, 888 (Fla. 2011); *Leonard v. Sweat*, 152 So. 857, 859–60 (Fla. 1934) (Davis, C.J., concurring); *Ivaran Lines, Inc. v. Waicman*, 461 So.2d 123, 125 (Fla. 3d DCA 1984).

**Florida may be relying on an unreliable website to determine whether residents with out-of-state felony convictions are eligible to vote in Florida.**

Whether a Florida resident with an out-of-state felony conviction can vote in Florida depends on whether they would be allowed to vote in the state where they were convicted. footnote34_ina6sbr 34 *Constitutional Amendment 4/Felon Voting Rights*, Fla. Division of Elections, https://dos.myflorida.com/elections/for-voters/voter-registration/constitutional-amendment-4felon-voting-rights/ (last visited Jan. 5, 2023) ("A felony conviction in another state makes a person ineligible to vote in Florida only if the conviction would make the person ineligible to vote in the state where the person was convicted."). However, **Florida's own documents** reveal that the department of state is relying on ProCon.org to determine other states' restoration of rights laws, footnote35_yp7f6du 35 See also Trial Transcript Vol. 6, 1359:25–1374:8, Jones, 462 F. Supp. 3d 1196 (No. 4:19cv300-RH/MJF). even though a federal court deemed the website "unreliable" for such a purpose in May 2020. footnote36_reu85n0 36 *Jones*, 462 F. Supp. at 1228 n.125.

As of May 12, 2023, ProCon.org's website continues to contain incorrect or incomplete information for at least eight states, including Florida itself. footnote37_lhf04az 37 ProCon.org misstates Arizona's pay-to-vote requirement for individuals convicted of only one felony. Ariz. Rev. Stat. § 13–907(A)-(B). It says nothing about Alabama's, Arkansas', Georgia's, or Tennessee's pay-to-vote requirements. Ala.

Code § 15–22–36.1(a)(3); Ark. Const. amend. 51, § 11(d)(2)(A)-(B); Ga. Op. Att'y Gen. No. 84–33, 1984 WL 59904 (May 24, 1984); Tenn. Code Ann. § 40–29–202(b)(1)-(2), (c). ProCon.org also misstates Florida's pay-to-vote requirement, Fla. Stat. § 98.0751(2)(a)(5), and it does not mention then-Gov. Charlie Crist's 2007 revised Rules of Executive Clemency that restored voting rights to over 100,000 people. Damien Cave & Christine Jordan Sexton, *New Florida Rules Return More Than 115,000 Ex-Offenders to Voting Rolls*, New York Times (June 18, 2008), https://www.nytimes.com/2008/06/18/us/18florida.html. ProCon.org also does not say that Delaware bars those convicted of election offenses from voting for 10 years following their sentences, Del. Const. art. V, § 7, and its list of disenfranchising crimes for Mississippi does not include vote fraud. Miss. Code §§ 23–15–11, 19, 151.

**The Office of Statewide Prosecution does not have the authority to prosecute the 19 Floridians with past felony convictions arrested last August.**

DeSantis tasked the Office of Statewide Prosecution with prosecuting the 19 people with past convictions arrested last August as part of his election police force's "opening salvo" because "people weren't getting prosecuted" by local prosecutors. footnote38_4yjsc5u 38 Lori Rozsa & Tim Craig, *DeSantis's New Election Crimes Unit Makes Its First Arrests*, Washington Post (Aug. 18, 2022), https://www.washingtonpost.com/politics/2022/08/18/desantis-florida-election-arrests/ (quoting DeSantis as saying, in reference to the Office of Election Crimes and Security, at his August 18, 2022, press conference: "Before I proposed this, this was my idea, because people weren't getting prosecuted. There were just examples of stuff seeming to fall through the cracks."); Michael Wines, *DeSantis Hails Voter Fraud Crackdown, but Start Is Slow*, New York Times (Aug. 18, 2022), https://www.nytimes.com/2022/08/18/us/desantis-election-voter-fraud.html (quoting DeSantis as saying "[n]ow we have the ability with the attorney general and statewide prosecutors to bring these cases on behalf of the state," at his August 18, 2022, conference). However, the office can only prosecute certain crimes — namely, those that occurred in or affected at least two judicial circuits. footnote39_crldqfp 39 Fla. Const. art. IV, § 4(b); Fla. Stat. § 16.56. (Florida has 20 judicial circuits, some of which comprise multiple counties.)

