# EXHIBIT 22

# delaware online

CRIME

# Will Delaware end cash bail?

**Jessica Masulli Reyes** The News Journal
Published 4:47 p.m. ET Nov. 6, 2015 | Updated 3:07 a.m. ET Nov. 8, 2015

About 60 men and women, wearing the clothes they were arrested in hours earlier and shackled at their ankles and wrists, shuffled one at a time up to the judge who would decide whether they should be released from the Washington, D.C., jail.

A new case was heard every three minutes. And cash bail had nothing to do with defendants' ticket to freedom.

Those charged with nonviolent crimes were set free on the promise they would appear at the next court hearing – including an accused drug dealer, a cocaine user, a thief and a string of others.

Those considered the most dangerous – such as a man arrested for not having a license for the .42-caliber pistol in his car – were sent back to jail to await trial.

This is the changing face of American jurisprudence, where releasing a defendant from jail is not based on how much money he or she can pay. The movement stands on the notion that cash bail punishes the poor, who end up spending more time behind bars than those with the means to pay for their release.

Washington, D.C., eliminated bail two decades ago, and other jurisdictions may soon follow – either by choice or as a result of federal lawsuits challenging the constitutionality of incarcerating poor defendants who cannot afford bail.

The bail system in Delaware is now under scrutiny as Delaware's Supreme Court Chief Justice Leo E. Strine Jr. shines a light on the disproportionate number of African-Americans incarcerated and Gov. Jack Markell calls for criminal justice reform while examining ways to reduce prison overcrowding.

"It's not working when a single mom gets stuck in detention because she can't come up with a hundred bucks and has little to no family support, but a dangerous drug dealer can get his minions to bail him out," Markell said during a speech on criminal justice reform Thursday

in New Orleans. "Our bail process needs to change, and it can be done, but only if we're cognizant of the full extent to which everyone involved in our criminal justice system must adjust their thinking."

At a hearing in Wilmington on Friday for the Access to Justice Commission's Committee on Fairness, experts in criminal law will push for Delaware to adopt Washington, D.C.'s strategy.

About 88 percent of the District of Columbia's released defendants return for their trials – partially because of an elaborate pretrial services system where defendants are required to frequently check in, undergo drug tests and, in some cases, wear GPS ankle monitors.

Court officials in Delaware could not provide statistics on the number of defendants who show up for court cases after being released. But commercial bail bondsman say eliminating bail here would be disastrous. A defendant who makes bail is able to quickly get back to his or her daily routine, bail bondsmen say. And if a defendant doesn't show up for court, the bail bondsman has a financial incentive to find the defendant without cost to taxpayers, they say.

"We have check-ins; we make sure our clients are working," said Wilmington bail bondsman Robert Bovell. "That is something the court wouldn't have the manpower or the time to do. You'd have to start to worry about who is really watching over these individuals."

Supporters of bail reform say only the most dangerous defendants should be held for trial. Delaware has a unified prison system, which means inmates who cannot post bail are housed in the same prisons as those who are convicted.

Markell and Department of Corrections Commissioner Robert Coupe say releasing low-risk defendants into community supervision is a way to ease prison overcrowding, noting that last year Wilmington's Howard R. Young Correctional Institution had to house inmates in its gymnasium.

The number of people being held in Delaware prisons while awaiting trial has skyrocketed since the early 1980s. There were 300 held in 1983 – and 1,339 held in 2014.

Currently, about 23 percent of the state's prisoners are held while cases are pending. The number jumps to 40 percent at the Baylor Women's Correctional Institution.

Bail reform efforts started in 2011 have contributed to a 3 percent reduction in the total prison population since last year, Markell said. Efforts include determining which defendants in custody on less than $10,000 bail could be safely released.

"I believe our judges and our prosecutors recognize the big-picture criminal justice challenges we face and the need for change," Markell said. "But it will take time to shift the long-standing practices of defaulting to setting secured or cash bail in too many cases."

## Lawsuits prompt reform

The American bail system is firmly rooted in court systems nationwide, but a reform movement is advocating for an ambitious overhaul. Four states have already gotten rid of the for-profit bail industry, including Kentucky where judges are now limited to the amount of bail they can set for crimes that would likely result only in a probationary sentence. Bail is administered through the court system there.

