IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRISONERS LEGAL ADVOCACY NETWORK, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 23-1397-JLH ) |
| THE HONORABLE JOHN CARNEY, in his official capacity as Governor of the State of Delaware, THE HONORABLE ANTHONY J. ALBENCE, in his official capacity as State Election Commissioner of the Delaware Department of Elections, and, THE HONORABLE TERRA TAYLOR, in her official capacity as Acting Commissioner of the Delaware Department of Correction, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**<u>REPLY BRIEF IN SUPPORT OF<br>PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION</u>**

OF COUNSEL:
Jonathan Topaz
Casey Smith
Sophia Lin Lakin
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION, INC.
125 Broad Street, 18th Floor
New York, NY 10004
(212) 249-2500

Karen E. Keller (No. 4489)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
edibenedetto@shawkeller.com

*-and-*

| | |
|---|---|
| Stephen D. Hibbard<br>Aaron M. Francis<br>Seth H. Victor<br>Dixie M. Morrison<br>PROSKAUER ROSE LLP<br>2029 Century Park E. #2400<br>Los Angeles, CA 90067<br>(310) 284-5600<br><br>Michael J. Lebowich<br>Godfre O. Blackman<br>PROSKAUER ROSE LLP<br>Eleven Times Square<br>New York, NY 10036<br>(212) 969-3000<br><br>Dated: March 8, 2024 | Dwayne J. Bensing (No. 6754)<br>Andrew Bernstein (No.7161)<br>AMERICAN CIVIL LIBERTIES UNION<br> OF DELAWARE<br>100 W. 10 Street, Suite 706<br>Wilmington DE 19801<br>(302) 295-2113<br>dbensing@aclu-de.org<br>abernstein@aclu-de.org<br><br>*Attorneys for Plaintiff* |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................1

I.  PULLMAN ABSTENTION DOCTRINE DOES NOT APPLY..............................................1

   A.  Pullman Abstention is Highly Disfavored Here ......................................................1

   B.  Defendants Have Not Satisfied The Pullman Factors.............................................2

II.  PLAINTIFF'S CASE IS JUSTICIABLE ................................................................................4

III. PLAINTIFF IS LIKELY TO SUCCEED ON ITS RIGHT-TO-VOTE CLAIM .....................6

IV. PLAINTIFF HAS ESTABLISHED AN EQUAL PROTECTION VIOLATION ....................8

V.  THE EQUITABLE FACTORS ALL FAVOR PLAINTIFF ....................................................10

CONCLUSION....................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**                                                                              **Page(s)**

*Afran v. McGreevey*,
115 F. App'x 539 (3d Cir. 2004) .................................................................................................. 3

*Albence v. Higgin* ("*Higgin III*"),
295 A.3d 1065 (Del. 2022) ................................................................................................. passim

*Alexander v. Riga*,
208 F.3d 419 (3d Cir. 2000) ........................................................................................................ 4

*Artway v. Att'y Gen. of State of N.J.*,
81 F.3d 1235 (3d Cir. 1996) ........................................................................................................ 3

*Bridgeville Rifle & Pistol Club, Ltd. v. Small*,
176 A.3d 632 (Del. 2017) ........................................................................................................... 6

*C.G. v. Saucon Valley Sch. Dist.*,
571 F. Supp. 3d 430 (E.D. Pa. 2021) ........................................................................................ 10

*Chez Sez III Corp. v. Twp. of Union*,
945 F.2d 628 (3d Cir. 1991) .................................................................................................. 1, 2

*City of L.A. v. Lyons*,
461 U.S. 95 (1983) ...................................................................................................................... 5

*Common Cause Ind. v. Lawson*,
937 F.3d 944 (7th Cir. 2019) ...................................................................................................... 4

*Cook Cnty., Ill. v. McAleenan*,
417 F. Supp. 3d 1008 (N.D. Ill. 2019) ........................................................................................ 5

