IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRISONERS LEGAL ADVOCACY NETWORK, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 23-1397-JLH ) |
| THE HONORABLE JOHN CARNEY, et al., | ) ) ) |
| Defendants. | ) |

**DECLARATION OF PAUL STANLEY HOLDORF IN SUPPORT OF PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION**

Pursuant to 28 U.S.C. § 1746, Paul Stanley Holdorf declares the following:

1. I am of legal age and am competent to make this declaration. I am the Supervising Attorney for the Prisoners Legal Advocacy Network ("PLAN"). Except where identified below, if called as a witness, I could competently testify to the following based upon my personal knowledge.

2. PLAN is a New York-based nonprofit corporation and nonpartisan coalition of jailhouse lawyers, attorneys, advocates, and partner organizations that provides legal services and support to system-impacted individuals. PLAN is registered to operate as a foreign nonprofit corporation in Delaware.

3. PLAN's mission is to "defend and expand the legal rights of presently and formerly incarcerated individuals so that those who are directly impacted by the U.S. criminal legal system can live with dignity and without fear."

4. PLAN has provided legal services and support to individuals incarcerated in Delaware since February 2017. PLAN protects the franchise for eligible system-impacted voters by (i) administering the Election Protection Jail & Post-Release Voting Working Group, (ii)

coordinating efforts to inform currently and formerly incarcerated voters of their rights under the law, (iii) assisting system-impacted voters to overcome barriers they encounter in their exercise of these rights, and (iv) advocating for the expansion of voting rights for system-impacted people. PLAN also works with partners to develop "Know Your Rights" guides and provide consultations on voting rights for currently and formerly incarcerated voters.

## **PLAN'S DELAWARE WORK FOLLOWING *HIGGIN***

5.      I am familiar with the rulings by the Delaware Court of Chancery and Delaware Supreme Court in the *Albence v. Higgin* litigation regarding Delaware's vote-by-mail statute. *See Higgin v. Albence ("Higgin I")*, No. 2022-0641-NAC, 2022 WL 4239590, at *2, 23 (Del. Ch. Sept. 14, 2022), *aff'd in part, rev'd in part*, 2022 WL 5333790 (Del. Oct. 7, 2022); *Albence v. Higgin ("Higgin II")*, No. 342, 2022, 2022 WL 5333790 (Del. Oct. 7, 2022); *Albence v. Higgin ("Higgin III")*, 295 A.3d 1065 (Del. 2022).

6.      The combination of the decisions in *Higgin I, II,* and *III* has created mass confusion among PLAN's eligible incarcerated members residing in DDOC facilities and their families, upon whom incarcerated voters frequently rely for information. Because of this confusion, PLAN has been forced to increase its investment in Delaware by 715% and has allocated fully half of its 2024 voting rights budget to address the impact of *Higgin III* and to help eligible incarcerated voters secure their right to vote.

7.      PLAN has spent significant time and resources engaging in a full-scale, corrective-messaging campaign to ensure that eligible incarcerated voters no longer rely on now-outdated information, such as that which was previously distributed by the Department of Corrections. For example, PLAN continues to determine how best to explain to these Delaware voters that they have a right to vote that they may not be able to exercise. PLAN is continuing to work on written

guidance to ensure eligible incarcerated voters are both aware of their rights and also understand the legal risks that may be associated with exercising them, including by completing absentee ballots. As of the filing of the complaint in this action, PLAN had incurred approximately $30,000 in direct costs, which it would not otherwise have incurred, related to messaging about the impact of *Higgin III*.

8. PLAN has spent significant time and resources adapting its education materials for use by the general public. Before *Higgin III*, PLAN's legal resource materials pertaining to incarcerated voters were developed solely for internal use by attorneys. After *Higgin III*, and because of the state's failure to provide for in-person polling places, PLAN has needed to adapt these materials specifically for jailhouse lawyers and incarcerated voters in Delaware. This required (and continues to require) significantly more time because PLAN must prepare these materials for use by individuals with a wide range of both literacy levels and awareness of legal principles. PLAN now also has to devote greater resources to provide public access to these materials, and it has been forced to invest in software to create a robust and easily navigable online database to disseminate its new research materials.

9. PLAN has spent significant time and resources revising presentations and materials and providing additional training to staff. Because of *Higgin III*, PLAN's efforts to educate staff have been made more difficult, more costly, and more extensive. Most of PLAN's staff work for approximately 12-week placements. As part of these placements, PLAN staff are educated through various presentations, materials, and trainings about prisoners' rights generally. As a result of *Higgin III*, PLAN has had to revise its education strategy to provide more tailored information about the rights of incarcerated voters in Delaware and the disenfranchisement caused by the Defendants' inaction. As of the filing of the complaint, PLAN had incurred approximately

$45,000 in costs directly attributable to the impact of *Higgin III*, which it would not otherwise have incurred, that relate to staffing.

10. PLAN incurred numerous costs as part of its establishment and operation of its presence within Delaware, including but not limited to the direct costs of registering to operate in Delaware, insurance coverage for professionals operating in the state, travel and lodging costs for Delaware prison legal visits, additional Delaware legal meetings and staff time allocated to providing these services. But for *Higgin III*, and Defendants' response to it, PLAN would not have incurred any of these costs.

### IMPACT OF *HIGGIN* ON PLAN MEMBERS AND AFFILIATES

11. Because of the risk of criminal prosecution, the work of some of those PLAN members, including prison paralegals and jailhouse lawyers, has been radically altered due to these changes in voting rights, as these members can no longer ethically help eligible incarcerated voters cast ballots. Rather than helping incarcerated voters understand and exercise their voting rights, these members must now caution voters incarcerated in Delaware that the State's assertion that incarcerated voters may still vote absentee after *Higgin III* may not protect them from prosecution.

12. Further, some PLAN members, including prison paralegals and jailhouse lawyers, are not only now unable to help eligible incarcerated voters cast ballots, but their work has also changed in that they now assist with the full-scale, corrective-messaging campaign PLAN has undertaken to ensure eligible incarcerated voters no longer rely on now-outdated information.

13. PLAN members face difficulties in advising eligible incarcerated voters about their ability to exercise their right to vote. They do not wish to advise service recipients to risk violating state law by controverting the plain language of a Delaware Supreme Court holding. PLAN believes that advising eligible incarcerated voters to vote by mail would be advising them to violate the plain language of *Higgin III*.

14. As of the date of the filing of the complaint in this case, approximately 26 of PLAN's 252 incarcerated members and 153 of PLAN's 1,122 incarcerated legal service recipients resided in DDOC facilities.[1] As of the date of this declaration, PLAN has 51 members incarcerated in DDOC facilities.

15. PLAN has continuously had at least one member incarcerated in DDOC facilities since February 2017. PLAN had 19 Delaware members incarcerated in DDOC facilities during the 2022 voting period.

16. PLAN has identified members who will be incarcerated for the entire 2024 voting period and understands that there are members who want to cast ballots during the 2024 voting period. PLAN understands that some members residing in DDOC facilities harbor concerns regarding their ability to cast absentee ballots and the repercussions they may face if they attempt to do so.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 8th day of March, 2024.

_/s/ Paul Stanley Holdorf_
Signature

_Paul Stanley Holdorf_
Paul Stanley Holdorf

---

[1] These figures are not exclusive as a member of PLAN can also be a legal service recipient.