IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PRISONERS LEGAL ADVOCACY )
NETWORK, )
 )
    Plaintiff, )
 )
  v. ) Civ. No. 23-1397-JLH
 )
THE HONORABLE JOHN CARNEY, in )
his official capacity as Governor of the )
State of Delaware, THE HONORABLE )
ANTHONY J. ALBENCE, in his official )
capacity as State Election Commissioner of )
the Delaware Department of Elections, and )
THE HONORABLE TERRA TAYLOR, in )
her official capacity as Acting )
Commissioner of the Delaware Department )
of Correction, )
 )
    Defendants. )

## DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING STANDING AND CERTIFICAITON TO THE DELAWARE SUPREME COURT

**STATE OF DELAWARE
DEPARTMENT OF JUSTICE**

Lynn A. Kelly (#4560)
Kenneth L. Wan (#5667)
Deputy Attorneys General
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
Lynn.Kelly@delaware.gov
Kenneth.Wan@delaware.gov
*Attorneys for Defendants*

Date: July 5, 2024

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

SUMMARY OF ARGUMENT ............................................................................... 2

STATEMENT OF FACTS ..................................................................................... 2

ARGUMENT ........................................................................................................ 3

I.     This Court Lacks Subject Matter Jurisdiction .................................................. 3

     A.    Plaintiff and its Members Lack Standing Under Article III of the Constitution............................................................................................... 3

          1.   Plaintiff and Its Members Have Not and Will Not Suffer a Concrete Injury....4

               a.   Plaintiff's Asserted Organizational Standing Fails to Establish Injury Because its Legal Analysis Misapprehends the Law and the Facts..........5

               b.   Plaintiff Has Not Suffered an Imminent Injury................................7

               c.   Plaintiff's Asserted Associational Standing Fails to Establish Injury Because its Legal Analysis Misapprehends the Law and the Facts..........8

          2.   Any Injury Plaintiff Sustained was Self-Inflicted and Not Traceable to Defendants..................................................................................................10

          3.   To the Extent the Court Finds Injury, the Relief Requested Redresses the Harm..........................................................................................................11

II.    This Court Should Certify the Following Question to the Delaware Supreme Court: Whether an Eligible Incarcerated Voter Falls Under one of the Delaware Constitutional Categories for Absentee Voting?............................................................................................12

     A.  Certification to the Delaware Supreme Court is Proper in this Case Because All Factors Weigh in Favor of Certification...........................................................................12

          1.   The "Importance of the Question' Factor Weighs in Favor of Certification...13

          2.   The 'Whether the Answer to the Question is Unclear and Controls an Issue in the Case' Factor Weighs in Favor of Certification...............................13

3.   The 'Judicial Economy' Factor Weighs in Favor of Certification…………..15

4.   All Arguments Raised by Plaintiff in Footnotes are Without Merit………..16

CONCLUSION.....................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

*10x Genomics, Inc. v. Vizgen, Inc.*, 681 F. Supp. 3d 252 (D. Del. 2023) ......................................16

*303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) ........................................................9, 10

*Albence v. Higgin*, 295 A.3d 1065 (Del. 2022) ................................................................ *passim*

*Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289 (1979) .............................................7

*Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 116 F.3d 1406 (11th Cir. 1997) ...................13

*Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247 (3d Cir. 2014) ................................................7

*Bullock v. Carney*, 463 F. Supp. 3d 519 (D. Del. 2020) ...........................................................9

*Citizens United v. FEC,* 558 U.S. 310 (2010) ..........................................................................8

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .......................................................11

*Common Clause Indiana v. Lawson*, 937 F.3d 944 (7th Cir. 2019) ...........................................5, 6

*Deutscher Tennis Bund v. ATP Tour, Inc.*, 2013 WL 4478033 (D. Del. Aug. 20, 2013)....12,14,15

*Doe v. Wilmington Hous. Auth.*, 568 F. App'x 128 (3d Cir. 2014) ..............................................14

*Donald J. Trump for President, Inc. v. Boockvar*, 502 F. Supp. 3d 899, 912 (M.D. Pa. 2020), *aff'd sub nom. Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania,* 830 F. App'x 377 (3d Cir. 2020) ........................................................................................4

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U. S. 59 (1978) ................11

*Ellison v. American Board of Orthopaedic Surgery*, 11 F.4th 200 (3d Cir. 2021).......................3

*Federal Election Comm'n v. Akins*, 524 U.S. 11 (1998) .................................................4

*Fiat Motors of N. Am., Inc. v. Mayor & Council of City of Wilmington*, 619 F. Supp. 29 (D. Del. 1985) .............................................................................................................17

