# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PRISONERS LEGAL ADVOCACY NETWORK, Plaintiff,

v.

CARNEY, et al., Defendants.

C.A. No. 23-1397-JLH

Friday, April 19, 2024
1:00 p.m.
Courtroom 6C

844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE JENNIFER L. HALL
United States District Court Judge

APPEARANCES:

ACLU OF DELAWARE
BY: DWAYNE J. BENSING, ESQ.
BY: ANDREW BERNSTEIN, ESQ.

Counsel for the Plaintiff

APPEARANCES CONTINUED:

DELAWARE DEPARTMENT OF JUSTICE,
BY: LYNN KELLY, ESQ.
BY: KENNETH WAN, ESQ.

Counsel for the Defendant

-----------------------------

12:59:47

12:59:47 COURT CLERK: All rise. The United States

12:59:48 District Court for the District of Delaware is now in

12:59:51 session. The Honorable Jennifer L. Hall presiding.

12:59:54 THE COURT: Hi, everyone. Please be seated.

12:59:58 All right. We're here in courtroom 6C because Judge Fallon

13:00:03 is picking a jury in courtroom 6D for my trial next week, so

13:00:07 we're playing musical courtrooms a little bit.

13:00:10 We're here today to hear oral argument on a

13:00:13 motion for a preliminary injunction. This is Prisoners

13:00:17 Legal Advocacy Network versus Carney, et al., civil action

13:00:22 number 23-1397.

13:00:24 Let's go ahead and put our appearances on the

13:00:26 record and we'll start with plaintiff.

13:00:31 MR. BERNSTEIN: Good afternoon, Your Honor.

13:00:31 Andrew Bernstein from ACLU Delaware here on behalf of

13:00:40 plaintiff.

13:00:41 THE COURT: Good afternoon. Welcome. All

right. And for defendants.

MS. KELLY: Good afternoon, Your Honor. Lynn Kelly from the Department of Justice on behalf of the defendants. At counsel table with me is Kenneth Wan from the Department of Justice as well.

THE COURT: All right. Good to see everybody. I see a lot of familiar faces in the room today. Okay. I can tell you we've taken a look at the papers. I think we understand what the arguments are. This is your chance to add anything to the arguments you made in your briefings and we also have some questions as well.

Let's hear from the movant.

MR. BERNSTEIN: Thank you, Your Honor. May it please the Court.

Your Honor, we are here because some of the most vulnerable Delawareans --

(Court reporter clarification.)

MR. BERNSTEIN: Is that better?

Your Honor, we are here because some of the most vulnerable Delawareans are at risk of losing their most fundamental right and being totally disenfranchised in the rapidly approaching 2025 general election. More specifically, I am here representing the Prisoners Legal Advocacy Network. PLAN is an organization that has dedicated time and resources towards advancing the voting

rights of incarcerated Delawareans. PLAN is composed of incarcerated legal service recipients who wish to vote in 2024 and jailhouse lawyers and prison paralegals who wish to assist those voters in casting ballots and are currently unable to do so. More than 1,000 Delawareans on pre-trial detention or serving misdemeanor convictions are likely facing total disenfranchisement, including PLAN members.

Defendants acknowledge these citizens retain their voting right. However, they plan to only offer these voters unlawful absentee ballots. Delaware law is clear. Article V, Section 4A of the Delaware Constitution is a comprehensive list of those eligible to cast an absentee ballot. Article V, Section 4A does not include incarcerated voters among voters eligible to cast these ballots.

(Court reporter clarification.)

MR. BERNSTEIN: Would you like me to start over from the beginning?

THE COURT: No. We're good.

MR. BERNSTEIN: Because these voters are not being offered any option to vote other than absentee ballots, they are facing total disenfranchisement offending the fundamental right to vote and constitute an unconstitutional discrimination under the Equal Protection Clause. This total disenfranchisement constitutes a harm to the public interest and an irreparable injury that is

greater than any interest the state has put forward at this time that it may shoulder by remedying it.

We respectfully ask this Court to grant our motion for a preliminary injunction and mandate in-person voting opportunities to be provided to incarcerated Delawareans.

Your Honor, I can field any questions you may have, otherwise I am prepared to proceed with my argument.

THE COURT: Why don't you go ahead and I'll ask the questions as they come up.

MR. BERNSTEIN: I will start, Your Honor, with the likelihood of the success on the merits prong of the preliminary injunction standard with the right to vote claim. The Supreme Court has made clear that the fundamental right to vote applies with equal force to incarcerated individuals.

THE COURT: Okay. That's not disputed by defendants.

MR. BERNSTEIN: Yes, undisputed in this matter. And also undisputed in this matter is the *Anderson* verdict framework is the analysis that applies to this fundamental right to vote claim. The *Anderson* verdict framework requires that balancing the State's interest put forward imposing an infringement against the character and magnitude of the infringement put forward. Under the Third Circuit

*Mazzo* case, it has been found that a severe burden makes a case subject to strict scrutiny. And the Supreme Court has also found, in cases such as *Rosario*, that instances of total disenfranchisement constitute the severe burden.

THE COURT: Now, that, I guess, is what the dispute is here is has there been a total disenfranchisement? Right? They don't dispute that a total disenfranchisement would be a severe burden, but they're saying there has not been a denial of the right to vote and there won't be. That's the dispute.

MR. BERNSTEIN: Your Honor, yes, that is a dispute here.

THE COURT: Let me ask you. Has there been any indication from the Delaware Supreme Court, any Delaware official or any case or judge in Delaware that suggests that the prisoners may not file absentee ballots.

MR. BERNSTEIN: Your Honor, we have the text of *Higgin III*, which states that the text of Article V Section 4A is exhaustive. Those categories cannot be enlarged or expanded upon in any way. Nowhere in that text will you find an excuse for incarcerated voters to cast an absentee ballot.

THE COURT: Okay. I don't think they dispute that the categories are what they are. The real dispute is whether or not a prisoner falls under one of the Delaware

constitutional and statutory categories. That's the dispute, right?

MR. BERNSTEIN: Yes, Your Honor, that is a dispute. But expanding -- taking any of the enumerated categories in Article 5 Section 4A, it would be quite a stretch to fit incarceration under any of those enumerated exceptions. We have the text of *Higgin III* itself which uses the phrase "workforce" to refer to the business for occupation exception and there are replete examples within the Delaware statutory code of people who are incarcerated not being considered part of the workforce, goes against common usage of the term.

And furthermore, there's just nothing in the *Higgin* opinion that would suggest that -- that would suggest that the State can't expand the text of those categories.

THE COURT: But at the end of the day, let me back up to my question right before that. Which is, is there anyone besides the plaintiff in this case that has suggested or is suggesting that a prisoner doesn't fall under the occupation or business exception? Is there anything out there that makes you worried about that? You're saying that's true. Is there anybody else from Delaware saying that's true?

MR. BERNSTEIN: Your Honor, to our knowledge, there are no pending cases or challenges to that effect.

But what there is is there is an increasing trend of challenges to voters who wish to cast ballots, the increasing trend of criminalization of voting and that has created a chilling effect across the country with regard to --

THE COURT: Have there been any such prosecution is in the State of Delaware?

MR. BERNSTEIN: To our knowledge, Your Honor, no, there have not been.

THE COURT: Let me ask you, what Delaware state statute are your members of the association worried about getting charged with?

MR. BERNSTEIN: Your Honor, there are two statutes, one regarding two challenges to absentee ballots and the other regarding the prosecutions.

THE COURT: Let's talk about the prosecution one first.

MR. BERNSTEIN: Yes, Your Honor. That is Title 15 Section 5128 of the Delaware Code, fraudulent voting statute. I can produce a copy of the statute.

THE COURT: I have it. Which element? Which subsection?

MR. BERNSTEIN: Subsection 7.

THE COURT: Knowingly, willfully or fraudulently does any unlawful act to secure an opportunity for himself

or herself or for any person to vote. So you're saying that the Delaware attorney general would prosecute a prisoner for just applying for an absentee ballot and what would be -- it's hard to imagine that conduct fitting under that section of the statute. Can you explain to me why there's a real worry?

MR. BERNSTEIN: Your Honor, I would respectfully disagree that there is -- that it's speculation to think that a voter could be charged under there. We understand the representations of the attorney general in this matter that they do not have plans to prosecute, but there have been instances across the country where voters have been told that they would not be prosecuted by state officials and were prosecuted anyway.

THE COURT: Those were for prisoners who weren't eligible to vote getting prosecuted for trying to vote when they weren't allowed to vote. Here the voters are eligible to vote, right? Your argument is that it's illegal for them to vote because the Delaware statute allowing them to vote is unconstitutional under Delaware law or that it's not -- that the attorney general shouldn't be accepting the absentee ballots because that's unconstitutional under Delaware law. That's a different, isn't it?

MR. BERNSTEIN: Your Honor, the issue is the eligibility to cast the ballot. No one disputes that

incarcerated individuals retain their voter's rights. But when it comes to who is eligible to cast an absentee ballot, that is disputed and it is the case here that incarcerated voters harbor fears regarding their ability to cast a ballot under the Delaware constitution knowing statutes like this are on the books that could plausibly apply to them. And that extends also to PLAN's prison paralegals, jailhouse lawyers who also potentially under this statute could fear what might -- the potential ramifications of helping an incarcerated voter who is ineligible to cast an absentee ballot cast that ballot.

THE COURT: How did the attorney general or her designee possibly prove that a prisoner or jailhouse paralegal knowingly, willfully or fraudulently, unlawfully helped someone or themselves submitted an absentee ballot? If the attorney -- the application to get the absentee ballot was approved by the attorney general and it's got a check box for I'm currently incarcerated, how is that person knowingly doing an unlawful act to secure their vote?

MR. BERNSTEIN: Your Honor, to the extent that the jailhouse lawyers and prison paralegals are aware of the *Higgin* decision, they would have to weigh the text of the *Higgin* decision on one hand against the pronouncement of the attorney general on the other hand and may make a decision regarding whether or not they're able to continue with their

regular duties as members of the PLAN's organization. This is a burden on both the voters, who might be aware here of the *Higgin* decision and the attorney general pronouncement. It's a burden on the jailhouse lawyers and prison paralegals as well. And this kind of chilling effect is produced not only by the statute we've been talking about, but it's also produced by the absentee ballot challenge statute. Defendants do not contest that the ballot challenges can be brought on an unlimited basis, that there's no limit to how many ballots can be challenged here. The absentee ballot provision or Title 15 Section 5513 states that absentee ballots can be challenged to the same extent that a regular ballot can be challenged.

THE COURT: And we've looked at that. We couldn't figure out to what extent a regular ballot can be challenged. Can you walk us through what the ballot challenge process is because that's not something I'm familiar with?

MR. BERNSTEIN: My understanding, and this is maybe a better question for defendants here, because I also found that confusing, is that the ballot challenge typically would relate to someone's eligibility to cast a ballot and with regard to the actual mechanics of it. I don't know as much on that end.

THE COURT: Okay. And the reason why I'm asking

is, I guess I'm wondering if a ballot gets challenged and challenges this person shouldn't be casting an absentee ballot because notwithstanding it's said on the absentee ballot form that they're casting it because they're incarcerated, but notwithstanding that, but because prisoners shouldn't be casting absentee ballots, then would there be an opportunity for the prisoner or somebody to try to vindicate the right of the prisoner to vote and make -- I guess you may not know the answer to that if you don't know what the process is. Maybe we can hear that from the state.

MR. BERNSTEIN: Yeah, Your Honor, I do not know.

THE COURT: Okay. Let me ask you this. Reading your complaint as well as the preliminary junction motion, the remedy that your after is for the State to provide voting machines at the prison, is that right?

MR. BERNSTEIN: Your Honor, any in-person voting opportunity would, in our clients' mind, resolve the constitutional issue at hand. In person voting machines being implemented in DDOC, Delaware Department of Correction facilities, has been the primary suggested relief here in large part because it's been proven workable in other jurisdictions. Since the filing of the last paper in this argument, an additional jurisdiction has implemented in-person voting in its facility, so the total is now five states and Washington, D.C., having voting in at least some

of their facilities. At those jurisdictions that have those mechanisms in place serve larger populations, in some instances, than are incarcerated in all of Delaware. For example, more individuals voted in the Cook County prison locations than there would be eligible Delawareans incarcerated to vote. So that's been suggested primarily due to its proven workability in other jurisdictions.

THE COURT: I'm wondering if your comment about there may not be that many prisoners in Delaware as an absolute number that would be able to take advantage of this, because there just aren't as many pretrial detainees and convicted misdemeanor defendants in the prison during the election as there are in other districts. Doesn't that cut against the Court ordering a remedy of in person? If I agreed with you that as a matter of state law absentee ballots by pretrial detainees are prohibited, why couldn't the remedy I order be that the state has to give the prisoners absentee ballots?

MR. BERNSTEIN: Your Honor, if I don't address the entire question, I want to make sure I address every point, so let me know.

THE COURT: Right.

