IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PRISONERS LEGAL ADVOCACY NETWORK, | ) | |
| Plaintiff, | ) | C.A. No. 23-1397-JLH |
| v. | ) | |
| CARNEY, et al., | ) | |
| Defendants. | ) | |

Friday, August 23, 2024
3:00 p.m.
Teleconference

844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE JENNIFER L. HALL
United States District Court Judge

APPEARANCES:

SHAW KELLER,
BY: EMILY DiBENEDETTO, ESQ.
BY: KAREN KELLER, ESQ.

-and-

ACLU OF DELAWARE
BY: DWAYNE J. BENSING, ESQ.
BY: ANDREW BERNSTEIN, ESQ.

-and-

PROSKAUER ROSE, LLP
BY: AARON M. FRANCIS, ESQ.

Counsel for the Plaintiff

APPEARANCES CONTINUED:

DELAWARE DEPARTMENT OF JUSTICE,
BY: LYNN KELLY, ESQ.
BY: KENNETH WAN, ESQ.
BY: JULIA C. MAYER, ESQ.

Counsel for the Defendant

----------------------------

14:59:54 THE COURT: Good afternoon, everyone. This is Jen Hall. We're here today for Prisoners Legal Advocacy Network v. Carney, et al., civil action number 23-1396.

15:00:08 May I please have appearances for plaintiffs?

15:00:10 MS. DIBENEDETTO: Good afternoon, Your Honor. This is Emily DiBenedetto for plaintiff from Shaw Keller. Joining me today is Karen Keller from my office, Dwayne Bensing and Andrew Bernstein from American Civil Liberties Union of Delaware, also Jonathan Topaz from the American Civil Liberties Union Foundation, Incorporated, and Aaron Francis from Proskauer Rose LLP.

15:00:31 THE COURT: Good afternoon to all of you.

15:00:33 And do we have somebody on the line for defendants?

15:00:37 MS. KELLY: Yes, Your Honor. Lynn Kelly from the department, Delaware Department of Justice on behalf of the defendants. I believe Kenneth Wan and also Julia Mayer

15:00:48 on the line from my office as well.

15:00:50 THE COURT: Great. Good afternoon to all of
15:00:52 you.

15:00:52 Currently pending before the Court is plaintiff
15:00:57 Prisoners Legal Advocacy Network's ("PLAN's") motion for a
15:01:03 preliminary injunction to require State of Delaware
15:01:05 officials to provide in-person voting machines at state
15:01:09 prisons for eligible incarcerated voters in upcoming
15:01:13 elections, including the November 2024 general election.
15:01:17 That motion is at Docket No. 9. For the reasons I'm about
15:01:21 to explain, the Court will dismiss the case for lack of
15:01:25 subject matter jurisdiction.

15:01:27 As I know many of you all aware, I inherited a
15:01:32 significant number of already pending motions when I was
15:01:34 confirmed as a district judge, of which this was one. We
15:01:38 are issuing decisions on these as quickly as we can and we
15:01:41 are issuing this decision from the bench in order to get it
15:01:44 to you as soon as possible, as it concerns the upcoming
15:01:48 election.

15:01:49 I will only summarize the facts and allegations
15:01:52 necessary to understand the Court's decision. Nonetheless,
15:01:56 some background is in order. Article V, Section 4A of the
15:02:01 Delaware Constitution pertains to absentee voting. That
15:02:07 section requires the Delaware General Assembly to enact laws
15:02:11 providing that qualified Delaware voters may cast an

absentee ballot under certain circumstances, including, as relevant here, circumstances where the voter is unable to cast his or her ballot at their regular polling place due to, quote, "the nature of his or her business or occupation."

The Delaware General Assembly has implemented that command by enacting 15 Delaware Code Section 5502, entitled Persons Eligible to Vote by Absentee Ballot, and that statute contains a list of circumstances under which a voter can cast an absentee ballot. Relevant here, it provides that an eligible Delaware voter may cast an absentee ballot, quote, "because of the nature of such person's business or occupation, including the business or occupation of providing care to his or her parent, spouse, or child who is living at home and requires constant care due to illness, disability or injury." The parties refer to this circumstance as, quote, the "business and occupation exception," end quote, or, quote, the "business and occupation reason," end quote, and I will too.

Delaware law requires the Delaware Attorney General to "personally approve" the absentee ballot application prepared by the Delaware Department of Elections. That's in 15 Delaware Code Section 5503. Delaware law also requires the Delaware Attorney General to prepare the absentee ballot instructions and the absentee

ballot envelopes and that's in Sections 5506 and 5512.