Of course, voters only register and vote in one place, so none of these alleged crimes occurred in or affected two or more judicial circuits. Ironically, the Office of Statewide Prosecution has argued that it has authority because state authorities in the state capital greenlit the registrations of those charged and allowed them to vote. footnote40_kih7sf4 40 State's Motion to Strike and Legal Response to Defendant's Motion to Dismiss at 6, *State v. Wood*, No. 13–2022-CF-015009–0001-XX (11th Fla. Cir. Ct. Sept. 29, 2022) ("[B]oth of the crimes may have begun in the Eleventh Judicial Circuit, but they could not have been completed without the involvement of governmental entities within the Second Judicial Circuit."). But judges in Miami-Dade, Broward, and Orange counties ruled the office does not have the authority to prosecute and dismissed four of the 19 cases. To salvage the prosecutions, the legislature passed, and DeSantis signed on February 15, S.B. 4-B, which purports to expand the Office of Statewide Prosecution's authority to prosecute alleged voter fraud identified by Florida's election police. Since then, judges in Broward and Palm Beach counties have dismissed two more of the office's cases. footnote41_lat1amf 41 As of May 12, 2023, 13 of the 19 defendants charged by the Office of Statewide Prosecution (OSP) have filed motions challenging the office's authority to prosecute. The cases against six of those defendants have been dismissed on the grounds that the OSP lacks authority. *See* Order on Motion to Dismiss, *State v. Wood*, No. 13–2022-CF-015009–0001-XX (11th Fla. Cir. Ct. Oct. 21, 2022); Order on Motion to Dismiss, *State v. Miller*, No. 13–2022-CF-015012–0001-XX (11th Fla. Cir. Ct. Dec. 12, 2022); Order Granting Defendant's Motion to Dismiss Due to Lack of Subject Matter Jurisdiction, *State v. Hubbard*, No. 22008077CF10A (17th Fla. Cir. Ct. Dec. 23, 2022); Order Granting Motion to Dismiss, *State v. Washington*, No. 2022-CF-009611-A-O (9th Fla. Cir. Ct. Feb. 13, 2023); Disposition Order Granting Defendant's Motion to Dismiss, *State v. Suggs*, No. 22008080CF10A (17th Fla. Cir. Ct. March 31, 2023); and Order Granting Defendant's Amended Motion to Dismiss, *State v. Grant*, No. 502022CF006572AXXXMB (15th Fla. Cir. Ct. May 4, 2023). A judge in Hillsborough County denied the seventh defendant's motion. *State v. Hart,* No. 22-

CF-011041-A (13th Fla. Cir. Ct. Jan.31, 2023). The OSP dropped charges against the eighth defendant because of "information received" from the Hillsborough County Supervisor of Elections and because the defendant had been sentenced to prison in a separate, unrelated case, making his motion moot. *State v. Patterson*, No. 22-CF-011036-A (13th Fla. Cir. Ct.). The remaining five defendants' motions are pending. *State v. Singleton*, No. 22008118CF10A (17th Fla. Cir. Ct.); *State v. Simpson*, No. 50–2022-CF-006574-AXXX-MB (15th Fla. Cir. Ct.); *State v. Dana*, No. 22008078CF10A (17th Fla. Cir. Ct.); *State v. Stribling*, No. 2022-CF-009608-A-O (9th Fla. Cir. Ct.); and *State v. Foster*, No. 2022-CF-009607-A-O (9th Fla. Cir. Ct.).

*This resource was created in cooperation with the Legal Defense Fund, ACLU of Florida, and ACLU Voting Rights Project. It should not be relied upon as legal advice.*

# Endnotes

- footnote1_9ieyh9h

  ## 1
  *See, e.g.*, Opposition to Application to Vacate the En Banc 11th Circuit's Stay at 52, *Raysor v. DeSantis*, 140 S. Ct. 2600 (2020) (No. 19A1071); En Banc Opening Brief of Defendants-Appellants at 74, *Jones v. Governor of Fla.*, 975 F.3d 1016 (11th Cir. 2020) (No. 20–12003); *id.* at 75; En Banc Reply Brief of Defendants-Appellants at 68, *Jones*, 975 F.3d 1016 (No. 20–12003).