New Jersey voters last year approved a constitutional amendment that allows judges to deny release to some defendants considered dangerous or a flight risk and makes release the default for all others.

In October, New York City Mayor Bill de Blasio launched "Bail Lab," a program aimed at testing alternatives to bail and pushing for reform.

In Delaware, legislation is pending that could add to the list of serious felony crimes for which a defendant can be denied bail – a move advocates say can, if done correctly, ensures high-risk defendants are not getting out on low bails. Other legislative proposals could be coming next year.

But, some civil rights lawyers are not leaving bail reform to chance.

Clanton, Alabama, was hit in January with a federal lawsuit challenging money bail as a violation of the Equal Protection Clause of the 14th Amendment. The case drew widespread attention when the U.S. Department of Justice filed a brief saying holding people solely because they are poor is unconstitutional.

Rather than fight, the city agreed to release most misdemeanor defendants without them posting bail.

Alec Karakatsanis – a Harvard Law School graduate and co-founder of Equal Justice Under Law – has since filed eight more class-action suits that have led to similar changes in Missouri, Mississippi and Louisiana.

"We are prepared, of course, to go around the country and sue city after city, county after county, but I prefer not to do that, but these systems are tremendously powerful," Karakatsanis said during a recent speaking engagement in Delaware.

Similar cases challenging the bail system could easily go to the U.S. Supreme Court, said Gloria J. Browne-Marshall, an associate professor at John Jay College of Criminal Justice in New York City.

"There hasn't been a case regarding bail, and what excessive bail means, for decades," she said. "This is a prime time for a case to be brought to the Supreme Court."

## Taken out of circulation

Data from 2010 shows that about 40 percent of those held in Delaware prisons awaiting trial are there for nonviolent felonies, and about 12 percent have a main charge that is a drug offense.

Advocates for bail reform say many of these individuals could be released, and if necessary, monitored by the state's pretrial services to ensure they return to court. For defendants being held on bail, sometimes the fastest way to get out of prison is often to plead guilty, which puts them at a disadvantage in their cases, advocates say.

"There are real problems with depending as heavily as most states do on money bail," said Stephanos Bibas, a professor of law and criminology at Penn Law, who will testify at the Access to Justice hearing.

Jonathan Wilson, 44, has seen firsthand – both in his own life and in the lives of men he counsels – the struggles of not being able to afford bail.

He is now a doctoral student at Wilmington University and founder of the Fathership Foundation. He has been arrested over a dozen times, he said, on charges such as robbery and drug offenses. One time more than a decade ago he was arrested in Philadelphia.

"I had a bail that was $1,500," he said. "I had the money at home, but my mother said, 'No, I'm not going down there.' I sat there for three months until I could get somebody to go to my mother's house to get the money, go down to court and pay the bail."

Wilson believes detainees who are not dangerous should be released.

"Every day, every hour you are in there, something is going downhill on the outside," he said. "You are taken out of circulation. If you have to pick up your kids every day at 4, that isn't going to happen. If you have bills to pay, it isn't going to happen."

## The price of freedom

Delaware's bail system is grounded in the state's Constitution. Only defendants charged with capital murder can be held without bail; all others are left to the judge's discretion.

Those choices play out every day in Delaware courtrooms. The price of freedom this past week was $410,000 cash bail for a man accused of accidentally shooting of a 6-year-old girl, $30,000 cash bail for a man accused of having a loaded handgun under his hotel room mattress and $27,500 cash bail for a 20-year-old Bear man accused of having 40 grams of marijuana and other drugs. The Bear man is the only one who has been released.

"Bail is not about punishment," Delaware Chief Magistrate Alan Davis said. "We are prohibited by U.S. Supreme Court decisions from making bail excessive."

There are four types of bail. Two of the least restrictive options allow a defendant to be released on their promise to come back or to pay only if they do not show up for future court appearances.

Secured bail requires a defendant or someone on their behalf to post either cash or property for the dollar amount of bail. In most cases, a relative pays a bail bondsman a small percent of the bail amount, and the bondsman then pays an insurance company to post the bond. Bondsmen typically charge 10 percent of the bail amount to post the bond.