*C-Y Dev. Co. v. City of Redlands*,
703 F.2d 375 (9th Cir. 1983) ...................................................................................................... 2

*Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-cv-00966,
2020 WL 5407748 (W.D. Pa. Sept. 8, 2020) .............................................................................. 1

*Duncan v. Poythress*,
657 F.2d 691 (5th Cir. 1981) ...................................................................................................... 2

*Harman v. Forssenius*,
380 U.S. 528 (1965) .................................................................................................................... 2

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) .................................................................................................................... 4

*McDonald v. Board of Election Commission of Chicago*,
   394 U.S. 802 (1969) .................................................................................................... 8, 9

*N.J.-Phila. Presbytery of Bible Presbyterian Church v. N.J. State Bd. of Educ.*,
   654 F.2d 868 (3d Cir. 1981) ............................................................................................. 1

*NAACP Philadelphia Branch v. Ridge*, No. CIV. A. 00-2855,
   2000 WL 1146619 (E.D. Pa. Aug. 14, 2000) ................................................................... 3

*O'Brien v. Skinner*,
   414 U.S. 524 (1974) ..................................................................................................... 8, 9

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
   523 U.S. 726 (1998) .......................................................................................................... 5

*Pa. Prison Soc. v. Cortes*,
   508 F.3d 156 (3d Cir. 2007) ............................................................................................. 5

*Planned Parenthood of Cent. N.J. v. Farmer*,
   220 F.3d 127 (3d Cir. 2000) ............................................................................................. 2

*R.R. Comm'n of Texas v. Pullman Co.*,
   312 U.S. 496 (1941) ................................................................................................ 1, 2, 3

*RiteScreen Co. v. White*, No. 1:23-CV-00778,
   2023 WL 5183044 (M.D. Pa. Aug. 11, 2023) ................................................................ 10

*Siegel v. LePore*,
   234 F.3d 1163 (11th Cir. 2000) ........................................................................................ 2

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
   600 U.S. 181 (2023) .......................................................................................................... 4

*Trump for President, Inc. v. Boockvar*,
   481 F. Supp. 3d 476 (W.D. Pa. 2020) ........................................................................ 1, 3

*Vote.Org v. Callanen*,
   89 F.4th 459 (5th Cir. 2023) ............................................................................................. 4

**Statutes**

15 Del. C. § 51 .......................................................................................................................... 7

19 Del. C. § 2301(9) ................................................................................................................. 2

19 Del. C. § 3302(10)(D)(vi) .................................................................................................... 2

19 Del. C. § 901(3)(h) ............................................................................................................... 2

19 Del. C. § 901(6) ............................................................................................................... 2

**INTRODUCTION**

Defendants do not contest that—if *Higgin III* means what it says—eligible incarcerated voters face an unconstitutional burden on their fundamental right to vote. Instead, Defendants find ambiguity in *Higgin III* where there is none, and sow doubts about this Court's jurisdiction. But an entire class of voters has no lawful means of exercising their right to vote less than a year out from a presidential election, and Plaintiff and its members are already suffering injuries because of the challenges these circumstances present. Injunctive relief is needed to redress these harms, particularly the constitutional deprivation of the right to vote and equal protection.

**ARGUMENT**

**I.    *PULLMAN* ABSTENTION DOCTRINE DOES NOT APPLY.**

**A.    *Pullman* Abstention Is Highly Disfavored Here.**

Weighing courts' duty to decide cases before them, the Third Circuit has explained that *Pullman* abstention[1] is generally improper at the preliminary injunction stage. *See Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628, 634 n.4 (3d Cir. 1991) ("Although the district court decided to abstain in this action, it was still obliged to consider appellants' request for preliminary relief."). The reason for this is that "a preliminary injunction is just that—preliminary—and state courts could always decide the state-law questions and issue narrowing constructions before entry of a final permanent injunction." *Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-cv-00966, 2020 WL 5407748, at *4 n.2 (W.D. Pa. Sept. 8, 2020). For that reason, "*Pullman* considerations have very little weight at the preliminary injunction stage." *N.J.-Phila. Presbytery of Bible Presbyterian Church v. N.J. State Bd. of Educ.*, 654 F.2d 868, 887 (3d Cir. 1981).