*Food and Drug Administration v. Alliance for Hippocratic Medicine*, 144 S. Ct. 1540 (2024) ......................................................................................................................3, 5

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ................................................5

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797 (3d Cir. 1989)...............................9

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070 (3d Cir. 1997) ............................16

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083 (9th Cir. 2010) ........................................................................................................................6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...........................................................4, 7, 10

*Macchione v. Coordinator Adm'r in D.C.*, 591 F. App'x 48 (3d Cir. 2014)..................................9

*Marxe v. Jackson*, 833 F.2d 1121 (3d Cir. 1987) ........................................................................9

*McConnell v. FEC,* 540 U.S. 93 (2003) .......................................................................................7

*Miller v. Nissan Motor Acceptance Corp.*, 362 F.3d 209 (3d Cir. 2004) ....................................3

*Nat'l Family Planning & Reprod. Health Ass'n, v. Gonzales*, 468 F.3d 826 (D.C. Cir. 2006) ........................................................................................................................10

*New Jersey Physicians, Inc. v. President of the United States,* 653 F.3d 234 (3d Cir.2011) .........7

*Opinion of the Justices*, 295 A. 2d 718 (Del. 1972) ...............................................................8, 10

*Pac. Emps. Ins. Co. v. Glob. Reinsurance Corp. of Am.*, 693 F.3d 417 (3d Cir. 2012) .........13-14

*Pennsylvania v. New Jersey*, 426 U.S. 660 (1976) .....................................................................11

*Petro-Chem Processing, Inc. v. E.P.A.*, 866 F.2d 433 (D.C. Cir. 1989) ......................................10

*Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440 (1989) .......................................................4

*Rodriquez v. 32nd Legislature of the Virgin Islands*, 859 F.3d 199 (3d Cir. 2017) .......................3

*Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26 (1976) ....................................................

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422 (2007) .....................................3

*Swann v. Secretary of Georgia, et al.*, 668 F.3d 1285 (11th Cir. 2012) ........................................11

*Trump for President, Inc. v. Boockvar*, 481 F. Supp. 3d 476 (W.D. Pa. 2020)...............................4

*United States v. Defreitas*, 29 F.4th 135 (3d Cir. 2022) ...................................................12, 13, 15

*Wersal v. Sexton*, 613 F.3d 821 (8th Cir. 2010), on reh'g en banc, 674 F.3d 1010 (8th Cir. 2012)...........................................................................................................17

iv

**Statutes and Other Authorities:**

15 *Del*. C. § 5503 .......................................................................................................................2

15 *Del*. C. § 5506 .......................................................................................................................2

15 *Del*. C. § 5512 .......................................................................................................................2

Delaware Supreme Court Rule 41 ................................................................................14, 15, 16

Del. Const. Art. V § 2 ...............................................................................................................4

Del. Const. Art. V § 4A .................................................................................................. *passim*

U.S. Const. Art. III § 2................................................................................................... *passim*

11A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2949
(3d ed.) ...............................................................................................................................9, 10

A. Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers,
17 Suffolk U. L. Rev. 881, 882 (1983) ......................................................................................3

## NATURE AND STAGE OF THE PROCEEDINGS

On December 7, 2023, Plaintiff Prisoners Legal Advocacy Network ("Plaintiff") sued the Governor of Delaware, the State Election Commissioner of the Delaware Department of Elections ("DOE"), and the Commissioner of the Delaware Department of Correction ("DOC"), seeking an order requiring Defendants to install in-person voting machines at DOC facilities in time for the November 2024 general election. D.I. 1. On December 15, 2023, Plaintiff filed its Motion for Early Preliminary Injunction Hearing Date, Preliminary Injunction, and Temporary Restraining Order (the "Motion"), and Opening Brief. D.I. 9,10.

On February 16, 2024, Defendants filed an Answering Brief in Opposition to Plaintiff's Motion for Preliminary Injunction. D.I. 21.

On March 8, 2024, Plaintiff filed a Reply Brief in Support of its Motion for Preliminary Injunction. D.I. 25.

On April 19, 2024, this Court held a hearing on the Motion for Preliminary Injunction.[1]

On June 6, 2024, the Court Ordered the parties to submit supplemental briefing on (i) whether Plaintiff has an injury in-fact that is concrete, fairly traceable to Defendants' conduct, and redressable by the Court; and (ii) if Plaintiff does have standing, whether the Court should certify a question of law to the Delaware Supreme Court and, if so, how that question should be phrased. D.I. 28.

On June 20, 2024, Plaintiff filed a supplemental brief. D.I. 29.  Defendants submit this supplemental brief in response to the Court's June 6, 2024 Order.

---

[1] *See* Hearing transcript, attached hereto as Exhibit A.