MR. BERNSTEIN: But the *O'Brien* case, I think is on point here in the sense that the there the state supreme court made a pronouncement regarding who was eligible to

vote under absentee laws and then the Supreme Court of the United States, in their opinion, said it was not their function to construe those laws differently. Here, we have a definitive construction of Article 5 Section 4A that at this point this court is obligated to follow, that the categories are what they are, they cannot be expanded upon or enlarged in any way and that none of the categories -- and that the categories should be given a reading that sticks to the text, that sticks to what the common understanding or historical understanding of what those categories would be, which is laid out in *Higgin*.

Your Honor, there was a second part to your question that I'm going to get to. Apologies.

Regarding the cutting against our client perhaps that there aren't as many people who would be eligible voters in this jurisdiction, the case law is clear the right to vote is an individual right. The *Frank v. Walker* case that was cited in the briefing has great language to that effect, that even if 99% of those voters aren't eligible to cast a ballot are not included, that there's still -- this court is still obligated to implement remedies and resolve disputes regarding the fundamental right to vote for that remaining 1%.

THE COURT: And I appreciate your comments. I guess what I was more thinking of, if there aren't that many

people that are going to be voting at the prison, shouldn't the Court take into account the State's interests in how much it's going to cost when determining what remedy to order, whether the Court orders absentee ballots be given versus in-person voting. But I want to go back to what you said right after that, which is I think I heard you say that the only relief the Court can order is in-person voting. The Court couldn't remedy an alleged constitutional violation by ordering the State to provide some other means of voting, including absentee ballots? The federal court can't order the state to do that.

THE COURT: My understanding from the *O'Brien* case, Your Honor, is that the Supreme Court decided in that instance that the state supreme court was the final arbiter of what state law was. And here we have a similar determination that has occurred where the Court in *Higgin III* made a final determination regarding the Delaware constitution. The remedy simply has to comply with the Delaware Supreme Court's understanding of the Delaware constitution is my understanding of *O'Brien*.

THE COURT: All right. Okay. Anything else you wanted to add before we here from the other side?

MR. BERNSTEIN: Your Honor, I would just also add, just I think this was addressed in defendant's briefing and we touched on it briefly on a reply, but to the extent

that standing concerns have been brought up in this matter, I would just like to make it clear now that PLAN asserts standing under multiple theories of standing, organizational and associational. They've spent resources on this issue, they have members who are currently estopped from doing there work under the association theory, so I just wanted to make that clear.

THE COURT: And I appreciate you bringing up standing, because I understand your point about that you say there's enough here in terms of is the right plaintiff before the Court. There are -- we take, for purposes of the argument, that PLAN has members that want to vote and want to vote from prison and so there's this question about whether or not they can vote if they're not allowed absentee votes.

There's another aspect of standing, though, that requires that there be an imminent injury. And I'm wondering if that's been met here given that the attorney general has said that they don't plan to prosecute prisoners that attempt to vote absentee as well as all indications are that the absentee application is going to have a check box for prisoners, suggesting that the State plans to provide this opportunity. There's no indications, at least I haven't heard any, that they're not going to.

MR. BERNSTEIN: Your Honor, I would respectfully

point you towards the jailhouse lawyers and prison paralegals who are currently impeded from doing work, that there whole function regarding securing the right to vote of other incarcerated individuals is changed from helping people understand what their rights are -- sorry -- from helping people prepare to cast ballots to helping people understand that there is this confusion now.

THE COURT: So the person telling -- I just want to make sure. The people that are telling prisoners they can't vote, that's coming from your side, not from their side, right?

MR. BERNSTEIN: Your Honor, the people explaining the current situation, the landscape how the right to vote is unstable, how they might not have a right to vote, that is coming from from PLAN.

THE COURT: So that injury is not traceable to those defendants that are before the Court today, right?

MR. BERNSTEIN: Your Honor, I would disagree and say that there wouldn't be a need for that kind of corrective messaging if the State hadn't refused to implement a constitutional guarantee mechanism of voting.

THE COURT: Thank you very much.

MR. BERNSTEIN: Thank you.

MS. KELLY: Good afternoon again, Your Honor. Lynn Kelly on behalf of the defendants.

May it please the Court, Your Honor, defendants respond in opposition of the motion for preliminary injunction and the temporary restraining order requested by this court.

Just a little bit of factual background. It appears that the Court has certainly reviewed all the documents submitted by the parties, but I would just like to highlight some of the facts that were submitted by the commissioner of the department of elections and the commissioner of the department of corrections. Specifically, I think the Commissioner Albence stated that the department of elections has for 40 years under elections policy provided absentee voting to eligible incarcerated people, either through -- definitely by the absentee ballot, but either under the physical disability exception or business and occupation exception under the constitution.

In 2018 that absentee ballot became -- it was essentially drafted so that the business or occupation reason included otherwise eligible persons who are incarcerated and it has continued since 2018. Both commissioners confirm that the agencies have worked together to educate not only the staff, but educate the eligible incarcerated people on the absentee ballot how to go about getting that.

THE COURT: The State agrees that eligible

incarcerated people have the right to vote unless they're precluded by some other conviction or something like that?

MS. KELLY: Yes, Your Honor, I think that eligible incarcerated -- I say eligible, I mean --

THE COURT: They're not convicted of a felony that disqualifies them from voting.

MS. KELLY: That's right.

THE COURT: There's no dispute here that these people have the right to vote.

MS. KELLY: No, that's correct, Your Honor. I believe it's convicted misdemeanor and pretrial detainees. When I say eligible incarcerated people, those are who I'm talking about. And I think Commissioner Albence's declaration also makes clear that the harm to the State should the Court award in-person voting is that $1 million per election cost as well as the cost of resources to staff that in-person voting as well.

I think it's important, before I get into argument, just to --

THE COURT: Is it the State's position, if I agreed with them that the *Higgin* decision absolutely barred incarcerated misdemeanor defendants and pretrial detainees from voting absentee because that's unconstitutional under the state constitution, is it the State's position that the federal court could not order the State to provide absentee

13:27:13 ballots and that that would remedy the constitutional violation?

13:27:22 MS. KELLY: I think it --

13:27:25 THE COURT: Put another way, the plaintiff is saying the only thing I could order is in-person voting in some way. Would you disagree with that?

13:27:34 MS. KELLY: I absolutely disagree with that. I disagree with it -- first of all, this is a case of first impression. *Higgin* did not deal with this issue. *Higgin* has a couple of holdings that I think one of the holdings plaintiff focus on in this case before you, but it's not -- it's a case of first impression. So I absolutely think that for the Court to look at this the first time today and say, well, I have a question about constitutionality, but we're going to award absentee voting to this group of people, absolutely. I don't think the only -- I don't think that's the only option. I think the other option potentially could be to have these people petition for a bail review and be permitted to go before the in-person voting to be escorted, however -- that has never been explored. Other options of voting has never been explored before, because it hasn't had to be. I hope I answered the Court's question.

13:28:46 THE COURT: No. I think my question -- I appreciate that. I think my question is convoluted, but basically what I'm saying, the plaintiff is saying if I find

that there was a constitutional violation, just assuming that that's the case, am I restricted in what type of remedy I can order to stop that constitutional violation? Am I restricted by the Delaware state constitution that says, no absentee ballot voting by prisoners, if they're right that that's what it says, or can I say, no, yes absentee voting by prisoners, I don't care what the Delaware constitution says if it says that it's unconstitutional.

MS. KELLY: I think the Court can hold that absentee ballots are permitted for this group of people. I absolutely think that, and I think that because no Delaware Court or statute has permitted it to date. There's no prohibition to that and I think that's why we're here.

*Albence v. Higgin*, I think is kind of where I want to start with, because this is the catalyst that the plaintiffs argue is the reason that this court -- that this court is considering the case.

In the summer of 2022, Delaware enacted a new statute, the vote-by-mail statute. It became subject of a lawsuit. When the supreme court looked at it in *Albence v. Higgin*, the extrapolated opinion in December of 2022 looked at the entire history of the constitution, reviewed for pages what Delaware has done with the Delaware constitution, reviewing it, amending it, et cetera, And in it's full written opinion, the court determined -- and this is the

holding that the plaintiffs focused on. The categories for absentee voting enumerated under Section 4A are exhaustive and excluded the additional further categories absent constitutional amendment. It's important to note that at the page of the holding, 1093 and 1094, that holding is adopted from the 1972 opinion of the justices. This is not a new holding. It is lifted from 1972, placed in the 2022 decision. For there to be -- and I'll argue this again later. Maybe I don't need to. For there to be an argument now that this December 2022 case is a new holding and we've got to get this before the federal district court for a primarily injunction is just not based in the law. The ultimate holding of the *Higgin* decision, like I said, is that the vote-by-mail statute is unconstitutional.

THE COURT: And the vote-by-mail statute is a different statute than the statute we're talking about here, right?

MS. KELLY: That's correct.

THE COURT: The statute here is the person is eligible to vote by absentee ballot.

MS. KELLY: Is that the --

THE COURT: 502.

MS. KELLY: Absentee -- the absentee voting statute is -- the absentee voting statute is not at issue in this case, Your Honor. I think the policy of the Delaware

Department of Elections in conjunction with the *Higgin* decision is what's being questioned by plaintiff, if I understand the argument presented today. I don't believe that the absentee statue is at issue today. I know that *Albence v. Manella* is challenging permanent absentee voting, but that's ongoing in the Delaware supreme court at this time.

THE COURT: So let me just -- because I want to understand exactly what the State's positions. The Delaware Supreme Court says that the Delaware constitution says that certain categories of people are allowed to vote by absentee ballot and that Delaware legislature can pass laws to facility that, right?

MS. KELLY: Correct.

THE COURT: And the Delaware legislature has passed a law saying that people can vote by absentee ballot and its got a list of people that tracks, but not exactly, the list that's in the constitution. It doesn't say anything expressly about people who are incarcerated, but otherwise eligible to vote. But the executive branch of the Delaware government has always interpreted that absentee ballot statute to include prisoners, either under the business and occupation exception or the disability exception. That's fair?

MS. KELLY: That's correct.

Your Honor, I would like to start with the Pullman Abstention Doctrine. As the Court is aware, the Abstention Doctrine applies the principles of federalism and allows the state courts to decide state law issues. If I understood my peer's argument today, I understood that he conceded under *O'Brien* that this issue is more properly decided by the Delaware Supreme Court. I could have misunderstood his statement, but I understood him to say that a Delaware constitutional issue is more properly decided by the Delaware Supreme Court.

THE COURT: Let me ask you that. They said they were unaware of any cases that were challenging this. Is the State aware of any cases challenging whether or not incarcerated individuals can vote by absentee ballot?

MS. KELLY: I am not aware. Your Honor, I think this is the case of a first impression, as I've stated.

THE COURT: Yeah. And I guess the reason why I'm wondering is, a lot times when we here Pullman, maybe this goes to standing as well. There's just some sort of suggestion that something is going to kind of get worked out in the state court and maybe the federal court shouldn't jump in until the state court has a chance to say, yes, this is what our state law means or this is what it doesn't mean or somebody's actually being prosecuted or somebody's been denied the right to fight. But here I'm abstaining for what

if there's nothing going on?

MS. KELLY: Well, I think -- there is no challenge at the moment with regard -- I really view this case to be a challenge of the department's policies and the department's interpretation of the constitution. This is not a case where the state agency is saying no, you don't have the right to vote. We're giving what we think is proper given the constitutional right to vote. So I'm not aware of any ongoing or pending anything, any challenges to the department's policy to allow these voters to vote absentee.

THE COURT: Would you agree -- if the Delaware Supreme Court said yeah, the Delaware constitution, when it says business or occupation, that includes people who are incarcerated, if they said that, then this case would be over, right?

MS. KELLY: A hundred percent.

THE COURT: Should we just ask them? There's a method by which we can do that.

MS. KELLY: I actually didn't know that, Your Honor. I'm sorry. I had no idea.

THE COURT: Yeah.

MS. KELLY: Is that a certified --

THE COURT: Certified question of law.

MS. KELLY: Right. I have --

THE COURT: I mean, maybe there's an strategic reason one side or the other might not want to do that. And I can think of reasons why that might be, but maybe you don't have such a reason.

MS. KELLY: I don't think that option has been explored by either side and if the other side has explored it, I'm not aware of it. There's not been discussion between the parties about that.

THE COURT: Let me ask you this. Similar to your Pullman Abstention argument, is there a procedure -- now I will demonstrate my lack of knowledge about state procedural law. Is there a procedure by which the plaintiff like the plaintiff we have here today could go to the state court and seek a judgment about whether or not the declaratory judgment or a declaration or something about whether or not prisoner absentee voting is constitutional?

MS. KELLY: I think certainly in this chancery court there is the same avenue that is before the Court today. It's a primary injunction in chancery court to determine constitutionality of the practice of the Department of Election. So absolutely.

THE COURT: Okay.

MS. KELLY: I think the Court is already aware of the other elements and factors it needs to consider under the Pullman Abstention Doctrine.