The record in this case contains a declaration from Defendant Anthony J. Albence, the State Election Commissioner for the Delaware Department of Elections or DDOE. The declaration is at Docket No. 22. The DDOE is a state agency that administers all aspects of elections in Delaware. Mr. Albence's declaration and attached exhibits evidence, that since at least 1980, the DDOE as treated an otherwise eligible voter's incarceration status as falling into one of the enumerated circumstances set forth in the Delaware Constitution and laws that would allow for voting via absentee ballot.

The DDOE over the years has applied varying rationales for allowing incarcerated individuals to vote by absentee ballot. But at least since 2018, the official absentee ballot application, again, was just approved by the Delaware Attorney General, has treated incarcerated individuals as eligible under the business and occupation exception. The version of the absentee ballot application as of 2022, which is the same version used today, has a section that says, quote, "Select the reasons you are voting by absentee ballot," end quote, with a bunch of checkboxes under it. And that's exhibit E to the declaration of Mr. Albence at D.I. 22. The third checkbox state, "(3) Due to the nature of my business or occupation. This reason

includes: the business or occupation of providing care to my parents, spouse, or child who is living at home and requires constant care due to illness, disability, or injury, students; and otherwise eligible persons who are incarcerated."

In the 2022 election, the Delaware Department of Elections received absentee ballots from a total of four incarcerated individuals.

In December 2022, the Delaware Supreme Court held in *Albence v. Higgin* that the categories of voters authorized to vote via absentee ballot enumerated in Article 5, Section 4A of the Delaware Constitution are exclusive and cannot be expanded through a statute enacted by the General Assembly. That case is at 295 A.3d 1065, and again, it's from 2022. Accordingly, in that case, the Delaware Supreme Court struck down a state statute that authorized universal mail-in voting regardless of whether the voter was able to appear at their regular polling place. The Higgin Court did not interpret or analyze the scope of the business or occupation exception or any of the other constitutionally enumerated categories. The *Higgin* Court merely held that the General Assembly cannot expand absentee voting to categories of voters that don't fall within the categories set forth in the Delaware Constitution.

Plaintiff interprets the *Higgin* decision to mean

that otherwise eligible incarcerated voters can no longer legally vote. The argument is essentially this: *Higgin* says that the categories enumerated in the Delaware Constitution are the only categories of people that the General Assembly can authorize to vote by absentee ballot. The constitution doesn't refer to incarcerated individuals but, as already mentioned, it does refer to those who can not vote in person due to, quote, "the nature of his or her business or occupation," end quote. The statute passed by the General Assembly likewise does not refer to incarcerated individuals, but it does permit absentee voting from those who cannot vote because of the nature of such person's business or occupation, including the business or occupation of providing care to family members. Notwithstanding that (1) no court has interpreted *Higgin* to say that incarcerated individuals cannot cast absentee ballots, and (2) that the absentee ballot currently used, which is approved by the DDOE and the Delaware AG, allows incarcerated voters to apply for an absentee ballot and expressly states that they qualify due to the nature of their business or occupation, plaintiff nevertheless maintains that *Higgin* prohibits incarcerated individuals from voting absentee and that such voters risk possible felony prosecution if they try to vote. Because the state does not provide in-person voting machines in the jails, plaintiff says, the state is preventing

otherwise eligible incarcerated voters from exercising their right to vote.

The plaintiff in this case is PLAN, a New York-based nonprofit corporation and nonpartisan coalition of jailhouse lawyers, attorneys, advocates, and partner organizations that provide legal services and support for system-impacted individuals. PLAN's mission is to defend and expand the legal rights of presently and formerly incarcerated individuals so that those that are directly impacted by the U.S. criminal legal system can live with dignity and without fear.

As mentioned, in the wake of the *Higgin* decision, PLAN became concerned that eligible incarcerated voters would be ineligible to cast absentee ballots. PLAN asserts, and I accept as true, that it diverted its resources away from other projects and devoted resources to informing individuals incarcerated in Delaware that they may no longer be able to vote absentee. PLAN also demanded that defendants, the Delaware Department of Corrections and the DDOE provide in-person voting machine for incarcerated individuals. After defendants refused that request due to alleged concerns about the cost, PLAN brought this suit seeking an injunction to require defendants to provide in-person voting options for incarcerated individuals.

The named defendants are the Governor, the State

Election Commissioner of the DDOE, the acting Commissioner of the Delaware Department of correction or DDOC.