- footnote2_zy38kd4

  ## 2
  *Jones*, 975 F.3d at 1047 ("The challenged laws are not vague. Felons and law enforcement can discern from the relevant statutes exactly what conduct is prohibited: a felon may not vote or register to vote if he knows that he has failed to complete all terms of his criminal sentence. This clear standard, which includes a scienter requirement, provides fair notice to prospective voters and 'limit[s] prosecutorial discretion.'" (alteration in original) (citations omitted)); *id.* at 1047–48 (no person with a past conviction "who honestly believes he has completed the terms of his sentence commits a crime by registering and voting").

- footnote3_sxncmek

  ## 3
  As of May 12, 2023, at least ten people in Alachua County have been charged by the state attorney's office for the 8th Judicial Circuit for allegedly registering and/or voting while owing legal financial obligations. Bianca Fortis, *A Government Official Helped Them Register. Now They've Been Charged with Voter Fraud*, ProPublica (July 21, 2022),https://www.propublica.org/article/florida-felonies-voter-fraud. An additional three people in Alachua County have been charged by the state attorney's office for the 8th Judicial Circuit for allegedly voting while ineligible because of a past felony sex offense. Jennifer Cabrera, *Hawthorne Man Arrested for Fraudulent Voting by a Sex Offender*, Alachua Chronicle (March 24, 2023), https://alachuachronicle.com/hawthorne-man-arrested-for-fraudulent-voting-by-a-sexual-offender/. At least four people in Seminole County have been charged by the state attorney's office for the 18th Judicial Circuit for allegedly voting while ineligible because of a past felony sex offense. *4 Sex Offenders Charged with Illegal Voting in Central Florida as More Being Investigated*, WESH Orlando (July 25, 2022), https://www.msn.com/en-us/news/crime/4-sex-offenders-charged-with-

illegal-voting-in-central-florida-as-more-being-investigated/ar-AAZXDnS. At least one person in Okaloosa County has been charged by the state attorney's office for the 1st Judicial Circuit for allegedly voting while ineligible because she was on probation. Press Release, Fla. Department of Law Enforcement, Two arrested for election crime violations following FDLE investigation (March 15, 2013), https://www.fdle.state.fl.us/News/2023/March/Two-arrested-for-election-crimes-violations-follow. At least twenty-two people across six counties (Broward, Brevard, Miami-Dade, Hillsborough, Orange, and Palm Beach) have been charged by the Office of Statewide Prosecution for allegedly registering and/or voting while ineligible because of a past murder or felony sex offense. Press Release, Fla. Department of Law Enforcement, In case you missed it: FDLE arrests convicted murders, sex offenders for voting illegally (Aug. 18, 2022), http://www.fdle.state.fl.us/News/2022/August/In-case-you-missed-it-FDLE-arrests-convicted-murder. Press Release, Fla. Department of Law Enforcement, FDLE arrests two on election fraud charges (May 9, 2023), https://www.fdle.state.fl.us/News/2023/FDLE-arrests-two-on-election-fraud-charges; Press Release, Fla. Department of Law Enforcement, FDLE arrests Brevard sexual predator for election fraud (May 10, 2023), https://www.fdle.state.fl.us/News/2023/May/FDLE-arrests-Brevard-sexual-predator-for-election.

- footnote4_xowfdof

## 4

Press Release, Ron DeSantis, Governor of Florida, Governor DeSantis Announces the Arrest of 20 Elections Criminals (Aug. 18, 2022), https://www.flgov.com/2022/08/18/governor-desantis-announces-the-arrest-of-20-elections-criminals/. As of January 5, 2023, the Brennan Center has only been able to identify 19 of the 20 people with past convictions arrested in August 2022.

- footnote5_aqra3fa

## 5

Fla. Stat. §§ 104.011(1), 104.15.

- footnote6_0lmr50o

## 6

*Corrales v. State*, 84 So.3d 406, 408 (Fla. 1st DCA 2012) ("The willfulness requirement assures that 'no one will be convicted of a crime because of a mistake or because he does something innocently, not realizing what he was doing.'" (citing *United States v. Hall*, 346 F.2d 875, 879 (2d Cir. 1965)).

- footnote7_qar90tz

## 7

*See supra* note 1.

- footnote8_zgwh84j

## 8

*See supra* note 2.