Cash bail requires a person post only cash, and the bondsman typically charges the defendant 20 to 30 percent of the bond amount.

Bail money is returned to an individual at the conclusion of a case as long as he or she appeared for court. If not, the court can cash in the insurance policy.

## 85 percent are released

The concept of bail does not exist in any D.C. courtroom or federal courtrooms in Delaware and around the nation.

"If they are not a risk, if they are not charged with a dangerous offense, then they shouldn't be held, even pending the first court appearance," said Cliff Keenan, the director of pretrial services in Washington, D.C. "The judges, the prosecutors, the community, by and large, all agree that this is the better way to do business, rather than relying on commercial bail as a condition of release."

The result is that cases move swiftly once someone is arrested in Washington.

Certain minor offenses, including urinating in public and disorderly conduct, do not require an appearance before a judge. All other defendants are transported to the lockup in the district's bustling Superior Court building just blocks away from the Washington Monument.

There they meet any time – day or night – with a pretrial services employee who gathers information that will be used by the judge to make a decision on their release. At the same time, a prosecutor reviews the facts of the case to see if the charge will stick.

For those cases prosecutors decide can go forward, the defendant goes before a judge who determines release or detention. About 85 percent of those arrested are released. The D.C. Pretrial Services Agency supervised 13,850 defendants in 2014 – about 4,100 on any given day.

Unlike in Delaware, a prosecutor and defense attorney are present for the initial hearing.

Last week in Washington, an African-American man stood in a white hoodie and sagging jeans to ask for his release. Just hours earlier, he was arrested for possessing cocaine and paraphernalia.

"If I release you, you have to report, or we will have to hold you," the judge said as he ordered the man to report to pretrial services once a week, and to undergo regular drug tests until the conclusion of his case.

The man nodded, and was whisked aside to have his handcuffs removed.

## 'We are not superstars'

Those opposed to changing the bail system say the District of Columbia should not be seen as a model. That is because the district spends about $60 million per year on pretrial services and employs 350 people – an unrealistic expenditure for a state like Delaware that does not have the same level of federal funding.

Keenan said cost savings associated with having less people in prison can be rolled over into pretrial services.

Coupe, who runs Delaware's prison system that spends $277 million annually, said the state could save money by reducing the overall population. Taxpayers spend $99 per day, or $36,232 annually, to house each inmate.

Nicholas Wachinski, the chief executive officer of Lexington National, an insurance company that underwrites bail bonds, said the D.C. system is costly and does not lead to prison population reductions. He said low-end defendants released are the most likely to skip court appearances.

Bail bondsman are on the front lines of community corrections, Wachinski said.

"Their offices are in the community; they live in the communities they serve. That is why they work so well with the people they bail out. We will lose that for the replacement of a governmental agency taking that over."

Christina Brigandi of Dover, a bail bondsman at 1st Choice Bail Bonds in Delaware, agrees.

Her phone rings constantly, often with panicked parents calling to get their children who were just arrested out of prison – or to retrieve kids still sitting at police headquarters, before they go into a cell at a state institution.

When she's not on the phone, Brigandi is driving between courthouses in Georgetown, Dover and Wilmington to meet clients – or searching streets for defendants on the run from the law.

"It's not like what you see on TV," she said. "We are not superstars; we are just trying to get people out of jail on bail, and then we follow through to make sure they come back to court. It is costing nobody any money but us."

Those who want change, though, say the true cost is borne by defendants who must scrape together their life savings to pay a bail bondsman – or who sit in prison awaiting a trial, only to eventually have the charges dropped.

"At this point in 2015, the only people significantly opposed to pretrial reform is the for-profit bail industry," said Cherise Fanno Burdeen, executive director of the Pretrial Justice Institute in Maryland. "It is a lucrative business, but it can change if the public becomes educated."

## On the cusp of change

Fanno Burdeen said she is confident Delaware is on the cusp of bail reform.

Pretrial services in Delaware are on the rise, but still have a ways to go. In New Castle County, there are 367 defendants being monitored – three times what it was seven years ago.