"[V]oting rights cases are particularly inappropriate for abstention" as well, *Siegel v.*

---

[1] *See R.R. Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941).

*LePore*, 234 F.3d 1163, 1174 (11th Cir. 2000) (en banc), because these cases affect "the fundamental civil rights" of citizens. *Harman v. Forssenius*, 380 U.S. 528, 537 (1965) (affirming refusal to abstain in a voting rights case); *see also C-Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 381 (9th Cir. 1983) ("[T]he Supreme Court has demonstrated a reluctance to order abstention in cases involving certain civil rights claims, such as voting rights"); *Duncan v. Poythress*, 657 F.2d 691, 697 (5th Cir. 1981) (similar).

More broadly, abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," such that "*Pullman* abstention should be rarely invoked" in any case, let alone here. *Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000). Even if all three "exceptional circumstances" are present, district courts must still weigh certain discretionary factors before abstaining. *Id*. at 149-50.

B.     **Defendants Have Not Satisfied The *Pullman* Factors.**

Defendants fail the first *Pullman* factor because the language of Art. 5 § 4A is "clear and unmistakable." *Chez Sez III Corp.* 945 F.2d at 632. Neither "incarceration" nor "detention" is enumerated in Art. 5 § 4A, and *Higgin III* states that the text is "exhaustive." *Albence v. Higgin* ("*Higgin III*"), 295 A.3d 1065, 1092 (Del. 2022). It takes a convoluted construction to ignore the plain reading of Art. 5 § 4A and sweep "incarceration" within an applicable category under Art. 5 § 4A. Defendants provide no authority for their extratextual attempt to engineer ambiguity.

Delaware's statutory scheme demonstrates in multiple other ways that "incarceration" is not a "business or occupation." *See, e.g.*, 19 Del. C. §§ 901(6) & (3)(h) (excluding "any inmate in the custody of the Department of Correction" from the definition of "employee" under the minimum wage statute); 19 Del. C. § 3302(10)(D)(vi) (same as to unemployment compensation statute); 19 Del. C. § 2301(9) (same as to workers' compensation statute). Similarly, the Delaware Supreme Court, in describing the history of Art. 5 § 4A and both the "physical disability" and

2

"business or occupation" categories, noted that "absentee voting was strictly limited to … *disabled voters* and [certain individuals] in the work force, on the condition that they were unable to appear in person at their polling places." *Higgin III*, 295 A.3d at 1092 (emphases added).

Defendants also failed to demonstrate the remaining two exceptional circumstances under *Pullman*. A "lack of uncertainty about the state law issue precludes [the second *Pullman* exceptional circumstance]." *Artway v. Att'y Gen. of State of N.J.*, 81 F.3d 1235, 1271 (3d Cir. 1996). As to the third factor, unlike in the principal case Defendants cite, Plaintiff does not "ask[] … for this Court to find that state officials have wrongly interpreted state law, and to replace the officials' interpretations with [Plaintiff's] own." *Trump for President, Inc. v. Boockvar*, 481 F. Supp. 3d 476, 499 (W.D. Pa. 2020) (internal quotation marks and citation and alterations omitted). Indeed, Plaintiff does not ask this Court to interpret state law at all. It simply asks that this Court acknowledge the plain language in *Higgin III* and provide in-person voting opportunities to ensure eligible incarcerated voters can vote free from prosecution or voter challenge.