## SUMMARY OF ARGUMENT

1.      The Court should dismiss this matter for lack of subject matter jurisdiction as Plaintiff does not have an imminent concrete injury and Plaintiff does not have an injury traceable to Defendants' conduct.

2.      The Court should certify the following question of law to the Delaware Supreme Court: Whether an eligible incarcerated voter falls under one of the Delaware Constitutional categories for absentee voting?

## STATEMENT OF FACTS

Defendants incorporate and rely upon all facts submitted in Defendant's Brief in Opposition to Plaintiff's Motion for Preliminary Injunction. D.I. 21.

Delaware law requires the Attorney General to "personally approve[]" the absentee ballot application prepared by the Delaware Department of Elections. 15 *Del. C.* § 5503(d)(5). *See* Declaration of State Solicitor of the Delaware Department of Justice, Patricia A. Davis, Esquire ("Davis Decl."), ¶ 2.[2]  The Attorney General must also prepare the instructions provided to voters for completing and submitting an absentee ballot (15 *Del. C.* § 5506) and personally approve the envelopes used for absentee voting (15 *Del. C.* § 5512).  *See* Davis Decl., ¶ 3.  Since 2018, the absentee ballot application has stated that the "business or occupation" reason includes "otherwise eligible persons who are incarcerated."  *See* Davis Decl., ¶ 4.  Given the Attorney General's intricate participation in the absentee ballot process regarding incarcerated individuals, the DOJ will not prosecute eligible individuals incarcerated in Delaware Department of Correction facilities for voting or attempting to vote by absentee ballot in the 2024 General Election.  *See* Davis Decl., ¶ 5.

---

[2] *See* Declaration of Patricia A. Davis, attached hereto as Exhibit B.

## ARGUMENT[3]

### I.    This Court Lacks Subject Matter Jurisdiction.

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *see Ellison v. American Board of Orthopaedic Surgery*, 11 F.4th 200, 205 (3d Cir. 2021) *citing Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007).   Article III standing is essential to federal subject matter jurisdiction and is thus "a threshold issue that must be addressed before considering issues of prudential standing." *Miller v. Nissan Motor Acceptance Corp.*, 362 F.3d 209, 221 n.16 (3d Cir. 2004).

### A.    Plaintiff and its Members Lack Standing Under Article III of the Constitution.

"Under Article III of the Constitution, a federal court may exercise judicial power over only actual, ongoing cases or controversies." *Rodriquez v. 32nd Legislature of the Virgin Islands*, 859 F.3d 199, 207 (3d Cir. 2017).   As Justice Scalia memorably said, Article III requires a plaintiff to first answer a basic question: "What's it to you?".   *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 144 S. Ct. 1540, 1554 (2024) *citing* A. Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983).   For a plaintiff to get in the federal courthouse door and obtain a judicial determination of what the governing law is, the plaintiff cannot be a mere bystander, but instead must have a "personal stake" in the dispute. *Id. citing TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).   To establish standing, a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact that is concrete and particularized and actual or imminent, (ii) that the injury likely was caused or

---

[3] The arguments presented herein do not waive any argument presented in Defendant's Answering Brief at D.I. 21.

will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992).  Those specific standing requirements constitute "an essential and unchanging part of the case-or-controversy requirement of Article III."  *Id.*, at 560.

### 1.     Plaintiff and its Members Have Not and Will Not Suffer a Concrete Injury.

The denial of a person's right to vote is typically always sufficiently concrete and particularized to establish a cognizable injury.  *Donald J. Trump for President, Inc. v. Boockvar*, 502 F. Supp. 3d 899, 912 (M.D. Pa. 2020), *aff'd sub nom. Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*, 830 F. App'x 377 (3d Cir. 2020).  This is true regardless of whether such a harm is widely shared.  *Id. citing See Federal Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998) (*citing Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449-50 (1989)).

In this case, historically, eligible incarcerated voters[4] have voted via absentee ballot either under the physical disability classification or the business or occupation classification to incarcerated individuals.  D.I. 22, ¶ 3.  Since 2018, the Department of Elections absentee ballot has stated that the "business or occupation" reason includes "otherwise eligible persons who are incarcerated."  D.I. 22, ¶ 4.  During the 2022 general election, the DOE received four absentee ballots from incarcerated individuals.  D.I. 22, ¶ 6.  Thus, eligible incarcerated voters are clearly able to vote through absentee ballots.  As such, this is not a case where standing has been established due to eligible incarcerated voters being denied a right to vote.