I think I would note, the final point I'd make on the Pullman Abstention Doctrine and why the defendants believe it's appropriate here. The reply brief mentions that the Abstention Doctrine should not be applied to voting rights cases and I think the third case they cite goes *CY Development vs. City of Redlands*, but that case actually says that there is no per se civil rights violation exception to the Abstention Doctrine. So to the extent the Court was not inclined to use that doctrine in this case with regard to voting rights, I don't -- I think the case law is pretty clear that the Court is free to use that doctrine here.

Turning to the preliminary injunction, the merits of the argument and the likelihood of success on the merits, the plaintiff lacks standing here because there is no evidence or affidavit from a member of the organization demonstrating a direct effect. There is, attached to the reply brief, an attorney affidavit that says that PLAN understands that some members in the DDOC facility harbor concerns about their ability to the cast absentee ballots and the repercussions they face if they attempt to do so. This assertion is a concern from the attorney -- well, I'm sorry. A concern from the members signing an affidavit through their attorney. It's not the affidavit that's required for harm. And really we don't have evidence in the

case of that -- of any harm. In fact, the incarcerated -- eligible incarcerated people are provided the right to vote.

With regard to the *Anderson* verdict sliding scale test that was discussed earlier, it's the State's position that is a flexible test because there's no denial of the right to vote. It is a -- it is not a severe burden to the plaintiffs. It's -- because they're granted the right to vote, there is very little burden to the plaintiffs here. And the lesser standard should apply. The State's legitimate state interest is the resources of, as I stated before, the million dollars per election. That certainly outweighs any minimal burden to the plaintiffs in this case.

I wanted to talk briefly about the equal protection violation that's alleged essentially and the reason why we are before the federal district court. According to the briefing, equal protection rights are violated because those who are awaiting trial in DOC custody cannot vote while others who are awaiting trial outside of DOC custody can vote. The difference, according to the plaintiff, is that between those two groups of individuals there's an invalid wealth classification because the people who are incarcerated cannot post bail. The argument also flawed for two reasons. It assumes that the only factor is wealth and that's why they're incarcerated. That's not what the bail analysis requires under Delaware law. Two of the

13:42:17 most important factors under Delaware law is safety of the community and risk of flight. None of the factors deal with wealth.

13:42:27 And also the second reason that it's flawed is a court's bail analysis has nothing to do with the Department of Elections' policies. To the extent there is some differentiation based on wealth, which is not agreed, but to that extent, it's not because of DOE policies, it's, if anything, based on the bail analysis, which again, we don't agree to. So from the defendant's perspective, there is no equal rights violation, there is no differentiation between any group of people and for that reason the likelihood of success on the merits of the equal protection argument would not survive.

13:43:18 The second factor for the preliminary injunction is irreparable harm. Again, I feel like a record here, they have the right to vote. There is no irreparable harm here. Any threat, again, is not imminent, because this law has been, assuming that we're going to use the *Higgin* case to say that the absentee voting is unconstitutional here, that holding has been in effect for over 50 years and the Department of Elections has been conducting voting this way for over 40 years. There is no imminent threat.

13:44:02 And as the Court was questioning earlier, a threat of prosecution, there is also no threat of

prosecution. The Court has stated and I think gets that the attorney general certifies these absentee ballots and the attorney general has also written a letter to plaintiff saying we are not going to prosecute here.

THE COURT: When was that?

MS. KELLY: 2022.

THE COURT: Is the attorney general going to prosecute incarcerated people for trying to vote in 2024?

MS. KELLY: I don't have a recent letter, but I imagine that -- so to the Court's question, I don't have anything of record, but I cannot imagine the position taken in 2022 would be any different today.

THE COURT: So I guess the question is, can -- can't the attorney general just tell the Court that? Wouldn't that make this a lot easier? Is there any reason why the attorney general -- not agreeing -- I'm not asking for the attorney general to say I'm never going to prosecute anyone for voter fraud, but I think it's not that big of an ask to say shouldn't we have an official statement that we are not going to prosecute eligible voters, eligible incarcerated voters who try to vote by absentee ballot? I can't imagine how that could be prosecuted. I can't imagine it, but can't we just have you say that you won't try?

MS. KELLY: So I'm looking at the letter from from November 2022, and I'm hesitating because it was a

letter from the attorney general to Mr. Bensing saying that this office will not prosecute eligible individuals incarcerated in the DDOC facilities for voting or attempting to vote by absentee ballot in the 2022 general election. It's limiting to the 2022 election, but I agree with that that, but I can't imagine that if I made a phone call right now I would be representing anything different. But I certainly, that's not something that I did check before I came in to court.

THE COURT: That might be one of those things that if we had that as evidence of record that that may weigh on how the Court moves forward here.

Okay.

MS. KELLY: Those are all the arguments that I wanted to highlight for the Court. Again, the defendants ask that the Court either abstain or deny the preliminary injunction because plaintiffs have not met their burden here.

Thank you, Your Honor.

THE COURT: Okay. Thank you very much.

MR. BERNSTEIN: Thank you, Your Honor. If I could just address a few points that were made.

I would start by saying it was suggested by the defendants that we said this would be an issue better left in state courts. That is not what we said.

THE COURT: I understand.

MR. BERNSTEIN: Okay. Just to be clear, there was *O'Brien* that said that the state courts are the final arbiters of what state law is.

THE COURT: I understand your position.

MR. BERNSTEIN: Okay. Understood.

So staying on *O'Brien*, the the equal protection claim here, there's also, I think, a mischaracterization of our argument that was made by defendants, in that it is not the fact that individuals have to pay bail that is the issue here, it is the fact that you have two perfectly similarly situated individuals, they're being accused of having committed the same crime, the same factors go into their bail analysis and one has a little more money in its bank account and is able to pay bail and the other one cannot. That under Delaware law one would be allowed to cast -- sorry. One would have a constitutional means of casting a ballot and the other would have no means. It is an open and shut violation of *O'Brien,* which stands for the proposition that your physical location as than eligible incarcerated voter can't be what your right to vote turns on.

THE COURT: So in *O'Brien* the state law was what it was in terms of who could vote. If the state here is correct that the Delaware constitution doesn't bar incarcerated individuals from casting an absentee ballot,

13:48:52 that is dispositive of your equal protection claim, is that right? That claims goes away.

MR. BERNSTEIN: Your Honor, the state doesn't get to decide what the Delaware constitution says.

THE COURT: But the law is what it is. If the law is -- you are taking as a given that it is illegal for incarcerated people to cast absentee ballots. You are taking that as a given. If that's wrong, though, you have no equal protection claim.

MR. BERNSTEIN: Your Honor, while that is the case, it is also very clearly the case under the *Higgin* decision that the Article V Section 4A categories have now been construed such that eligible incarcerated voters are not eligible to cast these absentee ballots.

THE COURT: Well, that is an interpretation you have of the *Higgin* decision. The *Higgin* decision was assessing the vote-by-mail statute, not the absentee ballot statute, right?

MR. BERNSTEIN: Your Honor, the *Higgin* decision analyzed Article V Section 4A of the Delaware constitution. That was with regard to analyzing whether the vote-by-mail statute was constitutional, but their pronouncement regarding what Article V Section 4A means can't be ignored. It is the state court coming out with a definitive ruling expressing what Article V Section 4A is. The defendants try

to cast this as a long-standing holding that was not new, but it certainly was new. If it was understood to be the holding, it certainly caught those who thought the vote-by-mail law was constitutional off guard.

THE COURT: Maybe they didn't, but I get what you're saying. But the holding was that you can't cast an absentee ballot unless you've got an excuse by reason of your business or occupation or you're disabled or some other categories, but the Delaware Supreme Court did not assess what it means to be not able to vote based our business or occupation or disabled. It was not construing what those things mean, right, and it never has?

MR. BERNSTEIN: It has ruled that those categories are exhaustive, that they cannot be enlarged or expanded upon.

THE COURT: Right. Can't be enlarged, but it hasn't ruled on what their scope is, though.

MR. BERNSTEIN: Your Honor, I believe that there's not a distinction there. What they've ruled upon is it's the plain meaning of those statutes. Finding any subcategory or any non-enumerated category that falls within those exceptions would be expanding the category.

THE COURT: Let me ask you this. Why don't we just ask them, then? Do you have an objection to that?

MR. BERNSTEIN: Yes, Your Honor. We've looked

into the certification issue. My understanding -- our understanding regarding the certification is that it would be similarly inappropriate here. One very similar factor in the certification analysis to here is the clarity of the law at issue. And here, as we've stated in our brief and for the reason you've read in our briefing, we do not believe that there is an uncertain issue of state law here. There are judicial economy concerns, they're the same concerns regarding the immediacy of the election. All of those considerations weigh against certification here. And it also is similar to abstention and similar to what I was talking about in *O'Brien* previously, asking the state court to reiterate what they've already said. We've --

THE COURT: Yeah. No, I didn't mean to interrupt you. It is sort of an ironic position that you're in, where the right that you're asserting is the right to vote and the state says nobody is being denied it and you think it's so clear you have been denied it that you don't want me to ask the Delaware Supreme Court to confirm that. There's sort of an irony in that, but you don't have to comment on it if you don't want to.

MR. BERNSTEIN: Your Honor, I would just add to the -- what is happening here is that our -- the people who are incarcerated who wish to vote who have the *Higgin* opinion and can see Delaware laws about challenges to

absentee ballots to prosecutions, they're being asked to shoulder a very severe burden if they want to try to exercise the right to vote through the mechanism given to them by the State. In the interest of giving them clarity as soon as possible, abstention is an appropriate -- as you've said, Your Honor, there's nothing going on in the state courts that would -- that indicates that there is any uncertainty here. And additionally, those voters need clarity as soon as possible.

I would also just like to, on the *Anderson* verdict analysis and address some points that were made by defendants. Defendants cited a $1 million cost estimate. My understanding is that cost estimate was made with early voting baked in and as it currently stands, there is no early voting in Delaware. If my understanding of the cost is correct, over 75% of the costs were solely attributable to the days the polling places would have to be open during early voting, based on my understanding of what the state put forward. That would bring the administrative burden down, by my understanding of defendants math, to around $140,000. This is a minimal administrative burden and under the *Anderson* verdict analysis, far more substantial administrative costs and burdens have been ordered by courts in cases where there's a total denial of the right to vote as there is here. There are also speculative concerns

raised by the State in the briefing regarding the burden under Anderson verdict. And the *Padilla* case, which we cite, makes it clear that the speculative concerns are certainly not enough. And in particular, speculative concern I'm responding to here is the concern of poll worker recruitment. The State, in the declaration of Commissioner Albence, spoke about anticipation of difficulty recruiting pole workers. That is pure speculation at this point, especially in a scenario without early voting whether there would be more poll workers to go around presumably.

I would like to round this out, Your Honor, just by reiterating that what the State is currently offering to eligible incarcerated voters doesn't mean anything if it contradicts the plain language of the state supreme court holding. The state supreme court has the authority to say what the law is and any Delaware voter who is incarcerated who is given an absentee ballot and put in a position where they have to understand that they are checking a box that says my incarceration is a business or occupation, considering that and considering the *Higgin* opinion and considering the applicable criminal statutes, it is clear that their right to vote is severely burdened, that they are facing a chilling effect due to the fact that their vote might not get counted, the fact that they might have their vote challenged, the fact prosecution is even a possibility.

Thank you, Your Honor.

THE COURT: Thank you very much.

All right. Before I leave the bench there's just a couple comments I had.

The first is that I have a real concern that the plaintiff lacks standing, not because it doesn't have a member that wants to vote. I'm going to assume for purposes of the analysis that that's true. I have concern about the imminent injury requirement and I have a concern about the redressability requirement and I have a concern about ripeness.

Those are my main concerns.

And I know that wasn't raised by the state, but because these things go to the Court's subject matter jurisdiction, I think I have an obligation to raise them if I think there's a question. And so in all likelihood, I will be asking for supplemental briefing on the issue of constitutional standing. We had some discussion today about whether it's clear as a matter of Delaware state law that prisoner absentee voting violates the Delaware constitution. And I was certainly hearing from the plaintiff that it's clear that it's not allowed, but I was hearing from the defendants that they have interpreted it as being permitted. And so it's hard to say in this type of a situation that it isn't ambiguous, and so one possibility, when the federal

court is confronted with a situation is to certify the question for the state supreme court. So if the parties are asked and we'll think about whether or not that's something we want to hear from the parties about, we may ask to have you meet and confer, if we determine that there is standing, about what question we might certify to the Delaware supreme court. And we can ask for that on an expedited basis.

The other comment I wanted to make was that these concepts are really very challenging and I was so impressed with the skill of counsel in their arguments today in making it clear for the Court. Everyone was very very well prepared. It's a pleasure hearing from all of you and seeing familiar faces. I hope everybody has a great weekend.

COURT CLERK: All rise.

(Court adjourned at 1:59 p.m.)

---------------------------------

I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceedings.