Both sides agree that defendants need to provide a mechanism for otherwise eligible incarcerated individuals to vote.

Plaintiff says that absentee voting by incarcerated individuals is illegal under Delaware law and defendants must therefore provide voting machines at the prison.

Defendants say that incarcerated individuals fall under the business and occupation exception and that incarcerated individuals can apply for an absentee ballot using the application approved by DDOE and the AG. In addition, defendants submitted a declaration from the State Solicitor for the Delaware Department of Justice that confirms that the Delaware Department of Justice will not prosecute eligible individuals incarcerated in DDOC facilities for voting or attempting to vote by absentee ballot in the 2024 general election.

The Court held a hearing on plaintiff's preliminary injunction motion in April 2024, at which I expressed my concern that the Court may lack subject matter jurisdiction. Because the Court has an independent obligation to ensure that it has subject matter jurisdiction, I ordered the parties to provide supplemental

briefing on the issue of whether PLAN lacks standing. In addition, because PLAN's claim to relief rests on a particular interpretation of Delaware state law that has not been adopted by any Delaware Court and is contrary to the position of defendants (who are charged with enforcing that law), I asked the parties for their positions about whether, if the Court did have subject matter jurisdiction, it would be appropriate to certify a question to the Delaware Supreme Court. On the latter issue, plaintiffs contend that I should not certify a question to the Delaware Supreme Court and defendants contend that I should. Nonetheless, having considered all of the parties' submissions - and those are at D.I. 9, 10, 11, 21, 22, 23, 25, 26, 29 and 30 - as well as the arguments made at the hearing, the Court concludes that plaintiff lacks standing and therefore the Court lacks subject matter jurisdiction over the case.

Article III of the U.S. Constitution confines the jurisdiction of the federal courts to "cases" and "controversies." This "case or controversy" provision requires a plaintiff to establish standing. To establish standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." And I'll point

to support in the *FDA v. Alliance Hippocratic Medicine* case that recently came out from the Supreme Court. That's at 602 U.S. 367 from 2024.

Standing "tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debate go society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action."

Injury "must be actual or imminent, not speculative -- meaning that the injury must have already occurred or be likely to occur soon." A threatened future injure "must be certainly impending to constitute injury in fact" and "allegations of possible future injury" are not sufficient. That's from the *Clapper* case from the Supreme Court, 568 U.S. 398 from 2013. Also, when a plaintiff seeks an injunction, "the plaintiff must establish a sufficient likelihood of future injury." And that's, again, from the *Alliance for Hippocratic Medicine* case.

PLAN asserts both organizational and associational standing. I'll address organizational standing first.

Organizations may assert standing "to sue on their own behalf for injuries they have sustained." Organizations nonetheless must "satisfy the usual standards for injury in fact, causation, and redressability that apply

to individuals." An organization plaintiff cannot rely merely on its objections to the government's actions, instead, it must show "far more than simply a setback to the organization's abstract social interests." What's more, an organization that has not suffered a concrete injury caused by a defendant's actions cannot spend its way into standing simply by spending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way. Moreover, a plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is certainly not impending." And that law all comes from the *Alliance for Hippocratic Medicine* case and the *Clapper* case.

For organizational standing, PLAN contends that it suffered a concrete injury in the form of diversion of resources resulting from defendants' inaction after the *Higgin* decision. PLAN submitted a declaration detailing costs it says it incurred as a result of "mass confusion" after *Higgin*. Those are set forth in the Declaration of Paul Stanley Holdorf at Document No. 26. PLAN asserts that, as a result of the *Higgin* decision, "PLAN was forced to divert disproportionate resources to Delaware to, among other things: (i) revise legal questionnaires and investigate the experiences of incarcerated voters; (ii)

revise presentations, materials, and trainings for staff; (iii) revise guidance for incarcerated voters; (iv) adapt legal resource materials for jailhouse lawyers and incarcerated voters; (v) invest in software to broaden accessibility to legal resource materials; (vi) expand publication of general voting rights resources; and (vii) increase the frequency of meetings."

I disagree that PLAN has organizational standing. The fundamental problem with PLAN's standing theory is that even if its diversion of resources did qualify as an organizational injury, PLAN has failed to establish that its diversion of resources was caused by the defendants.