- footnote9_o0plwii

## 9

For example, the 10 people charged in Alachua County for allegedly registering and/or voting while ineligible registered to vote during voter registration drives organized by the county supervisor of elections office at the local jail. Fortis, *supra* note 3. One of those charged in Orange County was told by prison officials he could vote upon his release from incarceration. Matt Dixon, *Defendants Targeted in DeSantis' Voter Fraud Crackdown Were Told They Could Vote*, Politico (Aug. 26, 2022), https://www.politico.com/news/2022/08/26/desantis-voter-fraud-defendants-florida-00053788 [hereinafter Dixon, *Defendants Targeted in DeSantis' Voter Fraud Crackdown*]. Another person in Orange County facing prosecution was told he was eligible to vote by a sheriff's deputy who was tasked with monitoring him, while an individual in Hillsborough County also facing prosecution was told he could vote after he called his local supervisor of elections office before an election to confirm he was eligible. Sam Levine, *Floridians Charged Over Voting Believed They Were Eligible, Documents Show*, The Guardian (Aug. 25, 2022), https://www.theguardian.com/us-news/2022/aug/25/florida-voting-fraud-charges-eligibility [hereinafter Levine, *Floridians Charged Over Voting*].

- footnote10_d2xiff7

## 10

Dixon, *Defendants Targeted in DeSantis' Voter Fraud Crackdown*, *supra* note 9; Levine, *Floridians Charged Over Voting*, supra note 9; Tim Craig & Lori Rozsa, Florida Let Them Vote. *Then DeSantis's Election Police Arrested Them.*, Washington Post (Sept. 4, 2022), https://www.washingtonpost.com/nation/2022/09/04/desantis-election-police-voter-arrests/.

- footnote11_n3f7u72

## 11

Fla. Stat. § 97.071.

- footnote12_brhfugr

## 12

Form DS-DE 39, *Florida Voter Registration Application*, Fla. Dep't State (Oct. 2013), *available at* https://files.floridados.gov/media/704789/dsde39-english-pre-7066–20220429.pdf (requiring applicants to check a box stating "I affirm that I am not a convicted felon, or if I am, my right to vote has been restored").

- footnote13_hm2lh84

## 13

For example, at least five of those charged in Hillsborough County were not removed from the rolls until this year, though they registered to vote in 2019 or 2020. Mary Ellen Klas et al, *Cases Against Arrested Voters on Shaky Legal Ground. Florida Issued Them Voter IDs*, Miami Herald (Aug. 31, 2022), https://www.miamiherald.com/news/politics-government/state-politics/article265138721.html. And one of the individuals charged in Orange County registered to vote in 2019 but was never notified by his local supervisor of elections office that he was ineligible. Dixon, *Defendants Targeted in DeSantis' Voter Fraud Crackdown, supra* note 9.

- footnote14_lxy560b

## 14

Memorandum from Jonathan Olson, Div. Supervisor, Office of State Attorney, Fifth Judicial Circuit (June 13, 2022).
- footnote15_85t3ob6

### 15
*Id.*
- footnote16_bdpzy46

### 16
Fla. Stat. § 104.011(3).
- footnote17_s29yxm6

### 17
*Jones*, 975 F.3d at 1026 ("Florida has yet to complete its screening of any of the registrations. Until it does, it will not have credible and reliable information supporting anyone's removal from the voter rolls, and all 85,000 felons will be entitled to vote." (citations omitted)); *id*. at 1035–36 ("The dissenters' contention that state officials' implementation of Amendment 4 has prevented any felons from benefitting from the amendment is false. Eighty-five thousand felons are now registered voters, and each one will remain so unless Florida meets its self-imposed burden of gathering the information necessary to prove his ineligibility. Our dissenting colleagues quibble with our assertion that all of these registered voters are 'entitled to vote,' but they point to no evidence that any of the 85,000 voters will be unable to cast a ballot in an upcoming election.") (citations omitted)).
- footnote18_lzi6ycl

### 18
*Jones v. DeSantis*, 462 F. Supp. 3d 1196, 1250–52 (N.D. Fla. 2020).
- footnote19_t9gah2l

### 19
Fla. Stat. §§ 98.075(5), 98.0751(3)(a).
- footnote20_qc2oq6i

### 20
Fla. Adm. Code §§ 1S-2.041(4)(c), 1S-2.039(11)(f)(3).
- footnote21_id6fa6f

### 21
In May 2020, for example, Florida Director of Elections Maria Matthews testified under oath that the department of state checks new registrations against the Florida Department of Law Enforcement's criminal records database within 24 hours of receipt, and then it conducts a manual review to determine whether any potential matches are actually ineligible to vote. Trial Transcript Vol. 5, 1181:18–1186:10, *Jones*, 462 F. Supp. 3d 1196 (No. 4:19cv300-RH/MJF). Matthews further testified that Florida's statewide voter registration database is "cross-checked daily against FDLE records" to identify potentially