Statewide, about 523 people are being monitored, putting a strain on the system.

"We are taxing them," said Judge Davis, who favors the change as long as Delaware's pretrial services are properly funded. "If we implemented a system where we could use it as it should be used, how it is used in other jurisdictions, we could overwhelm them [pretrial services] in a weekend."

Baylor prison: Women find new way in this cell block

To help with the burden, the state partnered with the Rick Van Story Resource Center in Wilmington, a mental health and substance abuse recovery facility. About 40 pretrial defendants have been sent there for monitoring since 2013, according to Heather Zwickert, supervisor of the Department of Correction's New Castle County Pretrial Services Unit.

The center is a place where defendants get assistance in dealing with their criminal case while also receiving help with other aspects of life – be it a hot meal or counseling.

The DOC is looking for even more defendants who could benefit from that type of setting. One pilot program is reviewing non-violent defendants in New Castle County who are in custody on less than $10,000 bail to see if any can be safely released into the community.

"The target audience that we are looking for is individuals whose needs outweigh the risk to the community," Coupe said. "I see the future of pretrial continuing to grow."

Meanwhile, the nonprofit Delaware Center for Justice won a two-year federal grant called Smart Pretrial Demonstration Initiative. The initiative, which has brought together prosecutors, public defenders, judges and others in the criminal justice system, is currently gathering and analyzing Delaware data that will then be used to guide the path of pretrial services.

"The challenge that every pretrial system faces is making sure the right people are being detained and that the right people are being released with effective monitoring," said Kate Parker West, coordinator for Smart Pretrial at the Delaware Center for Justice.

Advocates in Delaware and nationwide say that bail review isn't just about cost savings, but is about restoring faith in the criminal justice system.

"There is a tremendous sense that the legal system is not there to do justice; it is there to do injustice, to control people, to oppress people," said Karakatsanis, the civil rights lawyer. "We have a lot of work to do in our communities to make our courts somewhere where justice is done, as opposed to places where trauma, pain and injustice are inflicted."

*Contact Jessica Masulli Reyes at 302-324-2777, jmreyes@delawareonline.com or Twitter @JessicaMasulli.*

## Efforts in Delaware to reform pretrial detention:

• Pretrial risk assessment – a tool to help judges gauge defendants' flight risk and likelihood of re-arrest when deciding on release – was implemented statewide in 2013. State officials are working to validate the assessment.

• Another pilot program is reviewing non-violent defendants in New Castle County who are in custody on less than $10,000 bail to see if any can be safely released into the community.

• The nonprofit Delaware Center for Justice won a two-year federal grant called Smart Pretrial Demonstration Initiative. They are spearheading a group of prosecutors, public defenders, judges and others in the criminal justice system to gather data that will then be used to help make decisions about releasing defendants.

• Pretrial services, which provides information about defendants to the judge to use in making risk determinations and supervises defendants who are released, is expanding under the Department of Correction. The number of defendants being monitored in New Castle County is 367 – three times what it was seven years ago.

## Hearing schedule

The Access to Justice Commission's Committee on Fairness in the Criminal Justice System will conduct a series of informational hearings and public forums. They will be held:

• Nov. 13 at the Chase Center on the Riverfront, 815 Justison St. in Wilmington. Experts will focus on bail and pretrial detention from 9:30 to 11:30 a.m.; charging, plea bargaining decisions and sentencing from 12:30 to 2:30 p.m.; and policing strategies that have worked elsewhere from 3 to 5 p.m. Public comment will not be accepted.

• Public comment will be accepted from 6:30 to 8 p.m. at four locations: Dec. 1 at First State Community Action Agency, 308 N. Railroad Avenue in Georgetown; Dec. 2 at Middletown High, 120 Silver Lake Road in Middletown; Dec. 8 at Howard High, 401 E. 12th St. in Wilmington; Dec. 9 at William Henry Middle School, 65 Carver Road in Dover.

Those interested in offering comment at the public forums can preregister at courts.delaware.gov/supreme/accessform.stm. Same day registration also will be available at each location. Comments will be limited to five minutes.

Written comments can be submitted through Dec. 18.

Should Delaware end its cash bail system?