Even if Defendants had established each exceptional circumstance, the discretionary factors the Court must consider weigh against abstention. In assessing the "impact of delay on the litigants," abstention is inappropriate "[i]n a time-sensitive environment such as that presented by a rapidly approaching election." *Afran v. McGreevey*, 115 F. App'x 539, 543 (3d Cir. 2004). Such is the case here. Defendants' reliance on *NAACP Philadelphia Branch v. Ridge*, No. CIV. A. 00-2855, 2000 WL 1146619, at *5-7 (E.D. Pa. Aug. 14, 2000) is misplaced because: (i) state courts had never interpreted the law at issue; and (ii) that law's language was ambiguous. Finally, Defendants' argument that "the litigation has only been pending since December 2023 even though the challenged elections policies have been in place for decades," Defs.' Br. 9, is meritless because it ignores that the recent decision in *Higgin III*, and the State's failure to respond to it in the lead-up to the upcoming election, prompted this litigation.

3

## II. PLAINTIFF'S CASE IS JUSTICIABLE.

"[W]here the plaintiff is an organization, the standing requirements of Article III can be satisfied *in two ways*. Either the organization can claim that it suffered an injury in its own right or [] it can assert 'standing solely as the representative of its members.'" *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (emphasis added) (citation and internal quotation marks omitted). PLAN satisfies both theories of standing.

PLAN has suffered injury to itself to satisfy organizational standing. To address Defendants' refusal to provide a legal means for eligible incarcerated people to vote after *Higgin III*, PLAN has been forced to materially alter its operations, and spend more money, in Delaware to further its mission. *See* Declaration of Paul Stanley Holdorf ("Holdorf Decl."), ¶¶ 6-10; *Alexander v. Riga*, 208 F.3d 419, 427 n.4 (3d Cir. 2000) (finding injury where organization "diverted resources to investigate and to counter [defendants'] conduct"). In particular, "a voting law can injure an organization enough to give it standing by compelling it to devote resources to combatting the effects of that law that are harmful for the organization's mission." *Common Cause Ind. v. Lawson*, 937 F.3d 944, 950 (7th Cir. 2019) (internal quotation marks, citation and alterations omitted); *see also Vote.Org v. Callanen*, 89 F.4th 459, 471 (5th Cir. 2023). PLAN's overall mission has been negatively impacted in a general election year because it has been forced to divert its resources and focus to this issue in Delaware. *See* Holdorf Decl. ¶¶ 6-10. Defendants never address this organizational standing theory.

Additionally, PLAN also has associational standing. To establish associational standing: (i) the organization's members must have standing to sue on their own; (ii) the interests the organization seeks to protect must be germane to its purpose; and (iii) neither the claim asserted nor the relief requested require individual participation by the organization's members. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 333 (1977). Defendants do not address, and

4

thus concede, the second and third prongs. Defendants only challenge PLAN's members' standing to sue on their own by questioning whether any member has suffered injury. Defs.' Br. 12-13. Yet PLAN's members who are jailhouse lawyers and prison paralegals have already suffered injury to their core mission, as they are unable to assist eligible incarcerated voters with exercising their right to vote, as they have done in the past. Holdorf Decl. ¶¶ 11-13 (noting that the work for these jailhouse lawyers and prison paralegals has been "radically altered"). PLAN has also had incarcerated members in DDOC facilities at all times since 2017, currently has members in DDOC facilities who wish to vote in November and has members who will be incarcerated for the entire 2024 voting period, Holdorf Decl. ¶¶ 14-16—meaning PLAN's members are "likely to suffer future injury" as a result of the current status quo post-*Higgin III*. *Pa. Prison Soc. v. Cortes*, 508 F.3d 156, 166 (3d Cir. 2007) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983)).