---

[4] "Eligible incarcerated voters", as referred to herein, encompasses pretrial detainees and those who are convicted of misdemeanors.  *See* Del. Const. Art. V § 2.

a. **Plaintiff's Asserted Organizational Standing Fails to Establish Injury Because its Legal Analysis Misapprehends the Law and the Facts.**

Instead, Plaintiff argues that standing has been established based on organizational standing. D.I. 29 at 2-3. Organizational standing may be satisfied where an organization must divert its resources away from aims core to its organizational activities because of a defendant's conduct or inaction, harming its organizational mission. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). Plaintiff cites *Havens* as a basis to argue that Plaintiff has standing to sue on its behalf based on the time and resources expended following the decision in *Albence v. Higgin*, 295 A.3d 1065 (Del. 2022) and Defendant's lack of installation of in-person voting machines shortly thereafter. D.I. 29 at 2. However, just weeks ago, the Supreme Court clarified that *Havens's* unusual facts did not support a categorical rule allowing standing whenever an organization diverts its resources in response to a defendant's actions. *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 144 S. Ct. 1540, 1564 (2024) (distinguishing *Havens* because the organization's housing counseling service was directly harmed by defendants' actions of giving the plaintiff organization's employees false information about apartment complexes). In short, *Alliance for Hippocratic Medicine* creates uncertainty over when a plaintiff's own choice to spend money can give it standing to challenge a government action that allegedly caused the expenditure.

Plaintiff also cites *Common Clause Indiana v. Lawson*, 937 F.3d 944 (7th Cir. 2019) asserting that a voting law can injure an organization enough to give it standing by compelling it to devote resources to combatting the effects of that law that are harmful for the organization's mission. *Common Clause* dealt with a voting law that required election officials to cancel a voter's registration upon finding a match through the third-party system that confirmed a voter was registered in more than one state. *Id. Common Clause* found concrete injury from the time and

expenses that the plaintiff organizations would be required to dedicate to alleviate the harmful effects of the voting law. *Id.* at 952. *Common Clause* is distinguishble from this case because *Common Clause* addressed a voting law on point to plaintiff's claimed injury, which is flagrantly absent here.

In this case, Plaintiff's claimed organizational injury is time and expenses to communicate to its members Plaintiff's own understanding of a 2022 Delaware Supreme Court case, *Albence v. Higgin*, 295 A.3d 1065 (Del. 2022). *Higgin* struck down the vote-by-mail statute. Plaintiff interprets *Higgin* to mean that eligible incarcerated voters are prohibited from voting via absentee ballot. Plaintiff's entire case, including standing, is based upon the *Higgin* rationale that the Article V, § 4A of the Delaware Constitution absentee voter classifications exclude additional classifications. *Higgin* at 1094. Plaintiff then extrapolates that because Article V, § 4A of the Delaware Constitution does not specifically list "eligible incarcerated voters" that eligible incarcerated voters are not included in the scope of any of the Article V, § 4A classifications and are, therefore, prohibited from voting absentee.

Although *Higgin* discussed absentee voting under Article V, § 4A of the Delaware Constitution, *Higgin* did not address the central legal issue in this case, which Plaintiff has simply ignored in its papers: Does one's status as an incarcerated individual fall under one of Section 4A's enumerated categories for absentee voting? Plaintiff's misinterpretation of *Higgin* and its application to the issue before this Court is no more than an abstract concern that should not form the basis of "concrete injury" for standing. *See Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 (1976) (an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete and particular injury required by Art. III), *see also La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th

6

Cir. 2010) (an organization cannot manufacture the injury by ... simply choosing to spend money fixing a problem that otherwise would not affect the organization at all).

Moreover, Plaintiff conceded at oral argument on April 19, 2024, that the dispute here is whether eligible incarcerated prisoners are included in one of the Delaware Constitutional and categories.[5]  Plaintiff also agreed that there are no Delaware cases or pending challenges that control the issue.[6]  As such, Plaintiff's claims are based upon a premise that simply does not exist because no Delaware law applies to prohibit eligible incarcerated voters from voting absentee.  *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 285 (3d Cir. 2014) (rejecting organizational standing for an African-American parent group because "simply choosing to spend money fixing a problem that otherwise would not affect the organization at all" is not enough for standing).

### b.  Plaintiff Has Not Suffered an Imminent Injury.

As stated above, eligible incarcerated voters have historically been able to vote absentee. As such, there has been no immediate loss of the right to vote following *Higgin*.