/s/ Stacy M. Ingram, RPR
Official Court Reporter
U.S. District Court

**$**

**$140,000** [1] - 36:21

**/**

**/s** [1] - 39:23

**1**

**1** [2] - 19:15, 36:12
**1%** [1] - 14:23
**1,000** [1] - 4:5
**1093** [1] - 22:5
**1094** [1] - 22:5
**15** [2] - 8:19, 11:11
**19** [1] - 1:10
**1972** [2] - 22:6, 22:7
**1:00** [1] - 1:11
**1:59** [1] - 39:16

**2**

**2018** [2] - 18:17, 18:20
**2022** [9] - 21:18, 21:21, 22:7, 22:10, 30:6, 30:12, 30:25, 31:4, 31:5
**2024** [3] - 1:10, 4:3, 30:8
**2025** [1] - 3:22
**23-1397** [1] - 2:19
**23-1397-JLH** [1] - 1:5

**4**

**40** [2] - 18:12, 29:23
**4A** [10] - 4:11, 4:13, 6:19, 7:5, 14:4, 22:2, 33:12, 33:20, 33:23, 33:25

**5**

**5** [2] - 7:5, 14:4
**50** [1] - 29:21
**502** [1] - 22:22
**5128** [1] - 8:19
**5513** [1] - 11:11

**6**

**6C** [2] - 1:11, 2:13
**6D** [1] - 2:14

**7**

**7** [1] - 8:23
**75%** [1] - 36:16

**8**

**844** [1] - 1:13

**9**

**99%** [1] - 14:19

**A**

**ability** [2] - 10:4, 27:20
**able** [4] - 10:25, 13:10, 32:15, 34:10
**absent** [1] - 22:3
**absentee** [62] - 4:10, 4:12, 4:20, 6:16, 6:21, 8:14, 9:3, 9:22, 10:2, 10:10, 10:15, 10:16, 11:7, 11:10, 11:11, 12:2, 12:3, 12:6, 13:15, 13:18, 14:1, 15:4, 15:10, 16:14, 16:20, 16:21, 18:13, 18:14, 18:17, 18:23, 19:23, 19:25, 20:15, 21:5, 21:6, 21:10, 22:2, 22:20, 22:23, 22:24, 23:4, 23:5, 23:11, 23:16, 23:21, 24:14, 25:11, 26:16, 27:20, 29:20, 30:2, 30:21, 31:4, 32:25, 33:7, 33:14, 33:17, 34:7, 36:1, 37:17, 38:20
**absolute** [1] - 13:10
**absolutely** [6] - 19:21, 20:7, 20:12, 20:16, 21:11, 26:21
**abstain** [1] - 31:16
**abstaining** [1] - 24:25
**abstention** [2] - 35:11, 36:5
**Abstention** [7] - 24:2, 24:3, 26:10, 26:25, 27:2, 27:4, 27:8
**accepting** [1] - 9:21
**according** [2] - 28:16, 28:19
**account** [2] - 15:2, 32:15
**accurate** [1] - 39:21
**accused** [1] - 32:12
**acknowledge** [1] - 4:8
**ACLU** [2] - 1:22, 2:23
**act** [2] - 8:25, 10:19
**action** [1] - 2:18
**actual** [1] - 11:23
**add** [4] - 3:10, 15:22, 15:24, 35:22
**additional** [2] - 12:23, 22:3
**additionally** [1] - 36:8
**address** [4] - 13:19, 13:20, 31:22, 36:11
**addressed** [1] - 15:24
**adjourned** [1] - 39:16
**administrative** [3] - 36:19, 36:21, 36:23
**adopted** [1] - 22:6
**advancing** [1] - 3:25
**advantage** [1] - 13:10
**ADVOCACY** [1] - 1:4
**Advocacy** [2] - 2:18, 3:24
**affidavit** [4] - 27:16, 27:18, 27:23, 27:24
**afternoon** [4] - 2:22, 2:25, 3:2, 17:24
**agencies** [1] - 18:21
**agency** [1] - 25:6
**agree** [3] - 25:12, 29:10, 31:5
**agreed** [3] - 13:15, 19:21, 29:7
**agreeing** [1] - 30:16
**agrees** [1] - 18:25
**ahead** [2] - 2:20, 5:9
**al** [2] - 1:7, 2:18
**Albence** [5] - 18:11, 21:14, 21:20, 23:5, 37:7
**Albence's** [1] - 19:13
**alleged** [2] - 15:8, 28:14
**allow** [1] - 25:10
**allowed** [5] - 9:17, 16:14, 23:11, 32:16, 38:22
**allowing** [1] - 9:19
**allows** [1] - 24:4
**ambiguous** [1] - 38:25
**amending** [1] - 21:24
**amendment** [1] - 22:4
**analysis** [9] - 5:21, 28:25, 29:5, 29:9, 32:14, 35:4, 36:11, 36:22, 38:8
**analyzed** [1] - 33:20
**analyzing** [1] - 33:21
**Anderson** [6] - 5:20, 5:22, 28:3, 36:10, 36:22, 37:2
**ANDREW** [1] - 1:23
**Andrew** [1] - 2:23
**answer** [1] - 12:9
**answered** [1] - 20:22
**anticipation** [1] - 37:7
**anyway** [1] - 9:14
**apologies** [1] - 14:13
**appearances** [1] - 2:20
**APPEARANCES** [2] - 1:19, 2:1
**applicable** [1] - 37:21
**application** [2] - 10:16, 16:21
**applied** [1] - 27:4
**applies** [3] - 5:15, 5:21, 24:3
**apply** [2] - 10:6, 28:9
**applying** [1] - 9:3
**appreciate** [3] - 14:24, 16:8, 20:24
**approaching** [1] - 3:22
**appropriate** [2] - 27:3, 36:5
**approved** [1] - 10:17
**April** [1] - 1:10
**arbiter** [1] - 15:14
**arbiters** [1] - 32:4
**argue** [2] - 21:16, 22:8
**argument** [14] - 2:16, 5:8, 9:18, 12:23, 16:12, 19:19, 22:9, 23:3, 24:5, 26:10, 27:14, 28:22, 29:13, 32:9
**arguments** [4] - 3:9, 3:10, 31:14, 39:10
**article** [1] - 4:11
**Article** [8] - 4:13, 6:18, 7:5, 14:4, 33:12, 33:20, 33:23, 33:25
**aspect** [1] - 16:16
**asserting** [1] - 35:16
**assertion** [1] - 27:22
**asserts** [1] - 16:2
**assess** [1] - 34:9
**assessing** [1] - 33:17
**assist** [1] - 4:4
**association** [2] - 8:11, 16:6
**associational** [1] - 16:4
**assume** [1] - 38:7
**assumes** [1] - 28:23
**assuming** [2] - 21:1, 29:19
**attached** [1] - 27:17
**attempt** [2] - 16:20, 27:21
**attempting** [1] - 31:3
**attorney** [19] - 9:2, 9:10, 9:21, 10:12, 10:16, 10:17, 10:24, 11:3, 16:18, 27:18, 27:22, 27:24, 30:2, 30:3, 30:7, 30:14, 30:16, 30:17, 31:1
**attributable** [1] - 36:16
**authority** [1] - 37:15
**avenue** [1] - 26:18
**awaiting** [2] - 28:17, 28:18
**award** [2] - 19:15, 20:15
**aware** [8] - 10:21, 11:2, 24:2, 24:13, 24:15, 25:9, 26:7, 26:23

**B**

**background** [1] - 18:5
**bail** [8] - 20:18, 28:22, 28:25, 29:5, 29:9, 32:10, 32:14, 32:15
**baked** [1] - 36:14
**balancing** [1] - 5:23
**ballot** [38] - 4:13, 6:22, 9:3, 9:25, 10:2, 10:4, 10:11, 10:15, 10:17, 11:7, 11:8, 11:10, 11:13, 11:15, 11:16, 11:21, 11:22, 12:1, 12:3, 12:4, 14:20, 18:14, 18:17, 18:23, 21:5, 22:20, 23:12, 23:16, 23:22, 24:14, 30:21, 31:4, 32:18, 32:25, 33:17, 34:7, 37:17
**ballots** [23] - 4:4, 4:10, 4:14, 4:21, 6:16, 8:2, 8:14, 9:22, 11:10, 11:12, 12:6, 13:16, 13:18, 15:4, 15:10, 17:6, 20:1, 21:10, 27:20, 30:2, 33:7, 33:14,

36:1
**bank** [1] - 32:14
**bar** [1] - 32:24
**barred** [1] - 19:21
**based** [5] - 22:12, 29:7, 29:9, 34:10, 36:18
**basis** [2] - 11:9, 39:7
**became** [2] - 18:17, 21:19
**BEFORE** [1] - 1:16
**beginning** [1] - 4:17
**behalf** [3] - 2:23, 3:3, 17:25
**bench** [1] - 38:3
**Bensing** [1] - 31:1
**BENSING** [1] - 1:22
**Bernstein** [1] - 2:23
**BERNSTEIN** [39] - 1:23, 2:22, 3:13, 3:18, 4:16, 4:19, 5:11, 5:19, 6:11, 6:17, 7:3, 7:24, 8:8, 8:13, 8:18, 8:23, 9:7, 9:24, 10:20, 11:19, 12:11, 12:16, 13:19, 13:23, 15:23, 16:25, 17:12, 17:18, 17:23, 31:21, 32:2, 32:6, 33:3, 33:10, 33:19, 34:13, 34:18, 34:25, 35:22
**better** [3] - 3:18, 11:20, 31:24
**between** [3] - 26:8, 28:20, 29:11
**big** [1] - 30:18
**bit** [2] - 2:15, 18:5
**books** [1] - 10:6
**box** [3] - 10:18, 16:21, 37:18
**branch** [1] - 23:20
**brief** [3] - 27:3, 27:18, 35:5
**briefing** [6] - 14:18, 15:24, 28:16, 35:6, 37:1, 38:17
**briefings** [1] - 3:10
**briefly** [2] - 15:25, 28:13
**bring** [1] - 36:19
**bringing** [1] - 16:8
**brought** [2] - 11:9, 16:1
**burden** [13] - 6:1, 6:4, 6:8, 11:2, 11:4, 28:6, 28:8, 28:12, 31:17, 36:2, 36:19, 36:21, 37:1
**burdened** [1] - 37:22
**burdens** [1] - 36:23
**business** [9] - 7:8, 7:20, 18:16, 18:18, 23:23, 25:14, 34:8, 34:10, 37:19
**BY** [4] - 1:22, 1:23, 2:3, 2:3