On the record before the Court, the only person or entity telling eligible incarcerated voters that they cannot legally vote with an absentee ballot is PLAN itself. The record reflects that eligible incarcerated voters could vote via absentee ballot before *Higgin* and they can vote via absentee ballot now. The absentee ballot application form being used in the upcoming election, which, again, has been approved by the DDOE and the AG, expressly allows incarcerated individuals to request an absentee ballot. The AG, through the state solicitor, has confirmed that the DDOJ will not prosecute eligible individuals incarcerated in DDOC facilities for voting or attempting to vote by absentee

ballot in the upcoming election. In short, defendants interpret incarcerated individuals as falling within the business or occupation reason for absentee voting. That interpretation is not inconsistent with *Higgin* (which didn't address the scope of the enumerated categories), and it is not an unreasonable interpretation of the scope of the word "occupation." PLAN may have diverted its resources, but it was not in response to an injury or threatened injury caused by the defendants.

PLAN also asserts associational standing based on its members' injuries. "An association has standing to bring suit on behalf of its members when" (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires participation of individual members in the lawsuit." That's from the Hunt v. Washington State Apple case. It's 432 U.S. 333 from the Supreme Court in 1977.

PLAN cannot satisfy element (a). PLAN asserts two theories for that element: (1) PLAN's members who are prison paralegals and jailhouse lawyers have standing; and (2) PLAN's incarcerated members who want to vote in the 2024 general election have standing. I will address each theory in turn.

PLAN's first theory is that its members that are prison paralegals and jailhouse lawyers are no longer able to discharge their responsibilities. PLAN asserts that "because of the risks of criminal prosecution, the work of some PLAN members, including prison paralegals and jailhouse lawyers, has been radically altered due to the changes in voting rights, as these members can no longer ethically help eligible incarcerated voters cast ballots. Rather than helping incarcerated voters understand and exercise their voting rights, these members must now caution voters that the State's assertion that incarcerated voters may still vote after *Higgin* may not protect them from prosecution." PLAN also asserts that these prison paralegals and jailhouse lawyers have had to stop their work helping eligible incarcerated individuals cast ballots and divert their attention to "the full-scale, corrective-messaging campaign PLAN has undertaken to ensure eligible incarcerated voters no longer rely on now-outdated information."

This theory fails for the same reason that PLAN's organizational injury theory fails: even if these alleged injuries did qualify as injuries for standing purposes, PLAN's members' alleged injuries were not caused by any action of the defendants.

The fact that PLAN's members stopped helping eligible incarcerated individuals vote absentee based on

PLAN's own interpretation of the law -- an interpretation not held by defendants -- does not represent a concrete injury-in-fact fairly traceable to defendants' actions.

PLAN's second associational standing theory is that its members are likely to suffer future injury because "some members residing in DDOC facilities harbor concerns regarding their ability to cast absentee ballots and the repercussions they may face if they attempt to do so." However, as I already mentioned, defendants have confirmed that PLAN members otherwise eligible to vote will not be prosecuted for voting or attempting to vote absentee.

To the extent that PLAN contends that some of its members may suffer a future injury in the form of voter challenges brought by a third party, that theory also fails, because -- in addition to having the same problem as the prior theories -- it is also speculative and relies entirely on hypothetical future action by unknown third-parties. There is no evidence that these alleged future injuries would be caused by the defendants. Again, defendants have consistently represented for years that eligible incarcerated voters can vote absentee via the business or occupation exception.

What's more, the alleged future injury to PLAN's members is conjecture. There is no suggestion in the record that any third party intends to challenge any prisoners'

votes. Plus, it seems exceedingly unlikely that the absentee voters would suffer any injury as a result of such a challenge, as that would require a future court to say (1) that permitting incarcerated persons to vote by absentee ballot violates the Delaware Constitution, which is a position that has been taken by no party except PLAN and has not been adopted by any Delaware Court; (2) that the voters cannot intervene or participate to defend their constitutional rights to vote in response to the challenge; and/or (3) that the result of the future challenge is that PLAN's members' ballots should therefore not be counted, which everyone here agrees would be unconstitutional since there is no other mechanism by which the incarcerated can vote in Delaware.

For all of these reasons, PLAN has failed to establish standing and because PLAN lacks standing, this Court lacks subject matter jurisdiction over the case. Accordingly, the case will be dismissed without prejudice.

Thanks very much, everyone. Have a great weekend.

(Court adjourned at 3:25 p.m.)

---------------------------------

I hereby certify the foregoing is a true and

accurate transcript from my stenographic notes in the proceedings.

/s/ Stacy M. Ingram, RPR
Official Court Reporter
U.S. District Court