- ineligible voters whose voting rights have not been restored. *Id.* at 1181:25–1182:3. Also in 2020, then-Secretary of State Laurel Lee reportedly told the *Herald/Times* and *ProPublica* that "under state law it was her office's responsibility to screen felons wishing to vote and to inform county supervisors which individuals were ineligible." Mary Ellen Klas & Nicholas Nehamas, *'Money Talks': DeSantis Goes After Small-Scale Voter Crimes, Is Silent on FPL and Matrix*, Miami Herald (Sept. 9, 2022), https://www.miamiherald.com/news/politics-government/state-politics/article264832119.html. And on August 18, 2022 (*i.e.*, the same day Governor DeSantis announced the arrest of over a dozen people with past convictions), Peter Antonacci, the then-head of Florida's Office of Election Crimes and Security, likewise acknowledged the state's responsibility in a letter he sent to county supervisors of elections saying "[t]hrough no fault of [their] own," ineligible people with past convictions either registered or voted in their county during the 2020 election. Matt Dixon, *DeSantis Election Investigation Chief Told Local Officials They Face 'No Fault' for Felons Voting*, Politico (Aug. 29, 2022), https://www.politico.com/news/2022/08/29/despite-public-blame-desantis-election-investigation-chief-told-local-officials-they-face-no-fault-for-felon-voting-00054089.
- footnote22_27n4jgt

## 22

Trial Transcript Vol. 5, 1298:8–1301:22, *Jones*, 462 F. Supp. 3d 1196 (No. 4:19cv300-RH/MJF).

- footnote23_dhon69j

## 23

*Jones*, 462 F. Supp. at 1228.

- footnote24_87xd1p5

## 24

Klas & Nehamas, *supra* note 21.

- footnote25_1h51sbc

## 25

Fla. Stat. § 98.093(2)(d) (requiring the department of law enforcement to "identify those persons who have been convicted of a felony who appear in the voter registration records supplied by the statewide voter registration system, in a time and manner that enables the department to meet its obligations under state and federal law"); *see also id.* § 98.093(2)(e) (requiring the commission on offender review to provide to the department of state, "at least bimonthly," certain data regarding clemency); *id.* § 98.093(2)(f) (requiring the department of corrections to "identify those persons who have been convicted of a felony and committed to its custody or placed on community supervision" and provide such information to the department of state "at a time and in a manner that enables the department to identify registered voters who are convicted felons and to meet its obligations under state and federal law").

- footnote26_fwcdzud

## 26

Fla. Stat. § 98.0751(2)(a).

- footnote27_ioi1k2d

## 27

*Jones*, 462 F. Supp. 3d at 1241.

- footnote28_1ufwj22

## 28

*Id.* at 1220–28.

- footnote29_mm725ja

## 29

Eliza Sweren-Becker, *Florida Law Throws Voter Rights Restoration into Chaos*, Brennan Ctr. for Just. (July 11, 2019), https://www.brennancenter.org/our-work/analysis-opinion/florida-law-throws-voter-rights-restoration-chaos (noting Rep. James Grant, S.B. 7066's sponsor in the house, acknowledged on the house floor that "[t]here is no stakeholder in the state of Florida that can serve as a source of truth that somebody completed all terms of their sentence.").

- footnote30_nctqm0r

## 30

*Jones*, 975 F.3d at 1110–11 (Pryor, J., dissenting) ("The legislature 'repeatedly discussed' the fact that 'it would take eleven databases, stored in different agencies, in addition to restitution information that often no one at all kept track of, to determine whether someone had fulfilled all of his financial obligations.'" (citations omitted)).

- footnote31_fm0196l

## 31

Expert Report of Traci R. Burch, Ph.D., *Jones v. DeSantis*, 462 F. Supp. 3d 1196 (No. 4:19cv300-RH/MJF).