PLAN's claims are also ripe. Whether the challenged policy "inflicts significant practical harm upon the interests that the [Plaintiff] advances [is] an important consideration" for ripeness. *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998). As noted *supra*, Defendants ignore that PLAN and its members have already suffered and will continue to suffer injury absent an injunction. *See Cook Cnty., Ill. v. McAleenan*, 417 F. Supp. 3d 1008, 1019 (N.D. Ill. 2019) ("need to respond to the [challenged policy's] chilling effect . . . or to divert resources" made plaintiffs' claims ripe), *aff'd*, 962 F.3d 208 (7th Cir. 2020). Further, for reasons laid out in Section I.B and Plaintiff's opening brief, Defendants' argument—that "because PLAN is incorrect about the impact or meaning of *Higgin*, no member has a ripe claim," Defs.' Br. 13—is foreclosed by the plain language in *Higgin III*.

Similarly, Defendants' argument—unsupported by any case law—that Plaintiff's claim "has likely become, or is likely to become, moot," fails. Defs.' Br. 13. A case is moot only "if the

5

issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *In re Surrick*, 338 F.3d 224, 229 (3d Cir. 2003) (citation omitted). PLAN has a cognizable interest in the outcome because it has already suffered multiple injuries (and will continue to suffer injury absent relief) in the wake of *Higgin III*. As for Defendants' focus on PLAN's incarcerated members, their argument based on the *average* stays in DDOC facilities fails to address above-average stays. Indeed, Defendants acknowledge that "presumptive sentences for misdemeanors are up to one year of incarceration[.]" Defs.' Br. 2. And PLAN has identified members who will be incarcerated during the 2024 election period. Holdorf Decl. ¶ 16. Defendants again also ignore the injury to PLAN's jailhouse lawyers and paralegals. *Id.* ¶¶ 11-12

## III.   PLAINTIFF IS LIKELY TO SUCCEED ON ITS RIGHT-TO-VOTE CLAIM.

Defendants do not contest that: (i) eligible incarcerated voters in DDOC custody retain their fundamental right to vote; (ii) Delaware law criminalizes various forms of voter fraud; (iii) state law permits an unlimited number of voter challenges which, if successful, can invalidate the votes in question and disenfranchise those voters; (iv) Defendants cannot "exceed[] [their] authority by violating [their] directive to comply with the State's laws," *Bridgeville Rifle & Pistol Club, Ltd. v. Small*, 176 A.3d 632, 661 n.157 (Del. 2017); (v) there is no specific commitment not to prosecute eligible incarcerated voters from voting absentee in the 2024 election; and (vi) eligible incarcerated voters face a severe burden (complete denial) on the right to vote if they are not constitutionally permitted to vote in-person or absentee. *See* Defs.' Br. 7-13. Defendants instead simply ask eligible incarcerated voters to ignore the plain text of *Higgin III* and bear the burden of potential disenfranchisement and criminal exposure on their own.

PLAN does not seek "multiple options for voting." Defs.' Br. 15. Because *Higgin III* now forecloses absentee voting, PLAN simply asks that eligible incarcerated voters be allowed to vote

6

in-person at a polling place—now the only lawful avenue for these voters to cast their ballots free from risk of invalidation or prosecution. Otherwise, these voters are completely disenfranchised and severely burdened, which warrants strict scrutiny under *Anderson-Burdick*. *See* Pl's. Br. 8-9.

Although Defendants note the DOJ's prior agreement not to prosecute eligible voters "in the specific context of the 2022 election cycle," Defs.' Br. 15 n.9, these statements fail to provide eligible incarcerated voters and the PLAN members who advise them sufficient protection from prosecution. The chilling effect on PLAN's members remains because they risk violating state law by voting, or risk being subject to criminal penalties for advising a client to do so. *See* 15 Del. C. § 51. And even if the DOJ formally represented that it would not criminally prosecute these eligible voters—which it has not done—these voters remain at real risk of having their absentee ballots invalidated, via voter challenge or otherwise, after *Higgin III*. See Pl.'s Br. 12. Ultimately, whether or not "DOE and DOC … continue to facilitate absentee voting by eligible inmates and detainees," Defs.' Br. 16, is irrelevant—these representations provide zero assurance that those votes will actually count and/or that those voters will evade any criminal penalties.