Any alleged injury in this case fails the second element of injury because injury is not presently occurring or imminent.  *New Jersey Physicians, Inc. v. President of the United States,* 653 F.3d 234, 238 (3d Cir.2011) (citing *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, (1979)) (the second requirement of injury is actual or imminent, not conjectural or hypothetical, and requires that if a harm is not presently or actually occurring, the alleged future injury must be sufficiently "imminent."  Imminence is "somewhat elastic," *Lujan,* 504 U.S. at 564 n. 2, but requires the plaintiffs "demonstrate a *realistic danger* of sustaining a direct injury").  The Supreme Court has indicated that there may be a temporal component to imminence's probabilistic

---

[5] *See* Exhibit A, p. 6-13 to 7-25.
[6] *Id.*

limitation. *McConnell v. FEC,* 540 U.S. 93, 226 (2003) (holding that an alleged injury in fact that will not occur for at least six years "is too remote temporally to satisfy Article III standing"), *overruled on other grounds, Citizens United v. FEC,* 558 U.S. 310 (2010).

It is important to note that the *Higgin* rationale, relied upon by Plaintiff, has been in place for over 50 years. Specifically, a 1972 *Opinion of the Justices* first held that the categories for absentee voting enumerated under Section 4A are "exhaustive" and excluded the addition of further categories absent constitutional amendment. *Higgin* at 1093-94; *see also Opinion of the Justices*, 295 A. 2d 718, 722 (Del. 1972). As such, that elemental holding that Plaintiff asserts was the catalyst of Plaintiff's injury in 2022 is, instead, a long-standing rule of law and unable to provide a basis for an imminent injury. In addition, since it has been conceded by Plaintiff that there is no Delaware law prohibiting eligible incarcerated voters from voting absentee[7], there is no imminent threat of injury.

### c. Plaintiff's Asserted Associational Standing Fails to Establish Injury Because its Legal Analysis Misapprehends the Law and the Facts.

Plaintiff asserts associational standing to meet its burden of proving injury in this case. D.I. 29 at 3. Plaintiff argues that its prison paralegals and jailhouse lawyers are no longer able to discharge their core responsibilities because of Defendants' conduct and that Plaintiff's members will face potential voter challengers resulting in disenfranchisement. D.I. 29 at 3-7.

Plaintiff's arguments for associational standing are necessarily based on the same faulty legal conclusion from *Higgin* and the same misapprehension of the issue. For the reasons set forth above, Plaintiff's associational standing also fails.

---

[7] *See* Exhibit A, p. 6-13 to 7-25.

Plaintiff's references to criminal prosecutions of voters in other states are misplaced, as are Plaintiff's hypothetical concerns about challenges to ballots.  Here, the Delaware Department of Justice affirmatively represented, in view of the state's absentee voting policies and laws, it would not prosecute any eligible inmates or detainees for voting via absentee ballot.  *See* Davis Declaration, Exhibit B.  Indeed, the Attorney General personally approves the absentee ballot application and related materials.  *Id.*  Moreover, the DOE and DOC have repeatedly confirmed that the agencies would continue to facilitate absentee voting by eligible inmates and detainees.  D.I. 11.1, 11.2, 11.3.

Finally, Plaintiff has not established that any other person has interest in and is likely to challenge these ballots; this is pure speculation.  "The irreparable harm alleged must be actual and imminent, not merely speculative."  *Macchione v. Coordinator Adm'r in D.C.*, 591 F. App'x 48, 49 (3d Cir. 2014).   Plaintiff must show that a preliminary injunction is "the only way of protecting the plaintiff from harm."  *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).   Plaintiff must also "produce affirmative evidence indicating that [it] will be irreparably harmed should that relief be denied."  *Marxe v. Jackson*, 833 F.2d 1121, 1127 (3d Cir. 1987).  "[A]ttorney argument cannot establish a showing of irreparable harm."  *Bullock v. Carney*, 463 F. Supp. 3d 519, 524 (D. Del. 2020); *see also id.* at 525 ("Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction." (quoting 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2949 at 237 (3d ed.))).

Plaintiff points to *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) wherein the Supreme Court held that a website designer had standing to seek an injunction against Colorado based purely on a hypothetical threat of action.  However, the Supreme Court's decision in *303 Creative* contains

no discussion of standing, let alone any modification of the standing doctrine described in its prior cases. As such, *303 Creative LLC* does not further this Court's analysis on the issue of standing.

### 2.      Any Injury Plaintiff Sustained was Self-Inflicted and Not Traceable to Defendants.

Article III demands that there be a causal connection between the injury and the conduct complained of, meaning the injury must be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court. *Lujan*, at 560. A self-inflicted harm, an injury largely of plaintiff's own making, is neither an 'injury' cognizable under Article III, nor an injury that is "fairly traceable to the defendant's challenged conduct". *Nat'l Family Planning & Reprod. Health Ass'n, v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006). In other words, an injury that is "so completely due to the [plaintiff's] own fault as to break the causal chain" is not fairly traceable to the defendant's conduct, and thus cannot be the basis for Article III standing to sue. *Petro-Chem Processing, Inc. v. E.P.A.*, 866 F.2d 433, 438 (D.C. Cir. 1989) (quoting 13 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3531.5 (2d ed. 1984)).