## C

**C.A** [1] - 1:5
**cannot** [7] - 6:19, 14:6, 28:18, 28:22, 30:11, 32:15, 34:14
**care** [1] - 21:7
**CARNEY** [1] - 1:7
**Carney** [1] - 2:18
**case** [30] - 6:1, 6:2, 6:15, 7:18, 10:3, 13:23, 14:16, 14:17, 15:13, 20:8, 20:11, 20:12, 21:2, 21:17, 22:10, 22:25, 24:16, 25:4, 25:6, 25:15, 27:5, 27:6, 27:9, 27:10, 28:1, 28:12, 29:19, 33:11, 37:2
**cases** [6] - 6:3, 7:25, 24:12, 24:13, 27:5, 36:24
**cast** [18] - 4:12, 4:14, 6:21, 8:2, 9:25, 10:2, 10:4, 10:10, 10:11, 11:22, 14:20, 17:6, 27:20, 32:16, 33:7, 33:14, 34:1, 34:6
**casting** [6] - 4:4, 12:2, 12:4, 12:6, 32:17, 32:25
**catalyst** [1] - 21:15
**categories** [15] - 6:19, 6:24, 7:1, 7:5, 7:15, 14:6, 14:7, 14:8, 14:11, 22:1, 22:3, 23:11, 33:12, 34:9, 34:14
**category** [2] - 34:21, 34:22
**caught** [1] - 34:3
**certain** [1] - 23:11
**certainly** [8] - 18:6, 26:17, 28:11, 31:8, 34:2, 34:3, 37:4, 38:21
**certification** [4] - 35:1, 35:2, 35:4, 35:10
**certified** [2] - 25:23, 25:24
**certifies** [1] - 30:2
**certify** [3] - 39:1, 39:6, 39:20
**cetera** [1] - 21:24
**challenge** [5] - 11:7, 11:17, 11:21, 25:3, 25:4
**challenged** [6] - 11:10, 11:12, 11:13, 11:16, 12:1, 37:25
**challenges** [7] - 7:25, 8:2, 8:14, 11:8, 12:2, 25:9, 35:25
**challenging** [4] - 23:5, 24:12, 24:13, 39:9
**chance** [2] - 3:9, 24:22
**chancery** [2] - 26:17, 26:19
**changed** [1] - 17:4
**character** [1] - 5:24
**charged** [2] - 8:12, 9:9
**check** [3] - 10:18, 16:21, 31:8
**checking** [1] - 37:18
**chilling** [3] - 8:4, 11:5, 37:23
**Circuit** [1] - 5:25
**cite** [2] - 27:5, 37:3
**cited** [2] - 14:18, 36:12
**citizens** [1] - 4:8
**City** [1] - 27:6
**civil** [2] - 2:18, 27:7
**claim** [5] - 5:14, 5:22, 32:8, 33:1, 33:9
**claims** [1] - 33:2
**clarification** [2] - 3:17, 4:15
**clarity** [3] - 35:4, 36:4, 36:9
**classification** [1] - 28:21
**Clause** [1] - 4:24
**clear** [14] - 4:10, 5:14, 14:16, 16:2, 16:7, 19:14, 27:11, 32:2, 35:18, 37:3, 37:21, 38:19, 38:22, 39:11
**clearly** [1] - 33:11
**CLERK** [2] - 2:9, 39:15
**client** [1] - 14:14
**clients'** [1] - 12:17
**code** [1] - 7:10
**Code** [1] - 8:19
**coming** [3] - 17:10, 17:15, 33:24
**comment** [3] - 13:8, 35:21, 39:8
**comments** [2] - 14:24, 38:4
**commissioner** [2] - 18:9, 18:10
**Commissioner** [3] - 18:11, 19:13, 37:6
**commissioners** [1] - 18:21
**committed** [1] - 32:13
**common** [2] - 7:12, 14:9
**community** [1] - 29:2
**complaint** [1] - 12:13
**comply** [1] - 15:18
**composed** [1] - 4:1
**comprehensive** [1] - 4:12
**conceded** [1] - 24:6
**concepts** [1] - 39:9
**concern** [8] - 27:22, 27:23, 37:5, 38:5, 38:8, 38:9, 38:10
**concerns** [7] - 16:1, 27:20, 35:8, 36:25, 37:3, 38:12
**conduct** [1] - 9:4
**conducting** [1] - 29:22
**confer** [1] - 39:5
**confirm** [2] - 18:21, 35:19
**confronted** [1] - 39:1
**confusing** [1] - 11:21
**confusion** [1] - 17:7
**conjunction** [1] - 23:1
**consider** [1] - 26:24
**considerations** [1] - 35:10
**considered** [1] - 7:11
**considering** [4] - 21:17, 37:20, 37:21
**constitute** [2] - 4:22, 6:4
**constitutes** [1] - 4:24
**constitution** [17] - 10:5, 15:18, 15:20, 18:16, 19:24, 21:4, 21:7, 21:22, 21:23, 23:10, 23:18, 25:5, 25:13, 32:24, 33:4, 33:20, 38:20
**Constitution** [1] - 4:11
**constitutional** [15] - 7:1, 12:18, 15:8, 17:21, 20:1, 21:1, 21:3, 22:4, 24:9, 25:8, 26:16, 32:17, 33:22, 34:4, 38:18
**constitutionality** [2] - 20:14, 26:20
**construction** [1] - 14:4
**construe** [1] - 14:3
**construed** [1] - 33:13
**construing** [1] - 34:11
**contest** [1] - 11:8
**continue** [1] - 10:25
**CONTINUED** [1] - 2:1
**continued** [1] - 18:20
**contradicts** [1] - 37:14
**convicted** [3] - 13:12, 19:5, 19:11
**conviction** [1] - 19:2
**convictions** [1] - 4:6
**convoluted** [1] - 20:24
**Cook** [1] - 13:4
**copy** [1] - 8:20
**correct** [6] - 19:10, 22:18, 23:14, 23:25, 32:24, 36:16
**Correction** [1] - 12:19
**corrections** [1] - 18:10
**corrective** [1] - 17:20
**cost** [6] - 15:3, 19:16, 36:12, 36:13, 36:15
**costs** [2] - 36:16, 36:23
**counsel** [2] - 3:4, 39:10
**Counsel** [2] - 1:24, 2:4
**counted** [1] - 37:24
**country** [2] - 8:4, 9:12
**County** [1] - 13:4
**couple** [2] - 20:10, 38:4
**court** [28] - 13:25, 14:5, 14:21, 15:10, 15:14, 18:4, 19:25, 21:16, 21:17, 21:20, 21:25, 22:11, 23:6, 24:21, 24:22, 26:14, 26:18, 26:19, 28:15, 31:9, 33:24, 35:12, 37:14, 37:15, 39:1, 39:2, 39:7

**COURT** [67] - 1:1, 2:9, 2:12, 2:25, 3:6, 4:18, 5:9, 5:17, 6:5, 6:13, 6:23, 7:16, 8:6, 8:10, 8:16, 8:21, 8:24, 9:15, 10:12, 11:14, 11:25, 12:12, 13:8, 13:22, 14:24, 15:12, 15:21, 16:8, 17:8, 17:16, 17:22, 18:25, 19:5, 19:8, 19:20, 20:4, 20:23, 22:15, 22:19, 22:22, 23:8, 23:15, 24:11, 24:17, 25:12, 25:18, 25:22, 25:24, 26:1, 26:9, 26:22, 30:5, 30:7, 30:13, 31:10, 31:20, 32:1, 32:5, 32:22, 33:5, 33:15, 34:5, 34:16, 34:23, 35:14, 38:2, 39:15
**Court** [46] - 1:17, 2:10, 3:14, 3:17, 4:15, 5:3, 5:14, 6:2, 6:14, 13:14, 14:1, 15:2, 15:4, 15:7, 15:8, 15:13, 15:16, 16:11, 17:17, 18:1, 18:6, 19:15, 20:13, 21:9, 21:12, 23:10, 24:2, 24:7, 24:10, 25:13, 26:18, 26:23, 27:9, 27:11, 29:24, 30:1, 30:14, 31:12, 31:15, 31:16, 34:9, 35:19, 39:11, 39:16, 39:23, 39:24
**court's** [1] - 29:5
**Court's** [4] - 15:19, 20:22, 30:10, 38:14
**Courtroom** [1] - 1:11
**courtroom** [2] - 2:13, 2:14
**courtrooms** [1] - 2:15
**courts** [5] - 24:4, 31:25, 32:3, 36:7, 36:23
**created** [1] - 8:4
**crime** [1] - 32:13
**criminal** [1] - 37:21
**criminalization** [1] - 8:3
**current** [1] - 17:13
**custody** [2] - 28:17, 28:19
**cut** [1] - 13:14
**cutting** [1] - 14:14
**CY** [1] - 27:5

## D

**D.C** [1] - 12:25
**date** [1] - 21:12
**days** [1] - 36:17
**DDOC** [3] - 12:19, 27:19, 31:3
**deal** [2] - 20:9, 29:2
**December** [2] - 21:21, 22:10
**decide** [2] - 24:4, 33:4
**decided** [3] - 15:13, 24:7, 24:10
**decision** [12] - 10:22, 10:23, 10:24, 11:3, 19:21, 22:8, 22:13, 23:2, 33:12, 33:16, 33:19
**declaration** [3] - 19:14, 26:15, 37:6
**declaratory** [1] - 26:15
**dedicated** [1] - 3:25
**Defendant** [1] - 2:4
**defendant's** [2] - 15:24, 29:10
**Defendants** [1] - 1:8
**defendants** [20] - 3:1, 3:4, 4:8, 5:18, 11:8, 11:20, 13:12, 17:17, 17:25, 18:1, 19:22, 27:2, 31:15, 31:24, 32:9, 33:25, 36:12, 36:20, 38:23
**definitely** [1] - 18:14
**definitive** [2] - 14:4, 33:24
**DELAWARE** [3] - 1:1, 1:22, 2:2
**Delaware** [57] - 1:14, 2:10, 2:23, 4:10, 4:11, 6:14, 6:15, 6:25, 7:10, 7:23, 8:7, 8:10, 8:19, 9:2, 9:19, 9:20, 9:23, 10:5, 12:19, 13:3, 13:9, 15:17, 15:19, 21:4, 21:7, 21:11, 21:18, 21:23, 22:25, 23:6, 23:9, 23:10, 23:12, 23:15, 23:21, 24:7, 24:9, 24:10, 25:12, 25:13, 28:25, 29:1, 32:16, 32:24, 33:4, 33:20, 34:9, 35:19, 35:25, 36:15, 37:16, 38:19, 38:20, 39:6
**Delawareans** [6] - 3:16, 3:20, 4:1, 4:5, 5:6, 13:5
**demonstrate** [1] - 26:11
**demonstrating** [1] - 27:17
**denial** [3] - 6:9, 28:5, 36:24
**denied** [3] - 24:25, 35:17, 35:18
**deny** [1] - 31:16
**Department** [7] - 3:3, 3:5, 12:19, 23:1, 26:21, 29:5, 29:22
**department** [3] - 18:9, 18:10, 18:12
**DEPARTMENT** [1] - 2:2
**department's** [3] - 25:4, 25:5, 25:10
**designee** [1] - 10:13
**detainees** [4] - 13:11, 13:16, 19:11, 19:22
**detention** [1] - 4:6
**determination** [2] - 15:16, 15:17
**determine** [2] - 26:20, 39:5
**determined** [1] - 21:25
**determining** [1] - 15:3
**Development** [1] - 27:6
**difference** [1] - 28:19
**different** [4] - 9:23, 22:16, 30:12, 31:7
**differentiation** [2] - 29:7, 29:11
**differently** [1] - 14:3
**difficulty** [1] - 37:7
**direct** [1] - 27:17
**disability** [2] - 18:15, 23:23
**disabled** [2] - 34:8, 34:11
**disagree** [5] - 9:8, 17:18, 20:6, 20:7, 20:8
**discrimination** [1] - 4:23
**discussed** [1] - 28:4
**discussion** [2] - 26:7, 38:18
**disenfranchised** [1] - 3:21
**disenfranchisement** [6] - 4:7, 4:21, 4:24, 6:4, 6:7, 6:8
**dispositive** [1] - 33:1
**dispute** [9] - 6:6, 6:7, 6:10, 6:12, 6:23, 6:24, 7:2, 7:4, 19:8
**disputed** [2] - 5:17, 10:3
**disputes** [2] - 9:25, 14:22
**disqualifies** [1] - 19:6
**distinction** [1] - 34:19
**DISTRICT** [2] - 1:1, 1:1
**district** [2] - 22:11, 28:15
**District** [4] - 1:17, 2:10, 39:24
**districts** [1] - 13:13
**DOC** [2] - 28:17, 28:19
**Doctrine** [6] - 24:2, 24:3, 26:25, 27:2, 27:4, 27:8
**doctrine** [2] - 27:9, 27:12
**documents** [1] - 18:7
**DOE** [1] - 29:8
**dollars** [1] - 28:11
**done** [1] - 21:23
**down** [1] - 36:20
**drafted** [1] - 18:18
**due** [2] - 13:7, 37:23
**during** [2] - 13:12, 36:17
**duties** [1] - 11:1
**DWAYNE** [1] - 1:22

## E

**early** [4] - 36:13, 36:15, 36:18, 37:9
**easier** [1] - 30:15
**economy** [1] - 35:8
**educate** [2] - 18:22
**effect** [7] - 7:25, 8:4, 11:5, 14:19, 27:17, 29:21, 37:23
**either** [5] - 18:14, 18:15, 23:22, 26:6, 31:16
**election** [7] - 3:22, 13:13, 19:16, 28:11, 31:4, 31:5, 35:9
**Election** [1] - 26:21
**Elections** [2] - 23:1, 29:22
**elections** [3] - 18:9, 18:12
**Elections'** [1] - 29:6
**element** [1] - 8:21
**elements** [1] - 26:24
**eligibility** [2] - 9:25, 11:22
**eligible** [26] - 4:12, 4:14, 9:16, 9:17, 10:2, 13:5, 13:25, 14:15, 14:19, 18:13, 18:19, 18:22, 18:25, 19:4, 19:12, 22:20, 23:20, 28:2, 30:20, 31:2, 32:20, 33:13, 33:14, 37:13
**enacted** [1] - 21:18
**end** [2] - 7:16, 11:24
**enlarged** [4] - 6:19, 14:7, 34:14, 34:16
**entire** [2] - 13:20, 21:22
**enumerated** [4] - 7:4, 7:6, 22:2, 34:21
**Equal** [1] - 4:23
**equal** [8] - 5:15, 28:13, 28:16, 29:11, 29:13, 32:7, 33:1, 33:9
**escorted** [1] - 20:19
**especially** [1] - 37:9
**ESQ** [4] - 1:22, 1:23, 2:3, 2:3
**essentially** [2] - 18:18, 28:14
**estimate** [2] - 36:12, 36:13
**estopped** [1] - 16:5
**et** [3] - 1:7, 2:18, 21:24
**evidence** [3] - 27:16, 27:25, 31:11
**exactly** [2] - 23:9, 23:17
**example** [1] - 13:4
**examples** [1] - 7:9
**exception** [7] - 7:9, 7:20, 18:15, 18:16, 23:23, 23:24, 27:8
**exceptions** [2] - 7:7, 34:22
**excluded** [1] - 22:3
**excuse** [2] - 6:21, 34:7
**executive** [1] - 23:20
**exercise** [1] - 36:3
**exhaustive** [3] - 6:19, 22:2, 34:14
**expand** [1] - 7:15