- footnote32_wfexj7m

## 32

For example, the division of elections may apply the "first dollar policy" for purposes of determining whether an individual with outstanding legal financial obligations is eligible to vote. Under that policy, the state counts all payments made in relation to a financial obligation — including those for interest, debt collection agency fees, or other surcharges — toward the amount that was ordered in the original sentence, regardless of the actual purpose for which the payment was made or how it was actually applied. *Constitutional Amendment 4/Felon Voting Rights*, Fla. Division of Elections, https://dos.myflorida.com/elections/for-voters/voter-registration/constitutional-amendment-4felon-voting-rights/ (last visited Jan. 5, 2023). In addition, if an individual's sentencing document does not delineate between court debts assessed for a felony conviction and those assessed for a misdemeanor conviction, an advisory opinion issued by the division indicates the state may err in favor of the individual and determine that none of the legal financial obligations need to be paid for purposes of registering and voting. Op. Fla. Division of Elections F-20–6 (2020), https://files.floridados.gov/media/703431/f-20–6-redacted-final-

response-to-ao.pdf. It is unclear whether either of these approaches is uniformly applied by government officials in Florida. *Jones*, 975 F.3d at 1090 (Jordan, J., dissenting).

- footnote33_3walzi5

## 33

For potentially relevant statutes and constitutional provisions, *see* Fla. Stat. § 777.201; Fla. Const. art. 1, § 9; *id.* art. 1, § 17. For potentially relevant case law related to entrapment, *see Munoz v. State*, 629 So. 2d 90, 91–100 (Fla. 1993); *State v. Williams*, 623 So.2d 462, 464–65 (Fla. 1993); *Herrera v. State*, 594 So.2d 275, 277–78 (Fla. 1992); *State v. Glosson*, 462 So.2d 1082, 1084 (Fla. 1985); *Bist v. State*, 35 So.3d 936, 939–40 (Fla. 5th DCA 2010); *Davis v. State*, 937 So.2d 300, 302–03 (Fla. 4th DCA 2006); *Soohoo v. State*, 737 So.2d 1108, 1109–11 (Fla. 4th DCA 1999); *State v. Finno*, 643 So. 2d 1166, 1169 (Fla. 4th DCA 1994); *State v. Ramos*, 632 So.2d 1078, 1079 (Fla. 3d DCA 1994). For potentially relevant case law related to due process or compliance with laws that are impossible to comply with, *see Rehaif v. United States*, 139 S. Ct. 2191 (2019); *Jones v. Governor of Fla.,* 975 F.3d 1016, 1046–49 (11th Cir. 2020); *Rigterink v. State*, 66 So. 3d 866, 888 (Fla. 2011); *Leonard v. Sweat*, 152 So. 857, 859–60 (Fla. 1934) (Davis, C.J., concurring); *Ivaran Lines, Inc. v. Waicman*, 461 So.2d 123, 125 (Fla. 3d DCA 1984).

- footnote34_ina6sbr

## 34

*Constitutional Amendment 4/Felon Voting Rights*, Fla. Division of Elections, https://dos.myflorida.com/elections/for-voters/voter-registration/constitutional-amendment-4felon-voting-rights/ (last visited Jan. 5, 2023) ("A felony conviction in another state makes a person ineligible to vote in Florida only if the conviction would make the person ineligible to vote in the state where the person was convicted.").

- footnote35_yp7f6du

## 35

See also Trial Transcript Vol. 6, 1359:25–1374:8, Jones, 462 F. Supp. 3d 1196 (No. 4:19cv300-RH/MJF).

- footnote36_reu85n0

## 36

*Jones*, 462 F. Supp. at 1228 n.125.

- footnote37_lhf04az

## 37

ProCon.org misstates Arizona's pay-to-vote requirement for individuals convicted of only one felony. Ariz. Rev. Stat. § 13–907(A)-(B). It says nothing about Alabama's, Arkansas', Georgia's, or Tennessee's pay-to-vote requirements. Ala. Code § 15–22–36.1(a)(3); Ark. Const. amend. 51, § 11(d)(2)(A)-(B); Ga. Op. Att'y Gen. No. 84–33, 1984 WL 59904 (May 24, 1984); Tenn. Code Ann. § 40–29–202(b)(1)-(2), (c). ProCon.org also misstates Florida's pay-to-vote requirement, Fla. Stat. § 98.0751(2)(a)(5), and it does not mention then-Gov. Charlie Crist's 2007 revised Rules of Executive Clemency that restored voting rights to over 100,000 people. Damien Cave & Christine Jordan Sexton, *New Florida Rules Return More Than 115,000 Ex-Offenders to Voting Rolls*, New York Times (June 18, 2008), https://www.nytimes.com/2008/06/18/us/18florida.html. ProCon.org also does not say that