Defendants' claim about the burden the State would face if an injunction were entered is not credible. Defs.' Br. 15. Defendants do not dispute that, only eight days before the Complaint was filed, they admitted that they had not studied the effect of in-person voting in DDOC facilities and specifically had not studied any potential increased cost of in-person machine voting versus absentee voting. *See* Pl.'s Br. 5, 13. Now, for the first time, Defendants offer two untitled, undated spreadsheets purporting to show cost estimates. *See* Defs.' Exs. F, G. Defendants do not disclose when these spreadsheets were generated, the underlying data and assumptions on which the spreadsheets are based, who generated the spreadsheets, and whether those individuals have the requisite expertise. Critically, the spreadsheets do not compare these purported costs to the costs

7

for the current convoluted process of absentee voting, meaning that Defendants have put forth no evidence that this would necessarily constitute an *additional* cost. Given the open questions, lack of information, and lack of transparency, this Court should place little to no weight on a cost estimate that contravenes Defendants' prior representations about their study of these issues.

Even if this Court did credit the cost analysis, "any administrative burden Defendants may claim cannot outweigh the mass denial of a fundamental right." Pl.'s Br. 13, 17 (citing cases). Defendants cite *SAM Party of New York v. Kosinski*, but there, the Second Circuit found that the challenged law did "*not impose a severe burden* on the [plaintiff]," and therefore that the minimal burden it did impose merited a "quite deferential" *Anderson-Burdick* analysis in favor of the State. 987 F.3d 267, 276 (2d Cir. 2021) (emphasis added). Plaintiff is unaware of any case where a court found that a law constituted a severe burden under *Anderson-Burdick*—as exists here—but was justified based on a state's interest in avoiding monetary costs.

### IV. PLAINTIFF HAS ESTABLISHED AN EQUAL PROTECTION VIOLATION.

Defendants argue—without legal authority—that no Equal Protection violation exists because "*Delaware's election policies* do not create distinctions" among pretrial detainees. Defs.' Br. 16 (emphasis added). This misses the point. Some pretrial detainees are released because they can afford cash bail and others similarly situated are not because they cannot afford it. *See* Pl.'s Br. 13-16. Defendants do not dispute this. That state law allows the former to vote and not the latter is an irrational distinction under *O'Brien v. Skinner*, 414 U.S. 524 (1974)—no matter whether those classifications arise from judge-made law or election policies. *See* Pl.'s Br. 14-15.

Next, Defendants rely on *McDonald v. Board of Election Commission of Chicago* to claim that eligible incarcerated individuals are not completely disenfranchised because "the record is barren of any indication that the State might not, for instance, possibly furnish the jails with special

8

polling booths or facilities on election day." Defs.' Br. 17 (quoting 394 U.S. 802, 808 n.6 (1969)). *McDonald* has no bearing here for two main reasons. First, the plaintiffs in *McDonald* sought the ability to vote *absentee*, 394 U.S. at 803-06—meaning that if Illinois provided those plaintiffs with the ability to vote in-person it would obviate the need for the relief plaintiffs sought. By contrast, Plaintiff seeks as relief the right to vote *in-person* because Delaware law, post-*Higgin III*, now forecloses absentee voting for eligible incarcerated voters, leaving them no mechanism to vote.