Plaintiff asserts that Defendants' failure to implement in-person voting in prisons following *Albence v. Higgin*, 295 A.3d 1065 (Del. 2022) created confusion among eligible incarcerated voters and legal uncertainty for advocates advising these voters about their rights. D.I. 29 at 3. Plaintiff's argument fails because, as set forth above, *Higgin* simply reaffirmed a 50-year holding set forth in the *Opinion of the Justices*. *Higgin* at 1093-94; *see also Opinion of the Justices* at 722. In addition, there is no Delaware law prohibiting absentee voting by eligible incarcerated voters.

As such, Plaintiff's demand for in-person voting following *Higgin* was based on its own misunderstanding of the law and Plaintiff's subjective fear. Plaintiff's unilateral response to revise

Plaintiff's legal advice, revise trainings for Plaintiff's staff, revised Plaintiff's guidance to incarcerated voters, invest in software, increase publication, and increase frequency of meetings were actions and costs suffered at Plaintiff's uninformed and independent choice. *See Pennsylvania v. New Jersey*, 426 U.S. 660 (1976) (unilateral decisions by a group of plaintiff States to reimburse their residents for taxes levied by other States did not establish standing to attack the legality of those taxes because nothing in the challenged taxes required the plaintiff States to offer reimbursements; accordingly, the financial injury those States suffered was a self-inflicted response to taxes levied on others); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) (plaintiffs' self-inflicted injuries are not fairly traceable to the defendant's purported activities under § 1881a, and their subjective fear of surveillance does not give rise to standing); *see also Swann v. Secretary of Georgia, et al.*, 668 F.3d 1285, 1289 (11th Cir. 2012) (finding no causation of plaintiff's alleged injury of not receiving an absentee ballot because plaintiff himself failed to include his incarceration address when applying for an absentee ballot). As such, Plaintiff is unable to trace any injury to Defendant's conduct.

      **3.**      **To the Extent the Court Finds Injury, the Relief Requested Redresses the Harm**

Redressability is a likelihood that a court ruling in plaintiff's favor would remedy their injury. *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U. S. 59, 79 and n. 20 (1978).

Here, Plaintiff seeks a mandatory injunction against Defendants in the proposed order: "the defendants are temporarily restrained and enjoined from failing, or refusing, to provide in person polling places for voting at Delaware Department of Corrections facilities to eligible incarcerated voters." D.I. 9-1 at 2.

Plaintiff's papers assert that the alleged injuries were incurred because eligible incarcerated voters are prohibited from voting absentee.  Again, this assertion is without merit because Plaintiff conceded that there is no Delaware law prohibiting eligible incarcerated voters from voting absentee.[8]  Because Defendants dispute Plaintiff's theory of injury, Defendants dispute that any injury exists to be redressed.  To the extent the Court agrees with Plaintiff's theory of injury, Defendants do not dispute that a preliminary injunction would suffice as a remedy under the redressability prong of standing.

II.   **This Court Should Certify the Following Question to the Delaware Supreme Court:  Whether an Eligible Incarcerated Voter Falls Under One of the Delaware Constitutional Categories for Absentee Voting?**

A.   **Certification to the Delaware Supreme Court is Proper in this Case Because All Factors Weigh in Favor of Certification.**

"The [C]ourt has discretion to certify questions of Delaware law to the Delaware Supreme Court." *Deutscher Tennis Bund v. ATP Tour, Inc.*, 2013 WL 4478033, at *1 n.1 (D. Del. Aug. 20, 2013).  In deciding whether to certify a question to a state's high court, the District Court generally considers the follow factors: (1) whether the answer to the question is unclear and controls an issue in the case, (2) the importance of the question, and (3) judicial economy.  *United States v. Defreitas*, 29 F.4th 135, 141-42 (3d Cir. 2022).  These factors are not exhaustive. *Id.* at 142. Further, while the presence of any one factor is not *per se* dispositive, "the presence of even one may weigh on the decision to certify." *Id.* at 142-43.  All three factors weigh in favor of certification.

---

[8] *See* Exhibit A, p. 6-13 to 7-25.