**expanded** [3] - 6:20, 14:6, 34:15
**expanding** [2] - 7:4, 34:22
**expedited** [1] - 39:7
**explain** [1] - 9:5
**explaining** [1] - 17:13
**explored** [4] - 20:20, 20:21, 26:6
**expressing** [1] - 33:25
**expressly** [1] - 23:19
**extends** [1] - 10:7
**extent** [7] - 10:20, 11:12, 11:15, 15:25, 27:8, 29:6, 29:8
**extrapolated** [1] - 21:21

## F

**face** [1] - 27:21
**faces** [2] - 3:7, 39:13
**facilities** [3] - 12:20, 13:1, 31:3
**facility** [3] - 12:24, 23:13, 27:19
**facing** [3] - 4:7, 4:21, 37:23
**fact** [6] - 28:1, 32:10, 32:11, 37:23, 37:24, 37:25
**factor** [3] - 28:23, 29:15, 35:3
**factors** [4] - 26:24, 29:1, 29:2, 32:13
**facts** [1] - 18:8
**factual** [1] - 18:5
**fair** [1] - 23:24
**fall** [1] - 7:19
**Fallon** [1] - 2:13
**falls** [2] - 6:25, 34:21
**familiar** [3] - 3:7, 11:18, 39:13
**far** [1] - 36:22
**fear** [1] - 10:8
**fears** [1] - 10:4
**federal** [6] - 15:10, 19:25, 22:11, 24:21, 28:15, 38:25
**federalism** [1] - 24:3
**felony** [1] - 19:5
**few** [1] - 31:22
**field** [1] - 5:7
**fight** [1] - 24:25
**figure** [1] - 11:15
**file** [1] - 6:16
**filing** [1] - 12:22
**final** [4] - 15:14, 15:17, 27:1, 32:3
**first** [7] - 8:17, 20:8, 20:12, 20:13, 24:16, 38:5
**fit** [1] - 7:6
**fitting** [1] - 9:4
**five** [1] - 12:24
**flawed** [2] - 28:23, 29:4
**flexible** [1] - 28:5
**flight** [1] - 29:2
**focus** [1] - 20:11
**focused** [1] - 22:1
**follow** [1] - 14:5
**FOR** [1] - 1:1
**force** [1] - 5:15
**foregoing** [1] - 39:20
**form** [1] - 12:4
**forward** [5] - 5:1, 5:23, 5:25, 31:12, 36:19
**framework** [2] - 5:21, 5:22
**Frank** [1] - 14:17
**fraud** [1] - 30:18
**fraudulent** [1] - 8:19
**fraudulently** [2] - 8:24, 10:14
**free** [1] - 27:11
**Friday** [1] - 1:10
**full** [1] - 21:24
**function** [2] - 14:3, 17:3
**fundamental** [5] - 3:21, 4:22, 5:15, 5:21, 14:22
**furthermore** [1] - 7:13

## G

**general** [17] - 3:22, 9:2, 9:10, 9:21, 10:12, 10:17, 10:24, 11:3, 16:19, 30:2, 30:3, 30:7, 30:14, 30:16, 30:17, 31:1, 31:4
**given** [8] - 14:8, 15:4, 16:18, 25:8, 33:6, 33:8, 36:3, 37:17
**government** [1] - 23:21
**grant** [1] - 5:3
**granted** [1] - 28:7
**great** [2] - 14:18, 39:13
**greater** [1] - 5:1
**group** [3] - 20:15, 21:10, 29:12
**groups** [1] - 28:20
**guarantee** [1] - 17:21
**guard** [1] - 34:4
**guess** [6] - 6:5, 12:1, 12:9, 14:25, 24:17, 30:13

## H

**Hall** [1] - 2:11
**HALL** [1] - 1:16
**hand** [3] - 10:23, 10:24, 12:18
**harbor** [2] - 10:4, 27:19
**hard** [2] - 9:4, 38:24
**harm** [6] - 4:24, 19:14, 27:25, 28:1, 29:16, 29:17
**hear** [4] - 2:16, 3:12, 12:10, 39:4
**heard** [2] - 15:6, 16:24
**hearing** [3] - 38:21, 38:22, 39:12
**helped** [1] - 10:15
**helping** [4] - 10:9, 17:4, 17:6
**hereby** [1] - 39:20
**herself** [1] - 9:1
**hesitating** [1] - 30:25
**Hi** [1] - 2:12
**Higgin** [22] - 6:18, 7:7, 7:14, 10:22, 10:23, 11:3, 14:11, 15:16, 19:21, 20:9, 21:14, 21:21, 22:13, 23:1, 29:19, 33:11, 33:16, 33:19, 35:24, 37:20
**highlight** [2] - 18:8, 31:15
**himself** [1] - 8:25
**historical** [1] - 14:10
**history** [1] - 21:22
**hold** [1] - 21:9
**holding** [11] - 22:1, 22:5, 22:7, 22:10, 22:13, 29:21, 34:1, 34:3, 34:6, 37:15
**holdings** [2] - 20:10
**Honor** [45] - 2:22, 3:2, 3:13, 3:15, 3:19, 5:7, 5:11, 6:11, 6:17, 7:3, 7:24, 8:8, 8:13, 8:18, 9:7, 9:24, 10:20, 12:11, 12:16, 13:19, 14:12, 15:13, 15:23, 16:25, 17:12, 17:18, 17:24, 18:1, 19:3, 19:10, 22:25, 24:1, 24:15, 25:21, 31:19, 31:21, 33:3, 33:10, 33:19, 34:18, 34:25, 35:22, 36:6, 37:11, 38:1
**HONORABLE** [1] - 1:16
**Honorable** [1] - 2:11
**hope** [2] - 20:22, 39:13
**hundred** [1] - 25:17

## I

**idea** [1] - 25:21
**ignored** [1] - 33:23
**III** [3] - 6:18, 7:7, 15:17
**illegal** [2] - 9:18, 33:6
**imagine** [6] - 9:4, 30:10, 30:11, 30:22, 31:6
**immediacy** [1] - 35:9
**imminent** [4] - 16:17, 29:18, 29:23, 38:9
**impeded** [1] - 17:2
**implement** [2] - 14:21, 17:21
**implemented** [2] - 12:19, 12:23
**important** [3] - 19:18, 22:4, 29:1
**imposing** [1] - 5:24
**impressed** [1] - 39:10
**impression** [3] - 20:9, 20:12, 24:16
**IN** [1] - 1:1
**in-person** [9] - 5:4, 12:16, 12:24, 15:5, 15:7, 19:15, 19:17, 20:5, 20:19
**inappropriate** [1] - 35:3
**incarcerated** [39] - 4:1, 4:2, 4:13, 5:5, 5:16, 6:21, 7:10, 10:1, 10:3, 10:10, 10:18, 12:5, 13:3, 13:6, 17:4, 18:13, 18:20, 18:23, 19:1, 19:4, 19:12, 19:22, 23:19, 24:14, 25:15, 28:1, 28:2, 28:22, 28:24, 30:8, 30:21, 31:3, 32:20, 32:25, 33:7, 33:13, 35:24, 37:13, 37:16
**incarceration** [2] - 7:6, 37:19
**inclined** [1] - 27:9
**include** [2] - 4:13, 23:22
**included** [2] - 14:20, 18:19
**includes** [1] - 25:14
**including** [2] - 4:7, 15:10
**increasing** [2] - 8:1, 8:3
**indicates** [1] - 36:7
**indication** [1] - 6:14
**indications** [2] - 16:20, 16:23
**individual** [1] - 14:17
**individuals** [10] - 5:16, 10:1, 13:4, 17:4, 24:14, 28:20, 31:2, 32:10, 32:12, 32:25
**ineligible** [1] - 10:10
**infringement** [2] - 5:24, 5:25
**Ingram** [1] - 39:23
**injunction** [9] - 2:17, 5:4, 5:13, 18:3, 22:12, 26:19, 27:13, 29:15, 31:17
**injury** [4] - 4:25, 16:17, 17:16, 38:9
**instance** [1] - 15:14
**instances** [3] - 6:3, 9:12, 13:3
**interest** [5] - 4:25, 5:1, 5:23, 28:10, 36:4
**interests** [1] - 15:2
**interpretation** [2] - 25:5, 33:15
**interpreted** [2] - 23:21, 38:23
**interrupt** [1] - 35:15
**invalid** [1] - 28:21
**ironic** [1] - 35:15
**irony** [1] - 35:20
**irreparable** [3] - 4:25, 29:16, 29:17
**issue** [14] - 9:24, 12:18, 16:4, 20:9, 22:24, 23:4, 24:6, 24:9, 31:24, 32:10, 35:1, 35:5, 35:7, 38:17
**issues** [1] - 24:4
**itself** [1] - 7:7

## J

**jailhouse** [6] - 4:3, 10:7, 10:13, 10:21, 11:4, 17:1
**JENNIFER** [1] - 1:16
**Jennifer** [1] - 2:11
**judge** [1] - 6:15
**Judge** [2] - 1:17, 2:13
**judgment** [2] - 26:14, 26:15
**judicial** [1] - 35:8
**jump** [1] - 24:22
**junction** [1] - 12:13
**jurisdiction** [3] - 12:23, 14:16, 38:15
**jurisdictions** [3] - 12:22, 13:1, 13:7
**jury** [1] - 2:14
**JUSTICE** [1] - 2:2
**Justice** [2] - 3:3, 3:5
**justices** [1] - 22:6

## K

**KELLY** [27] - 2:3, 3:2, 17:24, 19:3, 19:7, 19:10, 20:3, 20:7, 21:9, 22:18, 22:21, 22:23, 23:14, 23:25, 24:15, 25:2, 25:17, 25:20, 25:23, 25:25, 26:5, 26:17, 26:23, 30:6, 30:9, 30:24, 31:14
**Kelly** [2] - 3:3, 17:25
**KENNETH** [1] - 2:3
**Kenneth** [1] - 3:4
**kind** [4] - 11:5, 17:19, 21:14, 24:20
**King** [1] - 1:13
**knowing** [1] - 10:5
**knowingly** [3] - 8:24, 10:14, 10:19
**knowledge** [3] - 7:24, 8:8, 26:11

## L

**lack** [1] - 26:11
**lacks** [2] - 27:15, 38:6
**laid** [1] - 14:11
**landscape** [1] - 17:13
**language** [2] - 14:18, 37:14
**large** [1] - 12:21
**larger** [1] - 13:2
**last** [1] - 12:22
**law** [26] - 4:10, 9:20, 9:23, 13:15, 14:16, 15:15, 22:12, 23:16, 24:4, 24:23, 25:24, 26:12, 27:11, 28:25, 29:1, 29:18, 32:4, 32:16, 32:22, 33:5, 33:6, 34:4, 35:4, 35:7, 37:16, 38:19
**laws** [4] - 14:1, 14:3, 23:12, 35:25
**lawsuit** [1] - 21:20
**lawyers** [5] - 4:3, 10:8, 10:21, 11:4, 17:1
**least** [2] - 12:25, 16:23
**leave** [1] - 38:3
**left** [1] - 31:24
**LEGAL** [1] - 1:3
**Legal** [2] - 2:18, 3:23
**legal** [1] - 4:2
**legislature** [2] - 23:12, 23:15
**legitimate** [1] - 28:10
**lesser** [1] - 28:9
**letter** [4] - 30:3, 30:9, 30:24, 31:1
**lifted** [1] - 22:7
**likelihood** [4] - 5:12, 27:14, 29:12, 38:16
**likely** [1] - 4:6
**limit** [1] - 11:9
**limiting** [1] - 31:5
**list** [3] - 4:12, 23:17, 23:18
**location** [1] - 32:20
**locations** [1] - 13:5
**long-standing** [1] - 34:1
**look** [2] - 3:8, 20:13
**looked** [4] - 11:14, 21:20, 21:21, 34:25
**looking** [1] - 30:24
**losing** [1] - 3:20
**LYNN** [1] - 2:3
**Lynn** [2] - 3:2, 17:25