- Delaware bars those convicted of election offenses from voting for 10 years following their sentences, Del. Const. art. V, § 7, and its list of disenfranchising crimes for Mississippi does not include vote fraud. Miss. Code §§ 23–15–11, 19, 151.
- footnote38_4yjsc5u

## 38

Lori Rozsa & Tim Craig, *DeSantis's New Election Crimes Unit Makes Its First Arrests*, Washington Post (Aug. 18, 2022), https://www.washingtonpost.com/politics/2022/08/18/desantis-florida-election-arrests/ (quoting DeSantis as saying, in reference to the Office of Election Crimes and Security, at his August 18, 2022, press conference: "Before I proposed this, this was my idea, because people weren't getting prosecuted. There were just examples of stuff seeming to fall through the cracks."); Michael Wines, *DeSantis Hails Voter Fraud Crackdown, but Start Is Slow*, New York Times (Aug. 18, 2022), https://www.nytimes.com/2022/08/18/us/desantis-election-voter-fraud.html (quoting DeSantis as saying "[n]ow we have the ability with the attorney general and statewide prosecutors to bring these cases on behalf of the state," at his August 18, 2022, conference).

- footnote39_crldqfp

## 39

Fla. Const. art. IV, § 4(b); Fla. Stat. § 16.56.

- footnote40_kih7sf4

## 40

*State's Motion to Strike and Legal Response to Defendant's Motion to Dismiss* at 6, *State v. Wood*, No. 13–2022-CF-015009–0001-XX (11th Fla. Cir. Ct. Sept. 29, 2022) ("[B]oth of the crimes may have begun in the Eleventh Judicial Circuit, but they could not have been completed without the involvement of governmental entities within the Second Judicial Circuit.").

- footnote41_lat1amf

## 41

As of May 12, 2023, 13 of the 19 defendants charged by the Office of Statewide Prosecution (OSP) have filed motions challenging the office's authority to prosecute. The cases against six of those defendants have been dismissed on the grounds that the OSP lacks authority. *See* Order on Motion to Dismiss, *State v. Wood*, No. 13–2022-CF-015009–0001-XX (11th Fla. Cir. Ct. Oct. 21, 2022); Order on Motion to Dismiss, *State v. Miller*, No. 13–2022-CF-015012–0001-XX (11th Fla. Cir. Ct. Dec. 12, 2022); Order Granting Defendant's Motion to Dismiss Due to Lack of Subject Matter Jurisdiction, *State v. Hubbard*, No. 22008077CF10A (17th Fla. Cir. Ct. Dec. 23, 2022); Order Granting Motion to Dismiss, *State v. Washington*, No. 2022-CF-009611-A-O (9th Fla. Cir. Ct. Feb. 13, 2023); Disposition Order Granting Defendant's Motion to Dismiss, *State v. Suggs*, No. 22008080CF10A (17th Fla. Cir. Ct. March 31, 2023); and Order Granting Defendant's Amended Motion to Dismiss, *State v. Grant*, No. 502022CF006572AXXXMB (15th Fla. Cir. Ct. May 4, 2023). A judge in Hillsborough County denied the seventh defendant's motion. *State v. Hart,* No. 22-CF-011041-A (13th Fla. Cir. Ct. Jan.31, 2023). The OSP dropped charges against the eighth defendant because of "information received" from the Hillsborough County Supervisor of Elections and because the defendant had been sentenced to prison in a separate, unrelated case, making his motion moot. *State v. Patterson*, No. 22-

CF-011036-A (13th Fla. Cir. Ct.). The remaining five defendants' motions are pending. *State v. Singleton*, No. 22008118CF10A (17th Fla. Cir. Ct.); *State v. Simpson*, No. 50–2022-CF-006574-AXXX-MB (15th Fla. Cir. Ct.); *State v. Dana*, No. 22008078CF10A (17th Fla. Cir. Ct.); *State v. Stribling*, No. 2022-CF-009608-A-O (9th Fla. Cir. Ct.); and *State v. Foster*, No. 2022-CF-009607-A-O (9th Fla. Cir. Ct.).