Second, the record is not "barren," but rather entirely clear, that Delaware has no intention of "possibly furnish[ing] the jails with special polling booths or facilities on election day." Defs.' Br. 17 (quoting *McDonald*, 394 U.S. at 808 n.6). Stunningly, Defendants quote that portion from *McDonald* in a brief where they are *opposing that exact relief*. This lawsuit and instant motion were filed only because Defendants, in response to multiple demand letters, consistently rejected instituting in-person polling place voting, and indeed had not even studied the issue. Pl.'s Br. 5, 13. If anything, "the record is barren of any indication that the State" will do anything other than continue to deny eligible incarcerated voters with in-person voting opportunities in DDOC facilities. Curiously, Defendants ignore *O'Brien*, which was decided more recently than *McDonald*, squarely addressed *McDonald*, and which PLAN relied on heavily in its opening brief. In *O'Brien*, the Court made clear that "the Court's disposition of the claims in *McDonald* rested on failure of proof"; namely that "there (was) nothing in the record to show that appellants (were) in fact absolutely prohibited from voting by the State." *O'Brien*, 414 U.S. at 529 (quoting *McDonald*, 394 U.S. at 808 n.7). Given the vastly different record here, *O'Brien* governs.

Defendants' answer to a class of fully disenfranchised citizens is that each should (1) hope the State will suddenly reverse its longstanding opposition to in-person voting, or (2) individually petition a state court for bail modification and hope the court hears and grants it. Defs.' Br. 17.

9

The constitutional right to vote and to equal protection cannot be left up to hope and prayer.

### V.  THE EQUITABLE FACTORS ALL FAVOR PLAINTIFF.

Defendants' arguments on the equitable factors amount to a rehashing of their merits arguments—meaning that if Plaintiffs are likely to succeed on the merits, they should prevail on these other factors. As to irreparable harm and balance of the equities, Defendants do not contest that impairment of voting rights constitutes irreparable injury, or that deprivation of constitutional rights outweighs any administrative burden to the State. Defs.' Br. 18-19. Instead, Defendants simply repeat their argument on the merits that "there is no deprivation of constitutional rights" at all. Defs.' Br. 19. Defendants also offer no rejoinder to Plaintiffs' authority showing that that the public interest is served by "permitting as many qualified voters to vote as possible" and by ensuring federal voting laws are followed. Pl.'s Br. 19.

Finally, while "[t]he burden for a mandatory injunction is higher" in the Third Circuit, this standard is not insurmountable. Indeed, courts have often found that mandatory injunctive relief was warranted because "the right to relief [was] indisputably clear." *See, e.g.*, *C.G. v. Saucon Valley Sch. Dist.*, 571 F. Supp. 3d 430, 439-40 (E.D. Pa. 2021) (citation omitted); *RiteScreen Co. v. White*, No. 1:23-CV-00778, 2023 WL 5183044, at *5 (M.D. Pa. Aug. 11, 2023). Such is the case here, where citizens face complete denial of their fundamental right to vote.

### **CONCLUSION**

Plaintiff respectfully requests this Court grant its motion for a preliminary injunction.

|  |  |
|---|---|
| OF COUNSEL:<br>Jonathan Topaz<br>Casey Smith<br>Sophia Lin Lakin<br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION, INC.<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>(212) 249-2500<br><br>Stephen D. Hibbard<br>Aaron M. Francis<br>Seth H. Victor<br>Dixie M. Morrison<br>PROSKAUER ROSE LLP<br>2029 Century Park E. #2400<br>Los Angeles, CA 90067<br>(310) 284-5600<br><br>Michael J. Lebowich<br>Godfre O. Blackman<br>PROSKAUER ROSE LLP<br>Eleven Times Square<br>New York, NY 10036<br>(212) 969-3000<br><br>Dated: March 8, 2024 | /s/ Karen E. Keller<br>Karen E. Keller (No. 4489)<br>Emily S. DiBenedetto (No. 6779)<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>(302) 298-0700<br>kkeller@shawkeller.com<br>edibenedetto@shawkeller.com<br><br>-and-<br><br>Dwayne J. Bensing (No. 6754)<br>Andrew Bernstein (No.7161)<br>AMERICAN CIVIL LIBERTIES UNION OF DELAWARE<br>100 W. 10 Street, Suite 706<br>Wilmington DE 19801<br>(302) 295-2113<br>dbensing@aclu-de.org<br>abernstein@aclu-de.org<br><br>*Attorneys for Plaintiff* |