1. <u>**The 'Importance of the Question' Factor Weighs in Favor of Certification.**</u>

Notably, Plaintiff fails to even address this factor in their Supplemental Brief, and for good reason: their own case law holds against their position. Plaintiff relies on *Defreitas*. D.I. 29 at 15. Plaintiff, however, fails to completely acknowledge that *Defreitas* held that, in considering the importance of the question, "open questions of state constitutional law should nearly always be left to the state courts." *Id.* at 142 (citation omitted). The court found that it was "imperative that any state constitutional law issues … be decided by the state supreme court." *Id.* (citing *Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 116 F.3d 1406, 1413 (11th Cir. 1997).

In this case, the importance factor weighs in favor of certification because the question directly concerns Delaware Constitutional law. Indeed, the main issue of this matter is whether Delaware's State Constitution allows absentee voting for eligible incarcerated voters. Because the question concerns the interpretation of state constitutional law, it should be decided by the Delaware Supreme Court. Therefore, this factor weighs in favor of certification. Further, this factor alone warrants certification because the Third Circuit found that questions of state constitutional law should be decided by state courts and the presence of any one factor may warrant certification. *Defreitas*, at 142-143.

2. **The 'Whether the Answer to the Question is Unclear and Controls an Issue in the Case' Factor Weighs in Favor of Certification.**

While "[c]ertifying a question where the answer is clear is inappropriate and unnecessary… certifying a question is appropriate if we determine that we cannot predict how a state court would rule." *Id.* at 141. "Predicting the substance of state law in the absence of a controlling opinion from that state's highest court is an uncomfortable consequence of [the District Court's] diversity jurisdiction." *Pac. Emps. Ins. Co. v. Glob. Reinsurance Corp. of Am.*, 693 F.3d 417, 436 (3d Cir. 2012). "Such speculation intrudes on the lawmaking function of that state court and creates a

13

fundamental incompatibility ... with the most basic principles of federalism because judges who are not selected under the state's system and who are not answerable to its constituency are undertaking an inherent state court function." *Id.* (citation and internal quotation marks omitted).

Importantly, "certification is appropriate [for] questions of first impression." *Id.* at 142. (citing Delaware Supreme Court Rule 41)[9].  It is further appropriate when no Delaware authority has definitively addressed the issue.  *Deutscher Tennis Bund*, 2013 WL 4478033, at *1 n.1; *see also, Doe v. Wilmington Hous. Auth.*, 568 F. App'x 128 (3d Cir. 2014) ("Because the [issue] raised unresolved questions of Delaware constitutional law … we asked the Delaware Supreme Court to accept certification.").

In the instant case, certification is appropriate because the issue is a matter of first impression.  There is no definitive Delaware law addressing the issue of whether absentee voting by eligible incarcerated voters is permissible under the Delaware Constitution. Plaintiff attempts to argue that *Higgin* already ruled on the issue. D.I. 29 at 16-17. This argument fails in a number of ways.  First, *Higgin* has nothing to do with absentee voting by eligible incarcerated individuals.  Rather, *Higgin* ruled on the validity of same-day voter registration and voting by mail. 295 A.3d at 1094, 1097.  In short, *Higgin* found that Article V, § 4A of the Delaware Constitution does not allow general absentee voting by those who were eligible to vote in-person but chose not to.  *Id.* at 1090-91.  That is far from the issue at hand because eligible, incarcerated individuals cannot vote in person given their incarceration.  Further, as this Court noted, *Higgin* only found that Article V, § 4A of the Delaware Constitution cannot be enlarged, but did not rule on its scope.[10] Therefore, this factor also weighs in favor of certification.  Additionally, this Court has found

---

[9] While the opinion indicates Rule 31, that appears to be a typographical error as Rule 31 does not concern certification.

[10] Exhibit A, p. 34-13 to 34-17.

14

certification appropriate when the first two factors alone weigh in favor of certification. *Deutscher Tennis Bund*, 2013 WL 4478033, at *1 n.1.

### 3.   The 'Judicial Economy' Factor Weighs in Favor of Certification.

"[C]onsideration of judicial economy encompasses the actions of the parties as well as the cost effectiveness of certification." *Defreitas*, 29 F.4th at 142. "[W]hile such concerns may not be as weighty as federalism concerns, they are necessary to ensure that certification remains an efficient method to resolve disputes instead of a delay tactic in the hands of sophisticated litigants. *Id.* Here, there is no indication, nor could there be, of any delay tactic by Defendants.

Plaintiff argues that the Delaware Supreme Court could reject the certification. D.I, 29 at 25-26.  This is pure speculation.  Further, the issue at hand fits squarely into two criteria for certification provided by the Delaware Supreme Court.  Delaware Supreme Court Rule 41 provides the following reasons for accepting certification:

> (i) Original question of law. —The question of law is of first instance in this State;
>
> (ii) Conflicting decisions. —The decisions of the trial courts are conflicting upon the question of law;
>
> (iii) Unsettled question. —The question of law relates to the constitutionality, construction or application of a statute of this State which has not been, but should be, settled by the Court.