## M

**machines** [2] - 12:15, 12:18
**magnitude** [1] - 5:24
**mail** [6] - 21:19, 22:14, 22:15, 33:17, 33:21, 34:4
**main** [1] - 38:12
**mandate** [1] - 5:4
**Manella** [1] - 23:5
**math** [1] - 36:20
**matter** [7] - 5:19, 5:20, 9:10, 13:15, 16:1, 38:14, 38:19
**Mazzo** [1] - 6:1
**mean** [6] - 19:4, 24:23, 26:1, 34:12, 35:14, 37:13
**meaning** [1] - 34:20
**means** [6] - 15:9, 24:23, 32:17, 32:18, 33:23, 34:10
**mechanics** [1] - 11:23
**mechanism** [2] - 17:21, 36:3
**mechanisms** [1] - 13:2
**meet** [1] - 39:5
**member** [2] - 27:16, 38:7
**members** [7] - 4:7, 8:11, 11:1, 16:5, 16:12, 27:19, 27:23
**mentions** [1] - 27:3
**merits** [4] - 5:12, 27:14, 27:15, 29:13
**messaging** [1] - 17:20
**met** [2] - 16:18, 31:17
**method** [1] - 25:19
**might** [9] - 10:9, 11:2, 17:14, 26:2, 26:3, 31:10, 37:24, 39:6
**million** [3] - 19:15, 28:11, 36:12
**mind** [1] - 12:17
**minimal** [2] - 28:12, 36:21
**mischaracterization** [1] - 32:8
**misdemeanor** [4] - 4:6, 13:12, 19:11, 19:22
**misunderstood** [1] - 24:8
**moment** [1] - 25:3
**money** [1] - 32:14
**most** [4] - 3:15, 3:19, 3:20, 29:1
**motion** [4] - 2:17, 5:4, 12:13, 18:2
**movant** [1] - 3:12
**moves** [1] - 31:12
**MR** [38] - 2:22, 3:13, 3:18, 4:16, 4:19, 5:11, 5:19, 6:11, 6:17, 7:3, 7:24, 8:8, 8:13, 8:18, 8:23, 9:7, 9:24, 10:20, 11:19, 12:11, 12:16, 13:19, 13:23, 15:23, 16:25, 17:12, 17:18, 17:23, 31:21, 32:2, 32:6, 33:3, 33:10, 33:19, 34:13, 34:18, 34:25, 35:22
**MS** [26] - 3:2, 17:24, 19:3, 19:7, 19:10, 20:3, 20:7, 21:9, 22:18, 22:21, 22:23, 23:14, 23:25, 24:15, 25:2, 25:17, 25:20, 25:23, 25:25, 26:5, 26:17, 26:23, 30:6, 30:9, 30:24, 31:14
**multiple** [1] - 16:3
**musical** [1] - 2:15

## N

**need** [3] - 17:19, 22:9, 36:8
**needs** [1] - 26:24
**Network** [2] - 2:18, 3:24
**NETWORK** [1] - 1:4
**never** [4] - 20:20, 20:21, 30:17, 34:12
**new** [5] - 21:18, 22:7, 22:10, 34:1, 34:2
**next** [1] - 2:14
**nobody** [1] - 35:17
**non** [1] - 34:21
**non-enumerated** [1] - 34:21
**none** [2] - 14:7, 29:2
**note** [2] - 22:4, 27:1
**notes** [1] - 39:21
**nothing** [4] - 7:13, 25:1, 29:5, 36:6
**notwithstanding** [2] - 12:3, 12:5
**November** [1] - 30:25
**nowhere** [1] - 6:20
**number** [2] - 2:19, 13:10

## O

**O'Brien** [9] - 13:23, 15:12, 15:20, 24:6, 32:3, 32:7, 32:19, 32:22, 35:12
**objection** [1] - 34:24
**obligated** [2] - 14:5, 14:21
**obligation** [1] - 38:15
**occupation** [9] - 7:9, 7:20, 18:16, 18:18, 23:23, 25:14, 34:8, 34:11, 37:19
**occurred** [1] - 15:16
**OF** [3] - 1:1, 1:22, 2:2
**offending** [1] - 4:21
**offer** [1] - 4:9
**offered** [1] - 4:20
**offering** [1] - 37:12
**office** [1] - 31:2
**official** [2] - 6:15, 30:19
**Official** [1] - 39:23
**officials** [1] - 9:13
**one** [14] - 6:25, 8:14, 8:16, 9:25, 10:23, 20:10, 26:2, 31:10, 32:14, 32:15, 32:16, 32:17, 35:3, 38:25
**ongoing** [2] - 23:6, 25:9
**open** [2] - 32:18, 36:17
**opinion** [7] - 7:14, 14:2, 21:21, 21:25, 22:6, 35:25, 37:20
**opportunities** [1] - 5:5
**opportunity** [4] - 8:25, 12:7, 12:17, 16:23
**opposition** [1] - 18:2
**option** [4] - 4:20, 20:17, 26:5
**options** [1] - 20:20
**oral** [1] - 2:16
**order** [8] - 13:17, 15:4, 15:7, 15:11, 18:3, 19:25, 20:5, 21:3
**ordered** [1] - 36:23
**ordering** [2] - 13:14, 15:9
**orders** [1] - 15:4
**organization** [3] - 3:24, 11:1, 27:16
**organizational** [1] - 16:3
**otherwise** [3] - 5:8, 18:19, 23:20
**outside** [1] - 28:18
**outweighs** [1] - 28:12

## P

**p.m** [2] - 1:11, 39:16
**Padilla** [1] - 37:2
**page** [1] - 22:5
**pages** [1] - 21:23
**paper** [1] - 12:22
**papers** [1] - 3:8
**paralegal** [1] - 10:14
**paralegals** [5] - 4:3, 10:7, 10:21, 11:4, 17:2
**part** [3] - 7:11, 12:21, 14:12
**particular** [1] - 37:4
**parties** [4] - 18:7, 26:8, 39:2, 39:4
**pass** [1] - 23:12
**passed** [1] - 23:16
**pay** [2] - 32:10, 32:15
**peer's** [1] - 24:5
**pending** [2] - 7:25, 25:9
**people** [27] - 7:10, 14:15, 15:1, 17:5, 17:6, 17:9, 17:12, 18:14, 18:23, 19:1, 19:9, 19:12, 20:15, 20:18, 21:10, 23:11, 23:16, 23:17, 23:19, 25:14, 28:2, 28:21, 29:12, 30:8, 33:7, 35:23
**per** [3] - 19:16, 27:7, 28:11
**percent** [1] - 25:17
**perfectly** [1] - 32:11
**perhaps** [1] - 14:14
**permanent** [1] - 23:5
**permitted** [4] - 20:19, 21:10, 21:12, 38:23
**person** [16] - 5:4, 9:1, 10:18, 12:2, 12:16, 12:18, 12:24, 13:14, 15:5, 15:7, 17:8, 19:15, 19:17, 20:5, 20:19, 22:19
**persons** [1] - 18:19
**perspective** [1] - 29:10
**petition** [1] - 20:18
**phone** [1] - 31:6
**phrase** [1] - 7:8
**physical** [2] - 18:15, 32:20
**picking** [1] - 2:14
**place** [1] - 13:2
**placed** [1] - 22:7
**places** [1] - 36:17
**plain** [2] - 34:20, 37:14
**Plaintiff** [2] - 1:5, 1:24
**plaintiff** [15] - 2:21, 2:24, 7:18, 16:10, 20:4, 20:11, 20:25, 23:2, 26:12, 26:13, 27:15, 28:20, 30:3, 38:6, 38:21
**plaintiffs** [6] - 21:16, 22:1, 28:7, 28:8, 28:12, 31:17
**PLAN** [7] - 3:24, 4:1, 4:7, 16:2, 16:12, 17:15, 27:18
**plan** [2] - 4:9, 16:19
**PLAN's** [2] - 10:7, 11:1
**plans** [2] - 9:11, 16:22
**plausibly** [1] - 10:6
**playing** [1] - 2:15
**pleasure** [1] - 39:12
**point** [7] - 13:21, 13:24, 14:5, 16:9, 17:1, 27:1, 37:8
**points** [2] - 31:22, 36:11
**pole** [1] - 37:8
**policies** [3] - 25:4, 29:6, 29:8
**policy** [3] - 18:13, 22:25, 25:10
**poll** [2] - 37:5, 37:10
**polling** [1] - 36:17
**populations** [1] - 13:2
**position** [7] - 19:20, 19:24, 28:5, 30:11, 32:5, 35:15, 37:17
**positions** [1] - 23:9
**possibility** [2] - 37:25, 38:25
**possible** [2] - 36:5, 36:9
**possibly** [1] - 10:13
**post** [1] - 28:22
**potential** [1] - 10:9
**potentially** [2] - 10:8, 20:17
**practice** [1] - 26:20
**pre** [1] - 4:5
**pre-trial** [1] - 4:5
**precluded** [1] - 19:2
**preliminary** [8] - 2:17, 5:4, 5:13, 12:13, 18:2, 27:13, 29:15, 31:16
**prepare** [1] - 17:6
**prepared** [2] - 5:8, 39:12
**presented** [1] - 23:3
**presiding** [1] - 2:11
**presumably** [1] - 37:10
**pretrial** [4] - 13:11, 13:16, 19:11, 19:22
**pretty** [1] - 27:11
**previously** [1] - 35:12
**primarily** [2] - 13:6, 22:12
**primary** [2] - 12:20, 26:19
**principles** [1] - 24:3
**prison** [10] - 4:3, 10:7, 10:21, 11:4, 12:15, 13:4, 13:12, 15:1, 16:13, 17:1
**prisoner** [8] - 6:25, 7:19, 9:2, 10:13, 12:7, 12:8, 26:16, 38:20
**PRISONERS** [1] - 1:3
**prisoners** [11] - 6:16, 9:15, 12:6, 13:9, 13:18, 16:19, 16:22, 17:9, 21:5, 21:7, 23:22
**Prisoners** [2] - 2:17, 3:23
**procedural** [1] - 26:12
**procedure** [2] - 26:10, 26:12
**proceed** [1] - 5:8
**proceedings** [1] - 39:21
**process** [2] - 11:17, 12:10
**produce** [1] - 8:20
**produced** [2] - 11:5, 11:7
**prohibited** [1] - 13:16
**prohibition** [1] - 21:13
**prong** [1] - 5:12
**pronouncement** [4] - 10:23, 11:3, 13:25, 33:22
**proper** [1] - 25:8
**properly** [2] - 24:6, 24:9
**proposition** [1] - 32:19
**prosecute** [8] - 9:2, 9:11, 16:19, 30:4, 30:8, 30:17, 30:20, 31:2
**prosecuted** [5] - 9:13, 9:14, 9:16, 24:24, 30:22
**prosecution** [5] - 8:6, 8:16, 29:25, 30:1, 37:25
**prosecutions** [2] - 8:15, 36:1
**protection** [6] - 28:14, 28:16, 29:13, 32:7, 33:1, 33:9
**Protection** [1] - 4:23
**prove** [1] - 10:13
**proven** [2] - 12:21, 13:7
**provide** [4] - 12:14, 15:9, 16:22, 19:25
**provided** [3] - 5:5, 18:13, 28:2
**provision** [1] - 11:11
**public** [1] - 4:25
**Pullman** [5] - 24:2, 24:18, 26:10, 26:25, 27:2
**pure** [1] - 37:8
**purposes** [2] - 16:11, 38:7
**put** [7] - 2:20, 5:1, 5:23, 5:25, 20:4, 36:19, 37:17

## Q

**questioned** [1] - 23:2
**questioning** [1] - 29:24
**questions** [3] - 3:11, 5:7, 5:10
**quite** [1] - 7:5

## R

**raise** [1] - 38:15
**raised** [2] - 37:1, 38:13
**ramifications** [1] - 10:9
**rapidly** [1] - 3:22
**read** [1] - 35:6
**reading** [2] - 12:12, 14:8
**real** [3] - 6:24, 9:5, 38:5
**really** [3] - 25:3, 27:25, 39:9
**reason** [12] - 11:25, 18:19, 21:16, 24:17, 26:2, 26:4, 28:15, 29:4, 29:12, 30:15, 34:7, 35:6
**reasons** [2] - 26:3, 28:23
**recent** [1] - 30:9
**recipients** [1] - 4:2
**record** [4] - 2:21, 29:16, 30:11, 31:11
**recruiting** [1] - 37:7
**recruitment** [1] - 37:6
**Redlands** [1] - 27:6
**redressability** [1] - 38:10
**refer** [1] - 7:8
**refused** [1] - 17:20
**regard** [6] - 8:4, 11:23, 25:3, 27:10, 28:3, 33:21
**regarding** [13] - 8:14, 8:15, 10:4, 10:25, 13:25, 14:14, 14:22, 15:17, 17:3, 33:23, 35:2, 35:9, 37:1
**regular** [3] - 11:1, 11:12, 11:15
**reiterate** [1] - 35:13
**reiterating** [1] - 37:12
**relate** [1] - 11:22
**relief** [2] - 12:20, 15:7
**remaining** [1] - 14:23
**remedies** [1] - 14:21
**remedy** [8] - 12:14, 13:14, 13:17, 15:3, 15:8, 15:18, 20:1, 21:2
**remedying** [1] - 5:2
**repercussions** [1] - 27:21
**replete** [1] - 7:9
**reply** [3] - 15:25, 27:3, 27:18
**Reporter** [1] - 39:23
**reporter** [2] - 3:17, 4:15
**representations** [1] - 9:10
**representing** [2] - 3:23, 31:7
**requested** [1] - 18:3
**required** [1] - 27:25
**requirement** [2] - 38:9, 38:10
**requires** [3] - 5:23, 16:17, 28:25
**resolve** [2] - 12:17, 14:21
**resources** [4] - 3:25, 16:4, 19:16, 28:10