This issue at hand fits into both the first and third reasons for certification. Thus, rejection is unlikely.

Plaintiff also argues that the Delaware Supreme Court may not answer the question in time for the general election. D.I. 29 at 18.  This argument is unavailing as Plaintiff created this delay. *Higgin* was decided on December 13, 2022.  Plaintiff could have filed a complaint any time thereafter, but waited nearly a year and filed their complaint on December 7, 2023. D.I. 1.

15

Plaintiff further argues that Defendants delayed the issue by taking no action after the *Higgin* decision. D.I. 29 at 18.   Defendants believe that eligible incarcerated individuals are in fact eligible to vote absentee, without any change in that status after *Higgin*.[11] Thus, it makes little sense for Defendants to change conduct with respect to eligible incarcerated people after *Higgin* when Defendants believed there was nothing to act upon.  In short, Plaintiff misapprehends *Higgin* to prohibit absentee voting by eligible incarnated individuals.  Plaintiff is attempting to remedy a wrong of its own creation and misunderstanding.  Any delay is attributed to Plaintiff.

### 4.   All Arguments Raised by Plaintiff in Footnotes are Without Merit.

Plaintiff attempts to raise several arguments in footnotes. DI. 29 at 15 n.7, 17 n.9, 19 n. 10, 11.  Arguments raised in footnotes are forfeited and should not be considered. *10x Genomics, Inc. v. Vizgen, Inc.*, 681 F. Supp. 3d 252, 270 (D. Del. 2023).  Indeed, "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997).  Therefore, any arguments Plaintiff raises in footnotes should be rejected.

If the Court considers Plaintiff's footnote arguments, Plaintiff's footnotes arguments fail. Plaintiff attempts to argue the Defendants waived any argument for certification. DI. 29 at 19 n. 10.  However, this Court may *sua sponte* certify a question the Delaware Supreme Court. Delaware Supreme Court Rule 41.  Thus, the argument fails.

Plaintiff attempts to argue that because abstention is improper, so is certification. DI. 29 at 15 n.7.   Plaintiff cites no applicable case law for that position.  In fact, review of the case law provides that abstention and certification are very different.  "Certification… is very different from abstention in one important respect." *Fiat Motors of N. Am., Inc. v. Mayor & Council of City of*

---

[11] Exhibit A at 23-15 to 23-25.

*Wilmington*, 619 F. Supp. 29, 33 (D. Del. 1985). "[C]ertification merely stays the exercise of jurisdiction while abstention divests the court of jurisdiction." *Id.* "In view of this major difference, the [United States] Supreme Court has understandably indicated that the requisite conditions for certification are far less onerous than the conditions which would justify abstention in a diversity case." *Id.* Plaintiff's argument that certification is improper because abstention is improper is without merit under the law. In addition, there has been no ruling on abstention in this matter to date. As such, Plaintiff's argument also fails based on the record in this case.

Plaintiff's footnote argument that Defendant's failure to seek an advisory opinion should prevent certification is also unpersuasive. D.I. 29 at 19, n.11. Plaintiff's cited law is unavailing because the advisory opinion in *Wersal* concerned ripeness of a claim. *Wersal v. Sexton*, 613 F.3d 821, 830 (8th Cir. 2010), *on reh'g en banc*, 674 F.3d 1010 (8th Cir. 2012). In *Wersal*, the court noted that plaintiff did not need to seek a "pre-enforcement advisory opinion" to bring a First Amendment claim. *Id.* The actual quote Plaintiff cites states as following: "the appellees could very easily have drafted an advisory opinion in response to this litigation indicating that the clause would not be applied to a candidate's solicitation of funds for his own campaign. That the appellees did not to do so indicates that the clause more than likely does apply." *Id.* The *Wersal* court found that government officials could have issued an advisory opinion to halt the litigation. *Id.* *Wersal* does not hold that a parties' failure to seek an advisory opinion should prevent certification, as Plaintiff argues. As such, this argument, along with all of Plaintiff's footnote argument are without merit.

17

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss this matter for lack of subject matter jurisdiction or, in the alternative, that the Court certify the following question of law to the Delaware Supreme Court: Whether an eligible incarcerated voter falls under one of the Delaware Constitutional categories for absentee voting?

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

*/s/ Lynn A. Kelly*
Lynn A. Kelly (#4560)
Kenneth L. Wan (#5667)
Deputy Attorneys General
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
Kenneth.Wan@delaware.gov
Lynn.Kelly@delaware.gov
*Attorneys for Defendants*

Date: July 5, 2024

18