**respectfully** [3] - 5:3, 9:7, 16:25
**respond** [1] - 18:2
**responding** [1] - 37:5
**restraining** [1] - 18:3
**restricted** [2] - 21:2, 21:4
**retain** [2] - 4:8, 10:1
**review** [1] - 20:18
**reviewed** [2] - 18:6, 21:22
**reviewing** [1] - 21:24
**rights** [8] - 4:1, 10:1, 17:5, 27:5, 27:7, 27:10, 28:16, 29:11
**ripeness** [1] - 38:11
**rise** [2] - 2:9, 39:15
**risk** [2] - 3:20, 29:2
**room** [1] - 3:7
**Rosario** [1] - 6:3
**round** [1] - 37:11
**RPR** [1] - 39:23
**ruled** [3] - 34:13, 34:17, 34:19
**ruling** [1] - 33:24

**S**

**safety** [1] - 29:1
**scale** [1] - 28:4
**scenario** [1] - 37:9
**scope** [1] - 34:17
**scrutiny** [1] - 6:2
**se** [1] - 27:7
**seated** [1] - 2:12
**second** [3] - 14:12, 29:4, 29:15
**Section** [12] - 4:11, 4:13, 6:18, 7:5, 8:19, 11:11, 14:4, 22:2, 33:12, 33:20, 33:23, 33:25
**section** [1] - 9:4
**secure** [2] - 8:25, 10:19
**securing** [1] - 17:3
**see** [3] - 3:6, 3:7, 35:25
**seeing** [1] - 39:13
**seek** [1] - 26:14
**sense** [1] - 13:24
**serve** [1] - 13:2
**service** [1] - 4:2
**serving** [1] - 4:6
**session** [1] - 2:11
**severe** [5] - 6:1, 6:4, 6:8, 28:6, 36:2
**severely** [1] - 37:22
**shoulder** [2] - 5:2, 36:2
**shut** [1] - 32:19
**side** [6] - 15:22, 17:10, 17:11, 26:2, 26:6
**signing** [1] - 27:23
**similar** [5] - 15:15, 26:9, 35:3, 35:11
**similarly** [2] - 32:11, 35:3
**simply** [1] - 15:18
**situated** [1] - 32:12
**situation** [3] - 17:13, 38:24, 39:1
**skill** [1] - 39:10
**sliding** [1] - 28:3
**solely** [1] - 36:16
**someone** [1] - 10:15
**soon** [2] - 36:5, 36:9
**sorry** [4] - 17:5, 25:21, 27:23, 32:17
**sort** [3] - 24:19, 35:15, 35:20
**specifically** [2] - 3:23, 18:11
**speculation** [2] - 9:8, 37:8
**speculative** [3] - 36:25, 37:3, 37:4
**spent** [1] - 16:4
**Stacy** [1] - 39:23
**staff** [2] - 18:22, 19:16
**standard** [2] - 5:13, 28:9
**standing** [11] - 16:1, 16:3, 16:9, 16:16, 24:19, 27:15, 34:1, 38:6, 38:18, 39:5
**stands** [2] - 32:19, 36:14
**start** [6] - 2:21, 4:16, 5:11, 21:15, 24:1, 31:23
**State** [14] - 7:15, 8:7, 12:14, 15:9, 16:22, 17:20, 18:25, 19:14, 19:25, 24:13, 36:4, 37:1, 37:6, 37:12
**state** [38] - 5:1, 8:10, 9:13, 12:10, 13:15, 13:17, 13:24, 15:11, 15:14, 15:15, 19:24, 21:4, 24:4, 24:21, 24:22, 24:23, 25:6, 26:11, 26:13, 28:10, 31:25, 32:3, 32:4, 32:22, 32:23, 33:3, 33:24, 35:7, 35:12, 35:17, 36:7, 36:18, 37:14, 37:15, 38:13, 38:19, 39:2
**State's** [7] - 5:23, 15:2, 19:20, 19:24, 23:9, 28:4, 28:9
**statement** [2] - 24:8, 30:19
**STATES** [1] - 1:1
**states** [3] - 6:18, 11:11, 12:25
**States** [3] - 1:17, 2:9, 14:2
**statue** [1] - 23:4
**statute** [22] - 8:11, 8:20, 9:5, 9:19, 10:8, 11:6, 11:7, 21:12, 21:19, 22:14, 22:15, 22:16, 22:19, 22:24, 23:22, 33:17, 33:18, 33:22
**statutes** [4] - 8:14, 10:5, 34:20, 37:21
**statutory** [2] - 7:1, 7:10
**staying** [1] - 32:7
**stenographic** [1] - 39:21
**sticks** [2] - 14:9
**still** [2] - 14:20, 14:21
**stop** [1] - 21:3
**strategic** [1] - 26:1
**Street** [1] - 1:13
**stretch** [1] - 7:6
**strict** [1] - 6:2
**subcategory** [1] - 34:21
**subject** [3] - 6:2, 21:19, 38:14
**submitted** [3] - 10:15, 18:7, 18:8
**subsection** [2] - 8:22, 8:23
**substantial** [1] - 36:22
**success** [3] - 5:12, 27:14, 29:13
**suggest** [2] - 7:14
**suggested** [4] - 7:19, 12:20, 13:6, 31:23
**suggesting** [2] - 7:19, 16:22
**suggestion** [1] - 24:20
**suggests** [1] - 6:15
**summer** [1] - 21:18
**supplemental** [1] - 38:17
**supreme** [8] - 13:24, 15:14, 21:20, 23:6, 37:14, 37:15, 39:2, 39:6
**Supreme** [12] - 5:14, 6:2, 6:14, 14:1, 15:13, 15:19, 23:10, 24:7, 24:10, 25:13, 34:9, 35:19
**survive** [1] - 29:14

**T**

**table** [1] - 3:4
**temporary** [1] - 18:3
**term** [1] - 7:12
**terms** [2] - 16:10, 32:23
**test** [2] - 28:4, 28:5
**text** [7] - 6:17, 6:18, 6:20, 7:7, 7:15, 10:22, 14:9
**THE** [67] - 1:1, 1:1, 1:16, 2:12, 2:25, 3:6, 4:18, 5:9, 5:17, 6:5, 6:13, 6:23, 7:16, 8:6, 8:10, 8:16, 8:21, 8:24, 9:15, 10:12, 11:14, 11:25, 12:12, 13:8, 13:22, 14:24, 15:12, 15:21, 16:8, 17:8, 17:16, 17:22, 18:25, 19:5, 19:8, 19:20, 20:4, 20:23, 22:15, 22:19, 22:22, 23:8, 23:15, 24:11, 24:17, 25:12, 25:18, 25:22, 25:24, 26:1, 26:9, 26:22, 30:5, 30:7, 30:13, 31:10, 31:20, 32:1, 32:5, 32:22, 33:5, 33:15, 34:5, 34:16, 34:23, 35:14, 38:2
**themselves** [1] - 10:15
**theories** [1] - 16:3
**theory** [1] - 16:6
**they've** [3] - 16:4, 34:19, 35:13
**thinking** [1] - 14:25
**Third** [1] - 5:25
**third** [1] - 27:5
**threat** [4] - 29:18, 29:23, 29:25
**Title** [2] - 8:18, 11:11
**today** [12] - 2:16, 3:7, 17:17, 20:13, 23:3, 23:4, 24:5, 26:13, 26:19, 30:12, 38:18, 39:10
**together** [1] - 18:21
**total** [8] - 4:7, 4:21, 4:24, 6:4, 6:6, 6:7, 12:24, 36:24
**totally** [1] - 3:21
**touched** [1] - 15:25
**towards** [2] - 3:25, 17:1
**traceable** [1] - 17:16
**tracks** [1] - 23:17
**transcript** [1] - 39:21
**trend** [2] - 8:1, 8:3
**trial** [4] - 2:14, 4:5, 28:17, 28:18
**true** [4] - 7:22, 7:23, 38:8, 39:20
**try** [5] - 12:7, 30:21, 30:23, 33:25, 36:2
**trying** [2] - 9:16, 30:8
**turning** [1] - 27:13
**turns** [1] - 32:21
**two** [6] - 8:13, 8:14, 28:20, 28:23, 28:25, 32:11
**type** [2] - 21:2, 38:24
**typically** [1] - 11:21

**U**

**U.S** [1] - 39:24
**ultimate** [1] - 22:13
**unable** [1] - 4:5
**unaware** [1] - 24:12
**uncertain** [1] - 35:7
**uncertainty** [1] - 36:8
**unconstitutional** [7] - 4:23, 9:20, 9:22, 19:23, 21:8, 22:14, 29:20
**under** [28] - 4:23, 5:25, 6:25, 7:6, 7:20, 9:4, 9:9, 9:20, 9:22, 10:5, 10:8, 14:1, 16:3, 16:6, 18:12, 18:15, 18:16, 19:23, 22:2, 23:22, 24:6, 26:24, 28:25, 29:1, 32:16, 33:11, 36:21, 37:2
**understood** [5] - 24:5, 24:8, 32:6, 34:2
**undisputed** [2] - 5:19, 5:20

**UNITED** [1] - 1:1
**United** [3] - 1:17, 2:9, 14:2
**unlawful** [3] - 4:10, 8:25, 10:19
**unlawfully** [1] - 10:14
**unless** [2] - 19:1, 34:7
**unlimited** [1] - 11:9
**unstable** [1] - 17:14
**up** [4] - 5:10, 7:17, 16:1, 16:8
**usage** [1] - 7:12
**uses** [1] - 7:8

**V**

**verdict** [6] - 5:20, 5:22, 28:3, 36:11, 36:22, 37:2
**versus** [2] - 2:18, 15:5
**view** [1] - 25:3
**vindicate** [1] - 12:8
**violated** [1] - 28:17
**violates** [1] - 38:20
**violation** [8] - 15:9, 20:2, 21:1, 21:3, 27:7, 28:14, 29:11, 32:19
**vote** [64] - 4:2, 4:20, 4:22, 5:13, 5:15, 5:22, 6:9, 9:1, 9:16, 9:17, 9:18, 9:19, 10:19, 12:8, 13:6, 14:1, 14:17, 14:22, 16:12, 16:13, 16:14, 16:20, 17:3, 17:10, 17:14, 17:15, 19:1, 19:9, 21:19, 22:14, 22:15, 22:20, 23:11, 23:16, 23:20, 24:14, 25:7, 25:8, 25:10, 28:2, 28:6, 28:8, 28:18, 28:19, 29:17, 30:8, 30:21, 31:4, 32:21, 32:23, 33:17, 33:21, 34:4, 34:10, 35:17, 35:24, 36:3, 36:24, 37:22, 37:23, 37:25, 38:7
**vote-by-mail** [6] - 21:19, 22:14, 22:15, 33:17, 33:21, 34:4
**voted** [1] - 13:4
**voter** [5] - 9:9, 10:10, 30:18, 32:21, 37:16
**voter's** [1] - 10:1
**voters** [19] - 4:4, 4:10, 4:14, 4:19, 6:21, 8:2, 9:12, 9:17, 10:4, 11:2, 14:16, 14:19, 25:10, 30:20, 30:21, 33:13, 36:8, 37:13
**votes** [1] - 16:15
**voting** [41] - 3:25, 4:9, 5:5, 8:3, 8:19, 12:15, 12:16, 12:18, 12:24, 12:25, 15:1, 15:5, 15:7, 15:10, 17:21, 18:13, 19:6, 19:15, 19:17, 19:23, 20:5, 20:15, 20:19, 20:21, 21:5, 21:6, 22:2, 22:23, 22:24, 23:5, 26:16, 27:4, 27:10, 29:20, 29:22, 31:3, 36:14, 36:15, 36:18, 37:9, 38:20
**vs** [1] - 27:6
**vulnerable** [2] - 3:16, 3:20

**W**

**walk** [1] - 11:16
**Walker** [1] - 14:17
**Wan** [1] - 3:4
**WAN** [1] - 2:3
**wants** [1] - 38:7
**Washington** [1] - 12:25
**wealth** [4] - 28:21, 28:24, 29:3, 29:7
**week** [1] - 2:14
**weekend** [1] - 39:14
**weigh** [3] - 10:22, 31:12, 35:10
**Welcome** [1] - 2:25
**whole** [1] - 17:3
**willfully** [2] - 8:24, 10:14
**Wilmington** [1] - 1:14
**wish** [4] - 4:2, 4:3, 8:2, 35:24
**wondering** [4] - 12:1, 13:8, 16:18, 24:18
**workability** [1] - 13:7
**workable** [1] - 12:21
**worker** [1] - 37:5
**workers** [2] - 37:8, 37:10
**workforce** [2] - 7:8, 7:11
**worried** [2] - 7:21, 8:11
**worry** [1] - 9:6
**written** [2] - 21:25, 30:3

**Y**

**years** [3] - 18:12, 29:21, 29:23